## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| PENOBSCOT NATION | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM J. SCHNEIDER, | ) | |
| Attorney General for the State of Maine; | ) | |
| | ) | |
| CHANDLER WOODCOCK, | ) | |
| Commissioner for the Maine Department | ) | |
| of Inland Fisheries and Wildlife; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOEL T. WILKINSON, | ) | |
| Colonel for the Maine Warden Service | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT
## INJUNCTIVE RELIEF REQUESTED

NOW COMES the Penobscot Nation (the "Nation") and hereby claims as follows:

### PARTIES

1.      The Plaintiff, the Penobscot Nation, is a federally recognized Indian tribe, which has occupied the waters, islands, and lands within and surrounding the Penobscot River within the present day State of Maine from time immemorial.

2.      The principal residence of the members of the Penobscot Nation and the seat of its government are located at Indian Island within the Penobscot River, near Old Town, Penobscot County, Maine.

3.     Defendant William J. Schneider serves as the Attorney General for the State of Maine.

4.     Defendant Chandler Woodcock serves as the Commissioner of the Maine Department of Inland Fisheries and Wildlife.

5.     Defendant Joel T. Wilkinson serves as the Colonel of the Maine Warden Service.

6.     As set forth herein, the Defendants threaten to violate federal law protections and rights afforded to the Penobscot Nation, its members, and its law enforcement officials within the Penobscot River.  This action seeks declaratory and injunctive relief against the Defendants to prevent them from violating these federal law rights and protections.

**JURISDICTION**

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362.  The matter in controversy arises under the Constitution and laws of the United States, it is brought by a federally recognized Indian tribe, and it involves the threatened violation of federal law by state officials.

**VENUE**

8.     Venue is proper in this district because this action arises within this district and the parties reside or work in this district.

## BACKGROUND

**Congress's Constitutional Plenary Authority over Indian Affairs, and its Settlement of the Penobscot Nation's Historic Land Claims Against the State of Maine**

9.      Pursuant to the Maine Indian Claims Settlement Act of 1980, 25 U.S.C. §§1721, *et. seq.* (the "Settlement Act"), Congress ended the historic land claims litigation brought by the United States, as trustee for the Penobscot Nation, against the State of Maine in the matters of *United States v. Maine*, Civil Nos. 1966-ND and 1969-ND (D. Me.).  In so doing, Congress reaffirmed the Nation's status as an Indian tribal government with a government-to-government relationship with the United States, and ratified the provisions of Maine's Act to Implement the Indian Land Claims Settlement, 30 M.R.S.A. §§ 6201 *et. seq.* (the "Maine Implementing Act").

10.      In enacting the Settlement Act to ratify the Maine Implementing Act and thereby compromising and settling *United States v. Maine*, Congress acted as fiduciary on behalf of the Penobscot Nation because the United States represented the interests of the Nation as its trustee and its attorney-in-fact in *United States v. Maine*.

11.      Pursuant to Article I, section 8, of the United States Constitution, the Maine Implementing Act could have no force of law absent ratification by Congress.

**Congress's Confirmation of the Retained Right of the Penobscot Nation's Members to Take Fish for Individual Sustenance From the Penobscot River Free from State Law, and the Exclusive Sovereign Authority of the Nation to Regulate that Activity**

12.     Members of the Penobscot Nation have engaged in fishing for their individual sustenance in the waters of the Penobscot River surrounding Indian Island and other islands in the river northward thereof from time immemorial.

13.     Upon enacting the Settlement Act, Congress expressly confirmed that the Penobscot Nation and its members retain a sovereign right to take fish from the Penobscot River by ratifying 30 M.R.S.A. § 6207(4), entitled "Sustenance Fishing within the Indian reservations" which provides, in pertinent part, that notwithstanding any law of the State, members of the Penobscot Nation "may take fish, within the boundaries of their . . . Indian reservation[], for their individual sustenance."

14.     Congress knew that the Penobscot Nation understood and intended that the Settlement Act preserved the right of its members to take fish from the Penobscot River for their individual sustenance free from any state authority, and Congress, upon compromising and settling *United States v. Maine* on behalf of the Penobscot Nation, intended that sustenance fishing right to be preserved and exercised within the Penobscot River, meaning "within the boundaries" of the Nation's reservation.

15.     Pursuant to the Settlement Act, Congress granted to the State of Maine certain jurisdiction over the Penobscot Nation and its members "in the manner provided in the Maine Implementing Act," 25 U.S.C. § 1725(b)(1).

4

16.     Congress did not grant Maine jurisdiction over the right to sustenance fishing described in paragraphs 12-15, other than ratifying provisions of the Maine Implementing Act giving authority to the Commissioner of Inland Fisheries and Wildlife (the "Commissioner") to commence an administrative proceeding for the purpose of addressing (and, if necessary, imposing) remedial measures in the event that the exercise of said sustenance fishing right causes, or is likely to cause, "a significant depletion of fish . . . [i]n . . . waters outside the boundaries of . . . waters subject to regulation by . . . the Penobscot Nation."  30 M.R.S.A. § 6207(4), § 6207(6), *ratified by* 25 U.S.C. § 1725(b)(1).

17.     The Nation has exercised exclusive jurisdiction over sustenance fishing by its members in the waters of the Penobscot River surrounding Indian Island and other islands in the river northward thereof from time immemorial and currently does so pursuant to laws duly promulgated and enacted by the Nation.

18.     The Nation's jurisdiction over sustenance fishing by its members in the Penobscot River is an exercise of its inherent sovereign authority, as a matter of federal law, and it remains intact; it has never been surrendered by treaty or by an act of Congress.

5

**The Defendants' Threat to Violate the Right of the Nation's Members to Take Fish from the Penobscot River for Their Sustenance Without Interference by State Authorities and to Violate the Nation's Exclusive Jurisdiction over Sustenance Fishing by Its Members Within the River**

19.   By letter dated February 16, 1988, then Attorney General for the State of Maine, James T. Tierney, issued an opinion to William J. Vail, then Commissioner of Inland Fisheries and Wildlife for the State of Maine, stating that salmon fishing by members of the Penobscot Nation for their individual sustenance "*in the Penobscot River within the boundaries of the Penobscot Reservation . . .* would *clearly* fall within the purview of" the right of the Nation's members to engage in sustenance fishing, free from state authority by the terms of 30 M.R.S.A. § 6207(4), the provision quoted in paragraph 13, above, and ratified by Congress in the Settlement Act.  (Emphasis added.)  A true copy of this letter is attached hereto as Exhibit A (the "1988 Maine Attorney General Opinion").

20.   The 1988 Maine Attorney General Opinion further stated that the prohibition against fishing for salmon with gill nets -- then provided by 12 M.R.S.A. § 7608 and now codified at 12 M.R.S.A. § 12656 -- could not be enforced against members of the Penobscot Nation for engaging in such sustenance fishing.  *See* Exhibit A.

21.   By letter dated August 8, 2012, Defendant William J. Schneider issued an opinion to Defendants Chandler Woodcock and Joel T. Wilkinson, stating that the Penobscot River "is not part of the Penobscot Nation's Reservation" and that "the State of Maine has exclusive regulatory jurisdiction over activities taking place on the River."  A

true copy of this letter is attached hereto as Exhibit B.

22. Defendant Schneider has repudiated the 1988 Maine Attorney General Opinion, which, consistent with federal law, recognized that members of the Penobscot Nation enjoyed the right to take fish for their sustenance within the waters of the Penobscot River free from state authority.

23. By repudiating the prior views of the Maine Attorney General with respect to the right of members of the Nation to exercise their sustenance fishing rights within the Penobscot River, Defendant Schneider has given, and continues to give, authority to Defendants Woodcock and Wilkinson (and all of their agents) to enforce state law against members of the Penobscot Nation in their exercise of sustenance fishing rights within the Penobscot River and thereby threatens to violate the federal law right of the Nation's members to be free from state authority over such activity.

24. By repudiating the prior views of the Maine Attorney General and thereby threatening to violate the federal law right of the Nation's members' sustenance fishing rights as described in paragraph 23, Defendant Schneider has also given, and continues to give, authority to Defendants Woodcock and Wilkinson (and all of their agents) to violate the Penobscot Nation's federal law right to exercise exclusive jurisdiction over the taking of fish for sustenance by its members, subject only to the contingent authority of the Commissioner described in paragraph 16.

**Congress's Confirmation of the Exclusive Authority of Penobscot Nation Law Enforcement Officers to Enforce Civil Laws Regulating Hunting, Trapping and Other Taking of Wildlife Within the Penobscot River**

25.     The Penobscot Nation has exercised jurisdiction over the use of the water, bed, and banks of the Penobscot River surrounding Indian Island and other islands in the river northward thereof by its members and non-members from time immemorial, and it currently does so pursuant to ordinances duly promulgated and enacted as the law of the Nation.  These ordinances incorporate the civil regulatory laws of the State of Maine, including provisions of Title 12 of the Maine Revised Statutes Annotated, as the law of the Penobscot Nation, by reference.

26.     The Nation's jurisdiction over the use of the water, bed, and banks of the Penobscot River surrounding Indian Island and islands northward thereof by members and non-members constitutes an exercise of its inherent sovereign authority as a matter of federal law, which the Nation retains intact absent an express divestiture by Congress.

27.     Congress has not divested the Penobscot Nation of its inherent authority to enforce its laws governing the use of the water, bed, and banks of the Penobscot River by members and non-members.

28.     Upon enacting the Settlement Act and ratifying the terms of the Maine Implementing Act, in particular, 30 M.R.S.A. § 6207(1)(A) and 30 M.R.S.A. § 6210(1), Congress expressly confirmed the Nation's "exclusive authority within [its] . . . Indian territor[y] to promulgate and enact ordinances regulating hunting, trapping or other taking

8

of wildlife" and further expressly confirmed that "[l]aw enforcement officers appointed by the . . . Penobscot Nation shall have exclusive authority to enforce, within their . . . Indian territor[y], ordinances adopted under . . . section 6207, subsection 1."

29.     Upon enacting the Settlement Act, Congress defined "Penobscot Indian Reservation" and "Penobscot Indian Territory" in accordance with the definitions of the Maine Implementing Act.  By the terms of the Maine Implementing Act, "Penobscot Indian Territory" includes the "Penobscot Indian Reservation," and "Penobscot Indian Reservation" is defined, in pertinent part, as "the islands in the Penobscot River reserved to the Penobscot Nation by agreement with the States of Massachusetts and Maine consisting of solely of Indian Island . . . and all islands in that river northward thereof that existed on  June 29, 1818, excepting any island transferred to a person or entity other than a member of the Penobscot Nation subsequent to June 29, 1818, and prior to the effective date of this Act."

30.     Upon ratifying said definition of the Penobscot Indian Reservation, Congress intended the definition to encompass ownership rights within and attending the Penobscot River surrounding Indian Island and islands in the river northward thereof, and Congress knew, upon compromising and settling *United States v. Maine* on behalf of the Penobscot Nation, that the Nation never intended to relinquish its ownership rights within the Penobscot River.

31.     By virtue of Congress's ratification of 30 M.R.S.A. § 6207(1) and 30

9

M.R.S.A. § 6210(1) and its intent that the Nation's reservation encompass ownership rights within and attending the Penobscot River surrounding Indian Island and islands in the river northward thereof, Congress confirmed the exclusive authority of Penobscot Nation law enforcement officials to enforce the Nation's ordinances regulating hunting, trapping or other taking of wildlife within the Penobscot River surrounding Indian Island and other islands in the river northward thereof.

**The Defendants' Threat to Violate the Exclusive Authority of the Penobscot Nation's Law Enforcement Officers to Enforce Civil Laws Regulating Hunting, Trapping and Other Taking of Wildlife Within the Penobscot River**

32.     By stating in his August 8, 2012 letter to Defendants Chandler Woodcock and Joel T. Wilkinson that the Penobscot River "is not part of the Penobscot Nation's Reservation" and that "the State of Maine has exclusive regulatory jurisdiction over activities taking place on the River," Defendant Schneider has given, and continues to give, authority to Defendants Woodcock and Wilkinson (and all of their agents) to enforce state laws regulating hunting, trapping or other taking of wildlife to the exclusion of the enforcement authority of Penobscot Nation law enforcement officials within the Penobscot River.

33.     Defendants Schneider, Woodcock and Wilkinson threaten to violate the exclusive authority of Penobscot Nation law enforcement officers to enforce the Nation's laws regulating hunting, trapping or other taking of wildlife within the Penobscot River as ratified and made law by Congress in the Settlement Act.

34.     The Nation brings this action on behalf of itself, its members, and its law enforcement officers.

### COUNT I
### DECLARATORY AND INJUNCTIVE RELIEF TO PROTECT THE RIGHT OF PENOBSCOT NATION MEMBERS TO TAKE FISH FOR SUSTENANCE FREE FROM STATE LAW AND THE RIGHT OF THE NATION TO EXERCISE EXCLUSIVE REGULATORY AUTHORITY OVER SUSTENANCE FISHING BY ITS MEMBERS

35.     The Nation repeats and realleges paragraphs 1-34 as if fully set forth herein.

36.     An actual controversy exists between the Penobscot Nation and the Defendants regarding the federal law right of the Nation's members to take fish from the Penobscot River for their individual sustenance, free from state law.

37.     An actual controversy exists between the Penobscot Nation and the Defendants regarding the federal law right of the Nation to exercise exclusive regulatory authority over sustenance fishing in the Penobscot River.

38.     The Defendants threaten to violate the federal law right of the Nation's members to take fish from the Penobscot River for their individual sustenance, free from state law and to violate the federal law right of the Nation to exercise exclusive regulatory authority over that sustenance fishing activity.

39.     The Nation and its members face irreparable harm if the Defendants violate the Nation's and the Nation's members' rights as described in paragraph 38.

40.     The Nation is likely to succeed on the merits of its claims that, as a matter

of federal law, (a) its members enjoy the right to take fish from the Penobscot River for their individual sustenance, free from state law and (b) the Nation has exclusive regulatory authority over its members' exercise of that right, subject only to the contingent authority granted to the Commissioner as described in paragraph 16.

41.     The public interest will be furthered by an injunction preventing Defendants from violating the sustenance fishing rights of the Nation's members within the Penobscot River and from interfering with the exclusive authority of the Nation to regulate sustenance fishing by its members in the river.

42.     Any harm resulting from an injunction preventing the Defendants from violating the sustenance fishing rights of the Nation's members and from violating the exclusive authority of the Nation to regulate sustenance fishing by its members is minimal compared to the harm befalling the Nation without the injunction.

WHEREFORE, the Penobscot Nation requests that this Court issue a declaratory judgment against the Defendants that: (a) the Nation's members enjoy the right to take fish from the Penobscot River for their individual sustenance within waters surrounding Indian Island and other islands northward thereof, free from state law; and (b) the Nation has exclusive regulatory authority over its members' exercise of that right, subject only to the contingent authority of the Commissioner described in paragraph 16.  The Nation further requests this Court to issue an injunction enjoining the Defendants and their agents, employees, representatives, or anyone else subject to their authority, or acting on

their behalf, from engaging in any action that would violate, or threaten to violate: (a) the right of the Nation's members to take fish from the Penobscot River for their individual sustenance within waters surrounding Indian Island and other islands northward thereof, free from state law; or (b) the Nation's exclusive regulatory jurisdiction over such sustenance fishing, subject only to the contingent authority of the Commissioner as described in paragraph 16.  The Nation respectfully asks for such further relief, including costs, as this Court deems just and equitable.

**COUNT II**
**DECLARATORY AND INJUNCTIVE RELIEF TO PROTECT THE RIGHT OF PENOBSCOT NATION LAW ENFORCEMENT OFFICERS TO EXERCISE EXCLUSIVE ENFORCEMENT AUTHORITY OVER HUNTING, TRAPPING, AND OTHER TAKING OF WILDLIFE**

43.     The Nation repeats and realleges paragraphs 1-34 as if fully set forth herein.

44.     An actual controversy exists between the Penobscot Nation and the Defendants regarding the federal law right of the Nation's law enforcement officers to exercise exclusive authority over hunting, trapping, and other taking of wildlife within the Penobscot River.

45.     The Defendants threaten to violate the federal law rights of the Nation's law enforcement officers to exercise exclusive authority over hunting, trapping, and other taking of wildlife within the Penobscot River.

46.     The Nation and its law enforcement officers face irreparable harm if the Defendants violate the right of the Nation's law enforcement officers to exercise their exclusive enforcement authority over hunting, trapping, and other taking of wildlife

within the Penobscot River.

47.     The Nation is likely to succeed on the merits of its claims that, as a matter of federal law, its law enforcement officers have exclusive authority to enforce the Nation's ordinances governing hunting, trapping and other taking of wildlife within the Penobscot River surrounding Indian Island and other islands northward thereof.

48.     The public interest will be furthered by an injunction preventing Defendants from interfering with the exclusive authority of the Nation's law enforcement officers to enforce the Nation's laws regulating hunting, trapping and other taking of wildlife within the Penobscot River.

49.     Any harm to the Defendants resulting from an injunction preventing the Defendants from interfering with the exclusive authority of the Nation's law enforcement officers to enforce the Nation's laws regulating hunting, trapping and other taking of wildlife within the Penobscot River surrounding Indian Island and other islands northward thereof is minimal compared to the harm befalling the Nation without the injunction.

WHEREFORE, the Penobscot Nation requests that this Court: (a) issue a declaratory judgment against the Defendants that the Nation's law enforcement officers have the right to exercise exclusive authority over hunting, trapping, and other taking of wildlife within the Penobscot River surrounding Indian Island and other islands northward thereof; and (2) issue an injunction enjoining the Defendants and their agents,

employees, representatives, or anyone else subject to their authority, or acting on their behalf, from engaging in any action that would violate, or threaten to violate said right of the Nation's law enforcement officers to exercise exclusive authority over hunting, trapping, and other taking of wildlife.  The Nation respectfully asks for such further relief, including costs, as this Court deems just and equitable.

Dated:  August 20, 2012

> _/s/ Kaighn Smith Jr._
> Kaighn Smith Jr., Esq.
> Adrianne E. Fouts, Esq.
> Michael L. Buescher, Esq.
> Attorneys for Plaintiff Penobscot Nation

Drummond Woodsum
84 Marginal Way, STE 600
Portland, ME  04101-2480
207-772-1941
ksmith@dwmlaw.com
mbuescher@dwmlaw.com