**EXHIBIT B**

William J. Schneider
ATTORNEY GENERAL



REGIONAL OFFICES:
84 HARLOW ST., 2ND FLOOR
BANGOR, MAINE 04401
TEL: (207) 941-3070
FAX: (207) 941-3075

415 CONGRESS ST., STE. 301
PORTLAND, MAINE 04101
TEL: (207) 822-0260
FAX: (207) 822-0259

TEL: (207) 626-8800
TTY: 1-800-577-6690

STATE OF MAINE
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, MAINE 04333-0006

14 ACCESS HIGHWAY, STE 1
CARIBOU, MAINE 04736
TEL: (207) 496-3792
FAX: (207) 496-3291

August 8, 2012

Chandler Woodcock, Commissioner
Department of Inland Fisheries and Wildlife
41 State House Station
Augusta, ME 04333-0041

Colonel Joel T. Wilkinson
Maine Warden Service
41 State House Station
Augusta, ME 04333-0041

Dear Commissioner Woodcock and Colonel Wilkinson:

    You have requested an Opinion from this Office regarding the respective regulatory jurisdictions of the Penobscot Indian Nation ("Penobscot Nation") and the State of Maine ("State") relating to hunting and fishing on the main stem of the Penobscot River ("River"). This Opinion is intended to clarify the jurisdictional issue for state and tribal game wardens, as well as for those engaged in recreational activities on the River. As will be explained in more detail below, the Penobscot Nation may lawfully regulate hunting on, and restrict access to, the islands within the River from Medway to Old Town that comprise its Reservation, but may not regulate activities occurring on, nor restrict public access to, the River itself. With the exception of the islands that form the Penobscot Indian Reservation, the River is open for public use and enjoyment, and the State of Maine has exclusive regulatory jurisdiction over activities taking place on the River.

    The division of regulatory jurisdiction as between the Penobscot Nation and the State is set forth in *An Act to Implement the Maine Indian Land Claims Settlement Act*, 30 M.R.S. §§ 6201, *et seq.*, which was ratified and confirmed by Congress in the *Maine Indian Claims Settlement Act*, 25 U.S.C. §§ 1721, *et seq.* Among other things, these statutes carefully explain how the Penobscot Nation and the State, respectively, may regulate activities such as hunting and fishing. 30 M.R.S. § 6207.

    The Penobscot Nation has exclusive authority to regulate hunting, trapping and other taking of wildlife within its Indian Territory. 30 M.R.S. § 6207(1)(A). Its Territory is defined in the law to include both the Penobscot Indian Reservation, as well as additional land purchased by the United States Secretary of the Interior on the Penobscot Nation's behalf. 30 M.R.S.

§ 6205(2). The Penobscot Indian Reservation is defined to include "the islands in the Penobscot River reserved to the Penobscot Nation by agreement with the States of Massachusetts and Maine consisting solely of Indian Island . . . and all islands northward thereof that existed on June 29, 1818, excepting any islands transferred to a person or entity after that date." 30 M.R.S. § 6203(8).[1]

For the purposes of your inquiry, which involves activities occurring on the main stem of the River, this means the Penobscot Nation has authority to regulate hunting and fishing on those islands included in its Reservation from Indian Island in Old Town, northward to the confluence of the East and West branches in Medway.[2] Like private landowners, the Penobscot Nation may also restrict access to their lands, here islands, as it sees fit. However, the River itself is not part of the Penobscot Nation's Reservation, and therefore is not subject to its regulatory authority or proprietary control. The Penobscot River is held in trust by the State for all Maine citizens, and State law, including statutes and regulations governing hunting, are fully applicable there. 30 M.R.S. § 6204. Accordingly, members of the public engaged in hunting, fishing or other recreational activities on the waters of the Penobscot River are subject to Maine law as they would be elsewhere in the State, and are not subject to any additional restrictions from the Penobscot Nation.

To avoid friction on the Penobscot River, it is important that state and tribal officials, as well as members of the Penobscot Nation and the general public, have a clear understanding of the regulatory jurisdictions of the Penobscot Nation and the State of Maine. Both the State and the Penobscot Nation must encourage citizens to respond civilly to uniformed tribal and state game wardens performing their official duties. All citizens must heed and comply with ordinances promulgated by the Penobscot Nation governing the islands it owns, as well as State laws and regulations governing the River.

Sincerely,

WILLIAM J. SCHNEIDER
Attorney General

---

[1] This definition was amended twice with the agreement of the Penobscot Nation to add lands to the Reservation. In 1988, the statute was amended to add Smith Island, and 24 acres of land located at Matagamon Dam Lot on the East Branch of the River. 30 M.R.S. § 6203(8). In 2009, it was amended again to add 714 acres of land in Argyle, known as the Argyle East Parcel. As part of its Reservation, and therefore Territory, hunting on these additional lands is subject to regulation by the Penobscot Nation. Man-made boom piers in the River are not within the scope of this definition and therefore not part of Penobscot Indian Territory.

[2] By law, the Penobscot Nation must conspicuously post any land or water it regulates in order to provide reasonable notice to the public of any such restrictions. 30 M.R.S. § 6207(5).

2