UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PENOBSCOT NATION, | ) | |
| | ) | |
| Plaintiff, | ) | Docket # 1:12-cv-00254-GZS |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM SCHNEIDER, et al., | ) | |
| | ) | |
| Defendants | ) | |

**MOTION TO INTERVENE OF
CITY OF BREWER, TOWN OF BUCKSPORT, COVANTA MAINE, LLC,
TOWN OF EAST MILLINOCKET, GREAT NORTHERN PAPER COMPANY,
LLC, GUILFORD-SANGERVILLE SANITARY DISTRICT, TOWN OF
HOWLAND, KRUGER ENERGY (USA) INC., TOWN OF LINCOLN, LINCOLN
PAPER AND TISSUE, LLC., LINCOLN SANITARY DISTRICT, TOWN OF
MATTAWAMKEAG, TOWN OF MILLINOCKET, TOWN OF ORONO, RED
SHIELD ACQUISITION LLC, TRUE TEXTILES, INC., VEAZIE SEWER
DISTRICT, AND VERSO PAPER CORP.
WITH SUPPORTING MEMORANDUM OF LAW**

NOW COME the City of Brewer, the Town of Bucksport, Covanta Maine, LLC, the Town of East Millinocket, Great Northern Paper Company, LLC, Guilford-Sangerville Sanitary District, the Town of Howland, Kruger Energy (USA) Inc., the Town of Lincoln, Lincoln Paper and Tissue, LLC, Lincoln Sanitary District, the Town of Mattawamkeag, the Town of Millinocket, Town of Orono, Red Shield Acquisition LLC, True Textiles, Inc., Veazie Sewer District, and Verso Paper Corp. (collectively, the "NPDES[1] Permittees") and move this Court for leave to intervene in this proceeding.

Defendant State of Maine has indicated that it consents to this motion.

---

[1] "NPDES" is the acronym for National Pollutant Discharge Elimination System.

{W3308002.2}

**BACKGROUND**

The NPDES Permittees are municipalities and companies with permits that authorize discharges of water or treated wastewater into the Penobscot River or its branches or tributaries. The NPDES Permittees' interest in this proceeding is to ensure that their operations will not be subject to regulation by the Penobscot Indian Nation (the "Penobscot Nation"), which asserts in this action that its Reservation includes the Penobscot River upstream of Indian Island (and which has asserted that its Reservation also includes the branches and tributaries of the Penobscot River[2]), and that it is entitled to regulate the waters of the Penobscot River (and its tributaries and branches). *See* affidavits attached hereto as Exhibits A-R.

The corollary to this assertion is that the Penobscot Nation also argues, as it has stated previously, that it may regulate discharges into the Penobscot River and its branches and tributaries upstream of Indian Island.[3] If the Penobscot Nation Reservation does not include any portion of the Penobscot River or its tributaries and branches, however, then the Penobscot Nation's argument fails, and the Penobscot Nation may not seek to regulate the NPDES Permittees. Further, if the Penobscot Nation Reservation

---

[2] *See* the minutes of the January 7, 2000 meeting of the Maine Indian Tribal-State Commission, p. 3 ("The Penobscots believe they own all of the Penobscot River from Indian Island north, including the branches and the tributaries"), Exhibit 7 to the April 21, 2000 letter from Matthew D. Manahan to Stephen Silva, document no. 5b-21 in the agency record pertaining to the application of the State of Maine to administer the NPDES program, 68 Fed. Reg. 65,052 (Nov. 18, 2003).

[3] The Penobscot Nation has also argued that it is entitled to Treatment as a State ("TAS") status under the Clean Water Act, 33 U.S.C. § 1377(e) which would allow the Penobscot Nation to set water quality standards within its Reservation waters that would need to be considered by the State of Maine when it issues waste discharge licenses to municipalities and companies upstream and downstream of Penobscot Nation Reservation waters.

includes only the portion of the Penobscot River immediately adjacent to the Penobscot Nation Reservation islands, then the Penobscot Nation could impact the NPDES Permittees' discharges only if the U.S. Environmental Protection Agency ("EPA") were to grant full TAS status to the Penobscot Nation.

Thus, the NPDES Permittees seek a ruling from this Court that confirms that the Penobscot Reservation does not include any portion of the Penobscot River.

## DISCUSSION

The NPDES Permittees seek to intervene as of right in this proceeding, under F.R. Civ. P. Rule 24(a), or, alternatively, permissive intervention under Rule 24(b).[4]

### I. THE NPDES PERMITTEES MEET THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a).

Rule 24(a) states that:

> Upon timely application anyone shall be permitted to intervene in an action…(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the parties.

Under this Rule, the First Circuit has established a four-part test for intervention of right.

> (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest.

*B. Fernandez & Hnos. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006); *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

---

[4] Pursuant to Rule 34(c), accompanying this motion is the Putative Intervenors' Answer and Counterclaim for Declaratory Relief.

Though each requirement must be satisfied, the requirements cannot be viewed in isolation. They "are not bright lines, but ranges--not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate." *International Paper Co. v. Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989) (quoting *U.S. v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2nd Cir. 1984)). While a proposed intervenor must meet all four requirements, "[a]pplication of the Rule requires that its components be read not discretely, but together." *Hooker*, 749 F.2d at 983. Thus, "[a] showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation," while, "[s]imilarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id.* "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Even without that presumption, examination of the four factors reveals that the NPDES Permittees' motion to intervene should be granted.

### A. The instant motion is timely.

"Timeliness" is evaluated in relation to four specific factors:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*U.S. v. Metropolitan Dist. Comm'n*, 865 F.2d 2, 5 (1st Cir.1989). Here, the NPDES Permittees are submitting this motion to intervene well inside the limits contemplated by

the rule. The NPDES Permittees have prepared and filed this motion to intervene as expeditiously as possible. The Defendants have just filed their answer. No Scheduling Order has been issued and no discovery has commenced. No party could be prejudiced by the grant of this motion.

> **B.  The NPDES Permittees have a demonstrated interest relating to the property or transaction that forms the basis of this action.**

There is no bright-line test for a "demonstrated interest." *See Conservation Law Found., Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992); *Daggett v. Comm. on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999). "The Supreme Court has emphasized that the requirement of impairment of a legally protected interest is a minimal one . . . ." *Northeast Oh. Coal v. Blackwell*, 467 F.3d 999, 1007-08 (6th Cir. 2006). The possibility that litigation could end with an order or injunction adversely affecting the intervenors' interests is sufficient. *Daggett,* 172 F.3d at 110-11. *See also B. Fernandez*, 440 F.3d at 545 (intervenor's interests threatened where litigation could result in an order directly affecting intervenor's contract rights).

The NPDES Permittees have a significant protectable interest in this proceeding. *Donaldson v. U.S.*, 400 U.S. 517, 531 (1971); *Patch*, 136 F.3d at 205. The interest is "direct, not contingent." *Verizon New England v. Maine Public Util. Comm'n*, 229 F.R.D. 335, 337 (D. Maine 2005). If the Penobscot Nation is successful in its argument that its reservation includes the Penobscot River and its tributaries and branches, then the Penobscot Nation could seek to regulate or otherwise impose restrictions on the NPDES Permittees' operations within those waters.

### C. The disposition of this case threatens to create a practical impairment or impediment to the NPDES Permittees' ability to protect their interest.

The standard for determining whether this "impairment" requirement has been met is a practical standard. *See Daggett*, 172 F.3d at 111-12, *citing Atlantis Dev. Corp. v. U.S.*, 379 F.2d 818, 824-25 (5th Cir. 1967) (rejecting rigid standards such as joint common ownership or *res judicata* in favor of the "practical effects" test applicable to questions of joinder for determining whether impairment exists.).

The NPDES Permittees' interest is to ensure that the Penobscot Nation cannot seek to regulate or otherwise impose restrictions on the NPDES Permittees' operations within the waters of the Penobscot River and its tributaries and branches. That municipal and commercial business interest will be impaired if the Penobscot Nation is successful in this action, because that outcome would give the Penobscot Nation the basis to seek to impose such restrictions on the NPDES Permittees' operations.

### D. The NPDES Permittees' interests will be inadequately represented if it is not permitted to intervene.

An applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate. *B. Fernandez*, 440 F.3d at 545; *Patch*, 136 F.3d at 207. The Supreme Court has described this burden as "minimal" and has made clear that a proposed intervenor need only make the showing that representation by existing parties "may be" inadequate, not that it "will be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added). As a result, "[t]he proposed intervenors need show only that there is a potential for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (emphasis in original). "The possibility that the interests of the applicant and the parties

may diverge need not be great in order to satisfy this minimal burden." *Utah Ass'n of Counties*, 255 F.3d at 1254 (internal quotation marks omitted) (emphasis added). Further, the burden of persuasion that representation is adequate rests on the party opposing intervention. *See Daggett*, 172 F.3d at 115 (Lynch, J. concurring); *Caterino v. Barry*, 922 F.2d 37, 42 n.4 (1st Cir. 1990); *Flynn v. Hubbard*, 782 F.2d 1084, 1090.

As noted above, the NPDES Permittees have a significant interest in these proceedings. The NPDES Permittees use the waters at issue in this proceeding and it is imperative to the NPDES Permittees that it may continue to use those waters unhindered by regulation imposed or sought to be imposed by the Penobscot Nation. The NPDES Permittees' municipal and business interests could be directly impacted by the Penobscot Nation's ability to control any portion of the Penobscot River and its tributaries and branches. The NPDES Permittees' interests in that regard are distinct from those of the Defendants because the Defendants would not be subject to the risk of such regulation; the Defendants do not have waste discharge permits that authorize use of the waters at issue. The NPDES Permittees' interest is economic, commercial, municipal, and private, and different than that of the Defendants, which relates solely to State governmental authority.

While First Circuit jurisprudence on the question of when a party may intervene on the side of a government party is varied, it can be harmonized by noting that each case is fact specific, and that a commercial interest different from the government's is an important factor in support of intervention. *See e.g., Mosbacher*, 966 F.2d at 44 ("The Secretary's judgments are necessarily constrained by his view of the public welfare. While the Secretary may well believe that what best serves the public welfare will also

best serve the overall interests of fishermen, the fact remains that the fishermen may see their own interest in a different, perhaps more parochial light. For example, a fisherman with a mortgage to pay off on his boat may not want to limit his fishing activities even if the long-term effect of continuing to fish is to put the entire fishing stock at risk."); *see also Animal Protection Institute v. Martin,* 241 F.R.D. 66, 70 (D. Me. 2007) ("Here … there are private interests at stake, which the Intervenors stand to lose if [Plaintiff] prevails in its action [challenging a non-listing decision under the Endangered Species Act]. The Court concludes that DIFW may not be able to adequately represent the Intervenors' interests in this litigation, interests relating to the property or transaction that forms the basis of the ongoing suit.")

In sum, the NPDES Permittees meet the four-part test and the Court should grant intervention as of right.

## II. IN THE ALTERNATIVE, PERMISSIVE INTERVENTION UNDER RULE 24(b) IS APPROPRIATE IN THIS CASE.

In the alternative, the NPDES Permittees should be granted permissive intervention under Rule 24(b), which provides:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common" and the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties."

Courts enjoy very broad discretion to grant such a motion. *See Daggett*, 172 F.3d at 113.

The questions of law and fact are common, because the issue in this case is whether the Penobscot Reservation includes the Penobscot River and its branches and tributaries, and that issue directly impacts the ability of the Penobscot Nation to regulate

or otherwise seek to impose restrictions on the NPDES Permittees' operations within the waters of the Penobscot River and its tributaries and branches.

This motion is inarguably timely, as noted above. Intervention will neither delay nor prejudice the adjudication of the rights of the existing parties.

Thus, the requirements for permissive intervention are met.

In considering motions for permissive intervention, courts may also consider "'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, the NPDES Permittees' interest in ensuring that the Penobscot Nation cannot seek to regulate or otherwise impose restrictions on the NPDES Permittees' operations within the waters of the Penobscot River and its tributaries and branches is directly implicated by the present controversy.  Hence, the "just and equitable adjudication of the legal questions presented," requires the presence of the NPDES Permittees in this proceeding, as do "considerations of fairness," *Miller v. Silbermann*, 832 F. Supp. 663, 674 (S.D.N.Y. 1993).

Thus, even if this Court should find intervention as of right inappropriate in this case, it should grant permissive intervention to the NPDES Permittees under Rule 24(b).

## CONCLUSION

For the reasons given above, the Court should grant the NPDES Permittees leave to intervene, either as of right or permissive, pursuant to F.R. Civ. P. 24.

DATED:   February 18, 2013 */s/ Catherine R. Connors*
Matthew D. Manahan
Catherine R. Connors
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
207-791-1100
*Attorneys for the NPDES Permittees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2013, I electronically filed the foregoing document entitled Motion to Intervene with the Clerk of Court using the CM/ECF system which will send the notification of such filing to the following:

**KAIGHN SMITH , JR.**
Drummond Woodsum
84 Marginal Way
Suite 600
Portland, ME 04101-2480
207-772-1941
Email: ksmith@dwmlaw.com

**PAUL D. STERN**
Office of the Maine Attorney General
Six State House Station
Augusta, ME 04333-0006
207-626-8568
Email: paul.d.stern@maine.gov


DATED: February 18, 2013          */s/ Catherine R. Connors*
                                  Catherine R. Connors

                                  PIERCE ATWOOD LLP
                                  Merrill's Wharf
                                  254 Commercial Street
                                  Portland, ME 04101
                                  207-791-1100

                                  *Attorneys for the NPDES Permittees*