UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PENOBSCOT NATION, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | )   Case No. 1:12-cv-254-GZS |
| JANET T. MILLS, et al. | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

**ORDER ON MOTION TO INTERVENE**

Before the Court is the Motion To Intervene Of City Of Brewer, Town Of Bucksport, Covanta Maine, LLC, Town Of East Millinocket, Great Northern Paper Company, LLC, Guilford-Sangerville Sanitary District, Town Of Howland, Kruger Energy (USA) Inc., Town Of Lincoln, Lincoln Paper And Tissue, LLC., Lincoln Sanitary District, Town Of Mattawamkeag, Town Of Millinocket, Town Of Orono, Red Shield Acquisition LLC, True Textiles, Inc., Veazie Sewer District, and Verso Paper Corp. (collectively "NPDES Permittees") With Supporting Memorandum Of Law (ECF No. 12) ("Motion To Intervene"). For the reasons stated below, the Court GRANTS NPDES Permittees' Motion To Intervene (ECF No. 12).

**I.      BACKGROUND**

On August 8, 2012, Maine Attorney General William Schneider sent a letter to Chandler Woodcock, the Commissioner of the Department of Inland Fisheries and Wildlife, and Colonel Joel Wilkinson, Maine Warden Service, stating that:

> [T]he Penobscot Nation may lawfully regulate hunting on, and restrict access to, the islands within the [Penobscot] River from Medway to Old Town that comprise its Reservation, but may not regulate activities occurring on, nor restrict public access to, the River itself. With the exception of the islands that form the Penobscot Indian Reservation, the River is open for public use and enjoyment,

and the State of Maine has exclusive regulatory jurisdiction over activities taking place on the River.

(Aug. 8, 2012 Ltr. from William Schneider to Chandler Woodcock and Colonel Joel T. Wilkinson (ECF No. 8-3) ("August 8 Letter") at Page ID # 86.) The letter went on state that "the River itself is not part of the Penobscot Nation's Reservation, and therefore is not subject to its regulatory authority or proprietary control." (Id. at Page ID # 87.) The letter was also sent to the Chief of the Penobscot Nation, Kirk Francis, with the request that Chief Francis inform the Attorney General "whether the Penobscot Indian Nation disagrees with its conclusions. To the extent there is disagreement, I believe it is important that the matter be resolved in an appropriate forum." (Id. at Page ID # 85.)

On August 20, 2012, Plaintiff Penobscot Nation filed suit against the Attorney General for the State of Maine, the Commissioner for the Maine Department of Inland Fisheries and Wildlife, and the Colonel for the Maine Warden Service ("Defendants") challenging the statements contained in the August 8 Letter. The Second Amended Complaint[1] seeks declaratory and injunctive relief that the statements in the August 8 Letter regarding regulatory authority over the Penobscot River are incorrect and that the Penobscot Nation maintains exclusive regulatory authority over activities occurring on the Main Stem of the Penobscot River.[2] (Second Am. Compl. (ECF No. 8) at ¶¶ 53, 55 & 60.) Among other requests for declaratory and injunctive relief, the Second Amended Complaint requests that this Court declare that "the Penobscot Nation has exclusive authority to regulate hunting, trapping or other taking of wildlife within the waters of the Main Stem of the Penobscot River" and that "Penobscot Nation law

---

[1] In January of 2013, Janet Mills was sworn in as Maine Attorney General. The Penobscot Nation amended their Complaint to reflect this change. (See Pls.' Opp'n To Mot. To Intervene (ECF No. 18) ("Pl.s' Response") at 2.)

[2] Specifically, the Second Amended Complaint indicates that the controversy involves the "waters surrounding Indian Island and other islands in the so-called 'main stem' of the River northward thereof up to the confluence of the East and West Branches (the 'Main Stem')." (See Second Am. Compl. (ECF No. 8) ¶ 1.)

enforcement officers have exclusive authority to enforce the [Penobscot] Nation's laws governing hunting, trapping or other taking of wildlife within the water of the Main Stem of the [Penobscot] River."  (Id. ¶¶ 59(d), (e).)  Correspondingly, the Penobscot Nation asserts that its Indian Territory includes the waters of the Main Stem of the Penobscot River.  (Id. ¶¶ 35-39.)

On February 15, 2013, the Defendants answered the Second Amended Complaint and asserted a counterclaim and request for declaratory relief.  (Answer & Countercl. (ECF No. 10) ¶¶ 1-13.)  Through their Answer and Counterclaim, Defendants request that the Court declare that the "Penobscot Nation has no authority or jurisdiction under the State and Federal Settlement Act or any other law or provision to regulate hunting and fishing by non-tribal members on the waters of the Main Stem of the Penobscot River."  (Id. at Page ID # 99.)  Defendants further request that the Court find that "[t]he waters of the [M]ain [S]tem of the Penobscot River are not within the Penobscot Nation Reservation."  (Id.)

Putative intervenors, the NPDES[3] Permittees, are municipalities and companies with permits that authorize the discharge of water or treated wastewater into the Penobscot River or its branches or tributaries.  In addition, some of the NPDES Permittees, the towns of Howland, Lincoln and Mattawamkeag, are municipalities that border the Main Stem of the Penobscot River.

On February 18, 2013, the NPDES Permittees filed the Motion To Intervene and their proposed Answer And Counterclaim seeking intervention as of right or permissive intervention, in the alternative, under Federal Rule of Civil Procedure 24.  (See Mot. To Intervene (ECF No. 12); Answer & Countercl. (ECF No. 11).)  The NPDES Permittees seek to intervene in this case in order "to ensure that their operations will not be subject to regulation by the [Penobscot Nation], which asserts in this action that its Reservation includes the Penobscot River upstream

---

[3] "NPDES" is the acronym for National Pollutant Discharge Elimination System.

of Indian Island . . . and that it is entitled to regulate the waters of the Penobscot River (and its tributaries and branches)." (Mot. To Intervene at 2.) In addition, the putative intervenors of the towns of Howland, Lincoln and Mattawamkeag argue that "the instant action makes a direct territorial attack on [those three towns]" because "supported by Maine law, [] the disputed territory falls within their borders." (Reply In Supp. Of Mot. To Intervene (ECF No. 19) at 3.) Accordingly, through their Answer And Counterclaim, the NPDES Permittees request that this Court declare that "the waters of the [M]ain [S]tem of the Penobscot River are not within the Penobscot Nation reservation." (Answer & Countercl. at 10.) The NPDES Permittees indicate that the State of Maine (presumably referring to Defendants) does not oppose the Motion To Intervene. (Mot. To Intervene at 1.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, on timely motion, a court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In addition, "permissive intervention ordinarily must be supported by independent jurisdictional grounds." Int'l Paper Co. v. Town of Jay, 887 F.2d 338, 346 (1st Cir. 1989). The First Circuit has noted that the threshold for permissive intervention is low, and that once the threshold requirements are satisfied, the district court may "consider almost any factor rationally relevant." Dagget v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999); Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999). Thus, the decision to grant or deny a motion for permissive intervention is within the sound discretion of the district court. See Dagget, 172 F.3d at 113 ("the district court . . . enjoys very broad discretion in granting or denying the motion" for permissive intervention).

## II. DISCUSSION

The starting point for permissive intervention is that the parties seeking intervention have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).[4] The NPDES Permittees readily meet this low standard. In the main action, the Penobscot Nation asks that this Court decide who has the authority to regulate the Main Stem of the Penobscot River and the limitations on that regulation. Among other requests, the Penobscot Nation requests a declaratory judgment that "Penobscot Nation members enjoy the right to take fish for their individual sustenance, free from any state authority, from the waters of the Main Stem of the River." (Second Am. Compl. ¶ 60(b).) The answer to that question turns on Maine's Indian Claims Settlement Act and the provision regarding regulation of fish and wildlife resources, 30 M.R.S.A. § 6207. Section 6207(4) of that Act provides that: "Notwithstanding any rule or regulation promulgated by the commission or any other law of the State, the members of . . . the Penobscot Nation may take fish, <u>within the boundaries of their respective Indian reservations</u>, for their individual sustenance subject to the limitations of subsection 6." 30 M.R.S.A. § 6207(4) (emphasis added). Accordingly, the main action calls upon the Court to define the scope of the Penobscot Nation's Indian Reservation.[5]

Through their proposed Answer and Counterclaim, the NPDES Permittees seek an answer to the same question. (See Answer & Countercl. ¶ 5.) Even though the NPDES Permittees ask the question for a different reason, namely whether the Penobscot Nation would be enabled to regulate water discharges along the Penobscot River if the Main Stem were part of their Indian Reservation, there is no doubt that a common question lies between the main action

---

[4] A motion for permissive intervention must also be timely. Fed. R. Civ. P. 24(b)(1). The Penobscot Nation does not contest that the Motion To Intervene is timely. (See Pl.s' Response at 4 ("Timeliness is not at issue.").)

[5] At this time, the Court notes that it makes no decision and takes no stance on the potential outcome of this question.

5

and the claim of the NPDES Permittees.[6] Therefore, the Court finds that there is a common question of fact or law.

In order for NPDES Permittees to permissively intervene, the Court must have independent jurisdictional grounds to support the intervention. Int'l Paper Co. v. Town of Jay, 887 F.2d 338, 346 (1st Cir. 1989). The NPDES Permittees brought their Counterclaim For Declaratory Relief pursuant to the State Settlement Act, 14 M.R.S.A. § 6201 and the Federal Indian Claims Settlement Act of 1980, 25 U.S.C. § 1721. As a case arising under the law of the United States, the Court finds that it has independent jurisdictional grounds to consider the NPDES Permittees' Counterclaim.[7] See 28 U.S.C. § 1331.

In opposing permissive intervention, the Penobscot Nation raises two arguments. First, it asserts that allowing the NPDES Permittees to intervene in this case will "significantly 'increase the demands of the case management for the court.'" (Pl.'s Response (citing Tutein v. Daley, 43 F. Supp. 2d 113, 131 (D. Mass. 1999)).) While allowing the NPDES Permittees to permissively intervene will undoubtedly add a measure of time and complication to this case that would not occur in their absence, the Penobscot Nation has not pointed to any particular prejudice or delay

---

[6] In opposing the Motion To Intervene, the Penobscot Nation does not appear to argue that the main action and the NPDES Permittees' action lack a common question of fact or law. (Pl.s' Response (ECF No. 18) at 10-11.) Rather, the Penobscot Nation maintains that the common questions are adequately represented by Defendants.

[7] Without much explanation, the Penobscot Nation declares that this Court lacks subject matter jurisdiction because the NPDES Permittees lack standing. (Pl.'s Response at 11.) As noted above, the Court has subject matter jurisdiction over the Counterclaim asserted by the NPDES Permittees. With regard to standing, the Penobscot Nation simply declares that the NPDES Permittees' "asserted interest in this case is too thin to even establish Article III standing. . . . Put simply, there is no present case or controversy involving the interests they seek to interject." (Id. at 6 n.4.) Assuming that permissive intervenors must have standing, the Court finds that the NPDES Permittees have standing in this case. See Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 109 (1st Cir. 1999) (stating that "the circuits are divided as to whether an intervenor as of right must possess standing under Article III, and the Supreme Court has reserved judgment on the point. This circuit has not taken a position on the issue nor need we decide it here[.]"). In short, regulated entities, such as the NPDES Permittees, have standing to participate in a federal lawsuit that has the potential to decide who may regulate them, and those municipal intervenors whose territories may be defined through this litigation have standing to participate in the litigation that may impact their borders. See, e.g., Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009) (finding that an entity seeking federal licensing approval had standing to challenge a state regulator's ability to impose conditions on that approval and that the entity "need not show that the defendant's actions are the very last step in the chain of causation for the injury." (internal citations omitted).).

that it will suffer.  Moreover, "delay in and of itself does not mean that intervention should be denied.  The rule requires the court to consider whether intervention will 'unduly delay' the adjudication."  7C Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 1913 (2007).  The Court finds that the addition of the NPDES Permittees will not unduly delay the adjudication of this case because this case is still in its early stages, with discovery not set to be completed for several months, and the NPDES Permittees intervened within three days of Defendants answering the Second Amended Complaint.  (See Order Granting Mot. To Amend Scheduling Order (ECF No. 16); Mot. To Intervene (ECF No. 12).)

Second, the Penobscot Nation urges that permissive intervention should not be allowed because the NPDES Permittees' interests are adequately represented by Defendants.  "Courts are understandably reluctant to grant permissive intervention to an applicant where interests are already fully represented by one of the existing parties."  6 James Wm. Moore et al., Moore's Federal Practice ¶ 24.10[2][d] (2000).  Under the more exacting standard for intervention as of right, one way to show that an intervenor will not be adequately represented by a party to the lawsuit is "to demonstrate that its interests are sufficiently different in kind or degree from those of the named party."  B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 546 (1st Cir. 2006).  The NPDES Permittees assert that their interests will not be fully represented by Defendants.  Beyond answering the Second Amended Complaint and not objecting to the Motion To Intervene, the Court does not have before it a statement of Defendants' interests, goals or future plans in this litigation.  Nonetheless, it is fair to assert that the Defendants' interests extend to protecting the State of Maine, its regulatory authority and the interests of its citizens.  In contrast, the NPDES Permittees' interests are narrower in scope and of a different type.  The NPDES Permittees represent both private and municipal interests.  They include private

companies that discharge waste water into the Main Stem of the Penobscot River and accordingly have a private, economic interest in this case. They also include municipalities whose territories may be defined through this litigation. The Court finds that these interests are sufficiently divergent from Defendants' interests that the NPDES Permittees are not adequately represented by Defendants. Similarly, in Conservation Law Foundation of New England, Inc. v. Mosbacher, the First Circuit found that the interests of the Secretary of Commerce differed in type and scope from the interests of seven commercial fishing groups where the underlying lawsuit was brought by environmental groups challenging that the Secretary of Commerce had inappropriately approved a fishery plan. 966 F.2d 39, 40, 44 (1st Cir. 1992). The First Circuit noted that "a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity. In that instance, the agency might find itself in a conflict of interest." Id. at 44-45.

The Penobscot Nation asserts that because the NPDES Permittees and Defendants were aligned in a prior case, Maine v. Johnson, 498 F.3d 37 (1st Cir. 2007), that their interests are necessarily similarly aligned here. It is true that in Maine v. Johnson, "[s]everal towns and other entities subject to permitting under the Clean Water Act . . . intervened in favor of Maine's authority," but it is also clear that in that case the intervenors pressed arguments different in type and scope than the State of Maine.[8] See Maine v. Johnson, 498 F.3d at 41. The primary question presented by this litigation -- which party has hunting and fishing regulatory authority over the Main Stem of the Penobscot River – will have a myriad of potential regulatory, financial, economic and municipal ramifications. The impact on each of the NPDES Permittees and the State is predictably different in type and scope. While Defendants and the NPDES

---

[8] In addition, it is not clear from the record exactly who intervened in Maine v. Johnson, as the First Circuit opinion refers only to intervention by "several towns and other entities" and neither party provides further information on this issue. See Maine v. Johnson, 498 F.3d at 41.

Permittees may be united at this point in time over the response to the Second Amended Complaint, it is not clear that they will be united on any further questions or potential ramifications. Therefore, the Court finds that the NPDES Permittees' interests are not adequately represented by Defendants.

In addition to the factors favoring intervention above, the Court finds that the addition of the NPDES Permittees will add value to this litigation. Where "the applicant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues," permissive intervention is favored. 6 James Wm. Moore et al., Moore's Federal Practice ¶ 24.10[2][b] (2000). Here, because the NPDES Permittees represent unique interests among the parties to this litigation, their participation in the litigation will aid the Court in developing a full picture of the legal and factual issues. Moreover, because the potential ramifications of the outcome of this case may directly affect those interests, the NPDES Permittees' participation contributes to the just adjudication of this case.

Because the Court finds that permissive intervention is appropriate, the Court need not additionally consider whether the NPDES Permittees are entitled to intervention as of right. Therefore, for the reasons discussed above, in its discretion, the Court GRANTS the Motion To Intervene (ECF No. 12). See Dagget, 172 F.3d at 113

## V. CONCLUSION

For the reasons explained herein, NPDES Permittees' Motion To Intervene (ECF No. 12) is GRANTED.

SO ORDERED.

/s/ George Z. Singal<br>
United States District Judge

Dated this 18th day of June, 2013.