UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PENOBSCOT NATION,<br><br>            Plaintiff and Counterclaim Defendant,<br>v.<br><br>MAINE ATTORNEY GENERAL, et al.,<br><br>            Defendants<br><br>and<br><br>CITY OF BREWER, et al.<br><br>            Intervenors and Counterclaim Plaintiffs | Docket # 1:12-cv-00254-GZS |

### INTERVENORS AND COUNTERCLAIM PLAINTIFFS' OBJECTION TO PLAINTIFF'S MOTION TO DISMISS INTERVENORS' CLAIMS, DEFENSES, AND COUNTERCLAIMS

Consistent with the scorched earth litigation strategy that Plaintiff has followed elsewhere[1] -- presumably because it has no economic disincentive not to multiply pleadings, with the federal government paying its legal bills -- Plaintiff has filed a motion to dismiss that even it acknowledges (Motion at 2 n.2) is a rehash of its unsuccessful opposition to the NPDES Permittees' motion to intervene.  It is disappointing that Plaintiff repeatedly directs federal resources toward an effort to silence its neighbors and to deny them their day in court -- especially when this Court has expressly found that Intervenors and Counterclaim Plaintiffs ("Intervenors") will add value to this litigation, "aid the Court in developing a full picture of the

---

[1] *See*, *e.g.*, *Penobscot Nation v. Georgia-Pacific Corp.*, 254 F.3d 217 (1st Cir. 2001), *rehearing and rehearing en banc denied*, Orders dated August 24, 2011 (1st Cir.), *cert. denied*, 534 U.S. 1127 (2002), *related case* 2001 ME 68, 770 A.2d 574, *cert. denied*, 534 U.S. 1019 (2001).

legal and factual issues," and "contribute[] to the just adjudication of this case." (PACER Doc. #24.)

Intervenors, including budget-strapped municipalities, with no endless source of funding, will be brief.

**I.     The viability of all the claims and defenses before the Court is the same as to all parties.**

Plaintiff seeks declaratory and injunctive relief based on the claim that the Maine Indian Claims Settlement Act of 1980, 25 U.S.C. §§ 1721 *et seq*. ("MICSA"), gives it the authority to regulate waters in the Penobscot River, because those waters allegedly fall within its territory. Because resolution of the claim involves interpretation of a federal statute, Plaintiff's complaint alleges federal jurisdiction based on 28 U.S.C. § 1331. (PACER Doc. #8, ¶¶ 2-4, 14, 21-23.) [2]

In their Counterclaim, the Defendant state officials assert their contrary understanding of MICSA's meaning as excluding the waters of the Penobscot River from Plaintiff's reservation. (PACER Doc. #11, Counterclaim, ¶ 9.) Defendants further note, *inter alia*, that an actual controversy exists because Plaintiff has confronted non-tribal members and has demanded that they purchase permits from Plaintiff for access to the Penobscot River, when Plaintiff has no authority to do so. (*Id.*, ¶¶ 11-12.)

In their Answer and Counterclaim, Intervenors echo the state Defendants' position: MICSA means there is no Plaintiff ability to regulate Penobscot River waters, which fall outside Plaintiff's reservation. (PACER Doc. #25, ¶ 25.)

In short, the same federal question, grounding jurisdiction under 28 U.S.C. § 1331, is presented as to each claim or defense asserted by each party: what does MICSA's language mean as to Plaintiff's ability to regulate the Penobscot River? Does Plaintiff's reservation

---

[2] As an Indian tribe, Plaintiff additionally asserts jurisdiction under 28 U.S.C. § 1362.

include Penobscot River waters?  An actual controversy exists as to this commonly asserted claim and defense, because the parties disagree as to what MICSA means, and because Plaintiff is actively attempting to enforce its interpretation on non-tribal members.

Because Intervenors seek an interpretation of the same federal statute, in the same context of determining whether Plaintiff's reservation includes Penobscot River waters, the jurisdictional basis and the viability of Intervenors' claims and defenses are the same as those asserted by the other parties.  (*See* PACER Doc. #24 [Court's Order granting intervention] at 6 (noting that Intervenors' counterclaim, which echoes that of the state Defendants, constitutes a case arising under the law of the United States assertable under 28 U.S.C. § 1331).)

As commentators have stated:  "In federal question cases there should be no problem of jurisdiction with regard to an intervening defendant[.]"  C. Wright, A. Miller, M. Kane, 7C *Federal Practice and Procedure*, § 1917 at 601 (2007).  If a plaintiff has asserted a viable federal question under Section 1331 and Rule 12(b)(6), and if the intervenor seeks to litigate that same question, then jurisdiction is established for the intervenors' claims or defenses as well.  *See Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007).  If the plaintiff and/or defendant has stated a claim, then so has the intervenor.

Insofar as Intervenors understand Plaintiff's argument, it appears to be based on the premise that its suit against the state Defendants can only affect those Defendants.  (*See* Motion at 6, asserting that Plaintiff's claim "is strictly confined to the named state officials under *Ex Parte Young*" and nothing in its claim "suggests, in any way, that [Plaintiff] is poised to bring a coercive federal action against" Intervenors.)  This premise is clearly incorrect.

Whether Plaintiff currently anticipates pursuing "a coercive federal action" against Intervenors or not, Plaintiff seeks a declaration that it has exclusive authority to regulate within the waters of the main stem of the Penobscot River and to enforce its own laws in those waters. (PACER Doc. # 8 at 15.)  As this Court has noted, Intervenors have standing to participate in the litigation of this issue as entities potentially regulated by Plaintiff or negatively affected should Plaintiff succeed in its claim, and as municipalities "whose territories may be defined through this litigation" (PACER Doc. # 24 at 76 n. 7) – even assuming that independent jurisdiction and standing were needed, which are open questions.[3]  Indeed, even *stare decisis* impact alone is sufficient to support intervention, permissive or as of right.  *See* 7C *Federal Practice & Procedure*, § 1910 at 450-51.

In sum, that Plaintiff would like to prevent Intervenors from being heard in this action, which seeks to define the scope of Plaintiff's regulatory authority and the boundaries of its reservation, is not a basis to find that Intervenors lack standing, or that this Court has no jurisdiction to include them.

---

[3] *See Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011) (no need for independent jurisdictional basis for permissive intervention when intervenor raises no new claims in an action based on federal question jurisdiction.).  In *International Paper Co. v. Town of Jay*, 887 F.2d 338, 346 (1st Cir. 1989), the First Circuit said that independent jurisdiction is "ordinarily" needed for permissive intervention.  Shortly thereafter, Congress revised 28 U.S.C. § 1367(a) and (b), clarifying that supplemental jurisdiction limits claims based on diversity jurisdiction.  *See Mangual v. Rotger-Sabat*, 317 F.3d 35, 61-62 (1st Cir. 2003) (noting that the "traditional" rule was that standing was required for permissive intervenors, but, in part because of the 1990 amendments to Section 1367, "the standing requirements for intervenors are now greatly confused" as to whether an intervenor, whether permissive or as of right, must have Article III standing when the original parties remain in the case.  Observing that the circuits were split, the Court ruled that it did not have to decide on the issue because the intervenor had sufficient standing under Article III.).

Notably, in *International Paper*, in affirming denial of permissive intervention, the First Circuit noted that the district court (Carter, J.) had reasoned that there was no federal question jurisdiction over the controversy between the plaintiff and the putative intervenor (the State of Maine) "because Maine sought intervention only to address IP's state law claims."  877 F.2d at 345.  Here, of course, all the claims asserted by all the parties – Plaintiff, Defendants, and Intervenors – are federal.

## II. The downstream Intervenors have standing.

As noted, *supra* note 3, it is unclear whether any Intervenor must show standing in this matter. In any event, Plaintiff's argument that the Intervenors located or discharging downstream of Indian Island on the main stem of the Penobscot River have no standing "to be a part of a case that focuses only on the Main Stem" lacks merit for multiple reasons.

First, as noted, this suit seeks to define the boundaries of Plaintiff's reservation and Plaintiff's ability to regulate waters of the Penobscot River. That Plaintiff has sought a declaration and injunctive relief focusing on the main stem of the River does not mean that the interpretation of MICSA required to be made in this suit will have no impact outside the main stem. The source of Plaintiff's claim are allegations that its aboriginal territory is centered on "the Penobscot River"; that its members have relied on fishing and hunting "on the River"; and that MICSA protects these rights. (PACER Doc. # 8, ¶¶ 19-20.) Nowhere does Plaintiff identify the limits of its territory as only falling within the main stem, or suggest that any interpretation of MICSA which it advances in this action would limit its territory only to the main stem.

As noted in the Intervenors' reply in support of its motion to intervene, Intervenors, both upstream and downstream, expressly asked Plaintiff whether it would clarify that it was not taking the position that it could regulate their discharges; Plaintiff refused to do so. (PACER Doc. # 19 at 1-2 & Ex. 1-2.) Plaintiff's statement in its Motion (p. 10 n.5) that it "has never claimed [hunting and fishing] authorities south of Indian Island" is not an enforceable stipulation that it has no legal right to regulate that could be a logical outcome of the interpretation of MICSA it will advance in this action. Plaintiff's representative similarly stated that this case is "not about the regulation of pollution discharges" (PACER Doc. # 19-2), when the allegations in Plaintiff's complaint clearly indicate the contrary.

Second, the Penobscot River is one connected body of water. If, as Plaintiff's claim, it regulates the area above the downstream Intervenors, then Plaintiff's allowances of discharges will affect those Intervenors. If Plaintiff allows more discharges upstream, then because the River can only sustain so much total maximum loading, the downstream Intervenors will be able to discharge less. Conversely, if Plaintiff decides to allow fewer discharges upstream, then under the state antidegradation statute required under federal law the impact of that decision could result in new in-stream uses and levels of water quality in the river (upstream and downstream) which, in turn, would restrict downstream discharges which must protect and maintain the new water quality and in-steam uses. 38 M.R.S. § 464(4)(F)(4).

Plaintiff states that Treatment as a State ("TAS") status upstream (as noted previously, and not denied by Plaintiff to be a potential consequence of a judicial finding in Plaintiff's favor here) could not affect downstream entities "in any way[.]" (Motion at 10 & n.5.) This assertion can most charitably be characterized as disingenuous. The TAS statute, 33 U.S.C. § 1377(e), on its face states that when giving a tribe TAS status, the federal authorities

> shall consult affected States sharing common water bodies and provide a mechanism for the resolution of any unreasonable consequences that may arise as a result of differing water quality standards that may be set by States and Indian tribes located on common bodies of water. Such mechanism shall provide for explicit consideration of relevant factors including, but not limited to, the effects of differing water quality permit requirements on upstream **and downstream** dischargers ….

33 U.S.C. § 1377(e) (emphasis supplied).

## CONCLUSION

Plaintiff's Motion is devoid of merit. It is a motion to reconsider re-asserted to multiply these proceedings. The Motion should be denied.

| | |
|---|---|
| DATED:   August 16, 2013 | */s/ Catherine R. Connors* <br> Catherine R. Connors <br> Matthew D. Manahan <br> PIERCE ATWOOD LLP <br> Merrill's Wharf <br> 254 Commercial Street <br> Portland, ME  04101 <br> 207-791-1100 <br> *Attorneys for the NPDES Permittees* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2013, I electronically filed the foregoing document entitled Intervenors and Counterclaim Plaintiffs' Objection to Plaintiff's Motion to Dismiss Intervenors' Claims, Defenses, and Counterclaims with the Clerk of Court using the CM/ECF system which will send the notification of such filing to the following:

**KAIGHN SMITH, JR.**
Drummond Woodsum
84 Marginal Way
Suite 600
Portland, ME  04101-2480
207-772-1941
Email: ksmith@dwmlaw.com

**PAUL D. STERN**
Office of the Maine Attorney General
Six State House Station
Augusta, ME  04333-0006
207-626-8568
Email: paul.d.stern@maine.gov


DATED:   August 16, 2013          */s/ Catherine R. Connors*
                                  Catherine R. Connors

                                  PIERCE ATWOOD LLP
                                  Merrill's Wharf
                                  254 Commercial Street
                                  Portland, ME 04101
                                  207-791-1100

                                  *Attorney for the NPDES Permittees*

{W3807832.4}

8