EXHIBIT G



# UNITED STATES
## DEPARTMENT OF THE INTERIOR
### OFFICE OF THE SOLICITOR
WASHINGTON, D.C.  20240

MAY 1 7 1983

Mr. Kenneth A. Plumb, Secretary
Federal Energy Regulatory Commission
Washington, D.C.  20426

        Re:  Project No. 2600
             Bangor Hydro Electric Company

Dear Mr. Plumb:

Thank you for your letter of April 5, 1982, which asked six questions con-
cerning the comments submitted by this Department in response to the notice
of application filed by Bangor Hydro Electric Company for relicensing of
its West Enfield Project No. 2600.  We will attempt to answer the questions
in the order in which they were submitted:

        (1)  Yes, Interior has received a survey of the islands and
        other Indian lands which would be affected by this proposed
        project.  Copies of the survey and maps are enclosed for
        your ready reference.

        (2)  Yes, the survey is adequate to determine what impact
        the proposed Enfield Dam elevation will have on Indian
        territory.  The survey shows that 30-40 acres of Indian
        land will be inundated.

        (3)  Title in fee simple to the subject islands and affected
        lands is held by the State of Maine in trust for the benefit
        of the Penobscot Nation which possesses the right of perpetual
        occupancy and use.  Such lands are also subject to federal
        restrictions against alienation as provided by the Maine Indian
        Claims Settlement Act of 1980.  (See 25 U.S.C. § 1724 (g)(2)).

        (4)  The only interest of the United States is expressed in
        answer to question No. 3 above.

        (5)  The status of the above mentioned property has only
        changed insofar as the restriction against alienation was
        imposed by the Maine Indian Claims Settlement Act.  As a
        result, any alienation of this property must be done in
        accordance with that Act.

-2-

(6)  Interior's position concerning the affect of the land's
restricted status on the proposed hydroelectric project is
generally explained in the attached memorandum opinion, but
the application of 25 U.S.C. § 324, requiring the consent of
tribal officials for grants of right-of-way is not addressed
in the memorandum.  Note that under 25 U.S.C. § 1724(g)(3)
consent of tribal officials is necessary for a right-of-way
easement.  Whether the consent of Indian allottees is required
is a matter of Penobscot tribal law.  We defer to tribal
officials on this issue.

We hope that this information is helpful in your consideration of the application,
but if additional information is required, please advise.

Sincerely,

Larry Jensen

Lawrence J. Jensen
Associate Solicitor
Division of Indian Affairs


Enclosures


bcc: Solicitor's RF (1)
     Docket RF
     DIA RF
     JScott RF (2)
     TVollmann RF (1)
     CDavis RF

SOL/DIA/JScott/cde/4-22-83/39331/Doreen's Tape #XXX
Revised by TVollmann: 5/16/83



UNITED STATES
DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR
WASHINGTON, D.C.  20240

APR  1 3 1983

Memorandum

To      :  Area Director, Eastern Area Office
           Bureau of Indian Affairs

From    :  Associate Solicitor, Indian Affairs

Subject:   Bangor Hydro-Electric Co. - West Enfield Project,
           FERC 2600 - Application for Renewal and Amendment of
           License to the Federal Energy Regulatory Commission (FERC)

By memorandum dated January 24, 1983, you requested our opinion on certain
questions concerning the subject application for renewal of a license as
it relates to the Penobscot Indian Reservation.

Your first question seeks advice on what regulations apply to the granting
of rights-of-way upon tribal lands if the provisions of 25 CFR 161.2(c)
(1981) [recoded in 1982, 25 CFR 169.2(c)] are applicable.  This subsection
provides in pertinent part:

> (c)  The regulations contained in this Part 169 do
>       not cover the granting of rights-of-way upon
>       tribal lands within a reservation for the purpose
>       of constructing, operating, or maintaining dams,
>       water conduits, reservoirs, powerhouses, trans-
>       mission lines or other works which shall constitute
>       a part of any project for which a license is
>       required by the Federal Power Act. . . .

Notwithstanding this subsection, we are of the opinion that Part 169 does apply
to Reservation lands and other tribal lands of the Penobscot Nation acquired
in Penobscot Indian Territory under the provisions of the Maine Indian Claims
Settlement Act of 1980 (25 U.S.C.A. § 1721 et seq.), and is therefore appli-
cable to the granting of the right-of-way sought by the subject application.

Section 5(g)(3)(D) of the Settlement Act provides that lands within Penobscot
Indian Territory, of which the Penobscot Reservation is a part, may be subject
to rights-of-way in accordance with the Act of February 5, 1948 (25 U.S.C.
§§ 323-328), which Part 169 is designed to implement.  The exception in .

2

section 169.2(c) is evidently intended to address those situations where an Indian tribe is entitled to annual charges for the use of its reservation under a Federal Power Act license, as provided by 16 U.S.C. § 803(e). Receipt of such annual charges obviates the need for compensation under a right-of-way agreement. The Federal Power Act defines "reservations", 16 U.S.C. § 796(2), as "tribal lands embraced within Indian reservations, . . . and other lands and interest in lands owned by the United States," (emphasis added). Since the fee title to the Penobscot Reservation is not held by the United States, this would indicate exclusion of the tribal land of the Nation from any right to annual charges under the Federal Power Act. Thus, only a right-of-way would provide the Penobscot Nation with any compensation for the use of its lands.

25 CFR §169.1(d) defines "Tribal land" as "land or any interest therein . . . title to which is held by any tribe subject to Federal restrictions against alienation or encumbrances. . . ." This is descriptive of the beneficial interest in the Reservation lands held by the Nation since fee title to such land is apparently held by the State of Maine in trust for the Nation subject to federal restrictions against alienation. See 25 U.S.C. § 1724(g)(2). If the regulations in Part 169 did not apply to this proposed right-of-way across the Penobscot Reservation, then there would be a lack of regulation to implement the clear provisions of the Settlement Act.

Your second question seeks our opinion as to whether the extent and compensation of the entire encumbrance (license) should be addressed? It is our understanding that negotiations between the Nation and Bangor Hydro-Electric Company have been in progress for some time, and we presume that this question has been discussed, but we do not have sufficient information at this time to give you an informed opinion.

*Larry Jensen*

Lawrence J. Jensen

bcc: Docket File
JScott RF (2)
TVollmann RF
CGDavis RF
SOL RF
DIA RF

SOL/DIA/JScott:cgd/4-13-83/Tape #EE, Index #3