UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PENOBSCOT NATION,<br><br>      Plaintiff,<br><br>UNITED STATES OF AMERICA, on its own behalf, and for the benefit of the Penobscot Nation<br><br>      Plaintiff-Intervenor,<br><br>v.<br><br>THE STATE OF MAINE; JANET T. MILLS, Attorney General for the State of Maine; CHANDLER WOODCOCK, Commissioner for the Maine Department of Inland Fisheries and Wildlife; and JOEL T. WILKINSON, Colonel for the Maine Warden Service; each in his/her official capacity,<br><br>      Defendants. | Civ. No. 1:12-cv-00254-GZS |

**UNITED STATES' COMPLAINT-IN-INTERVENTION**

The United States at the request of the Secretary of the Interior and pursuant to the authority of the Attorney General, complains and alleges as follows:

      **I.**    **NATURE OF THE COMPLAINT**

1. The United States joins this action on its own behalf and as trustee for the Penobscot Nation ("the Nation") against the State of Maine and its officials. This complaint seeks prospective declaratory and injunctive relief, requiring the State and its officials to

recognize the right of the Nation to exercise its federally-guaranteed sustenance fishing rights and hunting rights in waters of the Penobscot River ("River") surrounding Indian Island and other islands northward in the River ("Reservation waters") up to the confluence of the East and West Branches, an area delineated as the "Main Stem."

## II.  JURISDICTION

2. This action arises under the Constitution and laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1345, as well as 28 U.S.C. § 1331, 28 U.S.C. § 1362. Relief may be awarded pursuant to 28 U.S.C. § 2201 and 2202. This action is brought by the United States to protect the rights of the Nation and its members under the United States Constitution and Federal law to be free from unlawful state interference with the Nation's right to regulate and exercise its sustenance fishing and other statutorily guaranteed rights within the Reservation waters of the Main Stem.  This action involves an actual controversy requiring federal judicial relief.

## III. VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims herein arose within the District of Maine, and the Main Stem of the Penobscot River is located within such District.

## IV. PARTIES

4. Plaintiff-Intervenor United States in its own right and as trustee for federally recognized tribes has intervened in this action as a plaintiff to enforce federal law, including the Maine Indian Claims Settlement Act ("MICSA"), 25 U.S.C. §§ 1721-1735, which ratified and incorporated the Maine Implementing Act ("MIA"), Me. Rev. Stat. Ann. Tit. 30, §§6201-14, and to protect the Nation's Reservation boundaries, sustenance fishing right, lands, hunting rights,

2

and associated regulatory authorities.

5. Plaintiff Penobscot Nation is a federally recognized tribe of Indians.

6. Defendant State of Maine, through its officers, asserts exclusive regulatory jurisdiction over the Penobscot River in its entirety, to the exclusion of the Nation's rights, including the right to regulate its members' exercise of their federally guaranteed right to engage in sustenance fishing within the Reservation waters of the Main Stem. See Exhibit A.

7. Defendant Janet T. Mills is the Attorney General of the State of Maine and the chief legal officer of the State. She is responsible for representing the State in legal actions, for enforcing in court various state laws and regulations, and for advising state officials and agencies about legal matters within the state's jurisdiction.

8. Defendant Chandler Woodcock serves as the Commissioner of the Maine Department of Inland Fisheries and Wildlife.

9. Defendant Joel T. Wilkinson serves as the Colonel of the Maine Warden Service.

## V.   FACTS

10. Defendant State of Maine asserts exclusive regulatory jurisdiction over the waters of the Penobscot River in their entirety to the exclusion of any tribal sustenance fishing or other rights reserved by the Nation and guaranteed by federal law. See Exhibit A.

11. Defendant State of Maine in the counterclaim raised in its Answer to the Nation's Complaint contends that "[t]he Penobscot Indian Reservation does not include the waters of the Penobscot River." Dkt. No. 10 (Counterclaim for Declaratory Relief ¶ 9).

12. Since time immemorial, the Nation has possessed islands in the Penobscot River.

13. In treaties with the Penobscot Nation in 1796 and 1818, the State of Massachusetts purported to acquire Nation lands adjoining the banks of the Penobscot River but the Nation expressly retained as Nation lands islands in the River, beginning at Indian Island, with other islands north of that retained as well. Upon information and belief, it was the understanding of the parties to those treaties that the Nation retained, along with the islands in the River, ownership of some or all of the bed of the River in the Main Stem as well as the right to use the River.

14. The 1796 and 1818 treaties were void as a matter of law because they violated the federal Trade and Intercourse Act, 25 U.S.C. § 177, and the transfer of Penobscot lands under those treaties was unlawful.

15. Both the Penobscot Nation and the Passamaquoddy Tribe asserted claims for the possession of lands unlawfully taken from them in violation of the Trade and Intercourse Act. 25 U.S.C. § 1721(a)(1). With the intercession of the United States, the Maine land claims were settled, avoiding disruption to private landowners holding title. 25 U.S.C. § 1721(a)(6-7). This history is recounted in 30 M.R.S. § 6202 (finding that "[s]ubstantial economic and social hardship could be created for large numbers of landowners, citizens and communities in the State, and therefore to the State as a whole, if these claims are not resolved promptly").

16. The Maine land claims were settled through the enactment of federal legislation. MICSA ratified unlawful land transactions, like the treaties of the 1796 and 1818 between the State of Massachusetts and the Penobscot Nation. 25 U.S.C. §1723(a)(1), (b).

17. The MICSA ratified, and thereby made federal law, the MIA, 30 M.R.S. §§6201-14 . 25 U.S.C. §1725(b)(1). MICSA further establishes that the Nation is only "subject to the jurisdiction of the State of Maine to the extent and the manner provided in the Maine

Implementing Act." *Id.*

18. The MIA, as ratified by Congress, establishes as the Penobscot Indian Reservation those lands retained by the Nation in the 1818 treaty with Massachusetts that had not been "transferred to a person or entity other than a member of the Penobscot Nation subsequent to June 29, 1818." 30 M.R.S. § 6203(8). It further reserves and protects the right of Nation members to engage in sustenance fishing free of State interference or regulation within the bounds of the Penobscot Indian Reservation. 30 M.R.S. § 6207(4).

19. Upon information and belief, other than the Penobscot River, there are no places where Nation members may meaningfully exercise their sustenance fishing right. If, as the State asserts, the Nation's Reservation does not include waters of the Main Stem of the Penobscot River, the intent of Congress to preserve a Nation sustenance fishing right as part of the settlement of Maine land claims will have been nullified.

20. The MIA, as ratified by Congress, defines fish to include "inland fish and anadromous and catadromous fish when in inland water." 30 M.R.S. § 6207(9). Anadromous fish, like the salmon in the Penobscot River, spend part of their life in ocean waters and part of their life in inland waters. Upon information and belief, outside the Penobscot River there are no places on the Nation Reservation where Nation members may exercise their fishing right to harvest anadromous fish for sustenance purposes.

21. The State of Maine's counterclaim asserts at paragraph 10 that "[n]either the State of Maine nor any of its officials or employees . . . have prevented or attempted to prevent a member of the Penobscot Nation from taking fish from the waters of the Main Stem of the Penobscot River for individual sustenance." Dkt. No. 10. This assertion by the State neither recognizes the Nation's right to sustenance fish as guaranteed by the MIA nor provides assurance

5

to the Nation that it may exercise that and other rights guaranteed under the MIA free from State interference.

22. The parties to the settlement of the Maine land claims -- the State of Maine, the Penobscot Nation, and the United States -- agreed to expressly preserve the Nation's sustenance fishing right in Reservation waters and thereby intended that the Reservation encompass waters of the Penobscot River. In the MIA the State agreed, and Congress confirmed by adopting that Act in MICSA, that the Nation has authority to regulate "[h]unting, trapping or other taking of wildlife" in the Reservation waters and that the Nation's hunting regulations "may include special provisions for the sustenance of the individual members of . . . the Penobscot Nation. " 30 M.R.S. § 6207(1).

23. The MIA provides a mechanism by which the Commissioner of Inland Fisheries may ensure that the Nation's exercise of its right to regulate sustenance fishing, as well as hunting, trapping, and the taking of other wildlife in the Reservation waters does not deplete fish or wildlife stocks. 30 M.R.S. § 6207(6).

24. Pursuant to the MIA, the Penobscot Nation has the right to exercise exclusive jurisdiction within its Reservation over violations of ordinances adopted pursuant to its authorities under section 6207 of the MIA by members of the Nation. 30 M.R.S. § 6206(3). The State of Maine has "exclusive jurisdiction over violations of tribal ordinances by persons not members." *Id.* This shows that, in enacting the MIA, the State of Maine contemplated that valid Penobscot Nation ordinances promulgated under section 6207 would apply to non-members within the Reservation waters.

25. Furthermore, 30 M.R.S. § 6210(1) provides that Penobscot Nation law enforcement officers "have exclusive authority to enforce, within [Penobscot] Indian territory[y],

ordinances adopted under . . . section 6207, subsection 1." The MIA further provides that Penobscot Nation law enforcement officers "possess the same powers and are subject to the same duties, limitations and training requirements as other corresponding law enforcement officers under the laws of the State." 30 M.R.S. § 6210(4). Upon information and belief, the Penobscot Nation wardens patrolling the Main Stem waters of the Penobscot River are trained in the same State-run training programs alongside Maine State wardens and have long enjoyed excellent working relations with these State wardens and are also able to work effectively with non-tribal State prosecutors and courts when citations are issued to non-tribal members.

26. The State of Maine, as party to the settlement of the Maine land claims, in the years following enactment of that settlement, took the position that Nation members were authorized, under the MIA, to engage in sustenance fishing in the Penobscot River free of state interference. See Exhibit B.

27. Other than by resort to mechanisms provided in the MIA to protect fish and wildlife resources in the Penobscot River, and the enforcement authority of Maine courts provided in 30 M.R.S. § 6206(3) for violations of Nation ordinance by non-members, the State has no authority to interfere with Nation regulation of sustenance fishing, and the hunting, trapping, and taking of wildlife on its Reservation.

28. On August 8, 2012, then Attorney General William J. Schneider opined that "the [Penobscot] River itself is not part of the Penobscot Nation's Reservation, and therefore is not subject to its regulatory authority or proprietary control." Exhibit A.

29. The State of Maine has not been consistent in its positions with respect to the status of the River. For example, in 1997, the State of Maine asserted in a Federal Energy Regulatory Commission filing that "the Penobscot Reservation may generally be described as

including the islands in the Penobscot River above Old Town (except those conveyed between 1818 and 1980) and a portion of the riverbed between any reservation island and the opposite shore." Response to the Department of the Interior's April 9, 1997 Filings Pursuant to Sections 4(e) and 10(e) of the Federal Power Act at 13. See Exhibit C. Thus the State has previously recognized, at a minimum, that the Penobscot Indian Reservation includes some portions of the River's bed.

## VI. LEGAL CLAIMS

30. The United States repeats and realleges the foregoing paragraphs 1 through 29 as if fully set forth herein.

31. Pursuant to MICSA and the MIA, the Nation and the United States on the Nation's behalf relinquished claims to lands taken by Maine in violation of federal law. In return, among other things, MICSA and the MIA confirmed the Nation in its Reservation lands and delineated the scope of the Nation's sovereignty over those lands.

32. The Nation is guaranteed, by the MIA, a right to regulate sustenance fishing by Nation members in the waters of its Reservation. The Nation's members are guaranteed, by the MIA, a right to sustenance fish in the waters of the Nation's Reservation. The MIA expressly provides that the right to sustenance fish shall be exercised "[n]otwithstanding any rule or regulation promulgated by the commission or any other law of the State." 30 M.R.S. § 6207(4).

33. The Nation is guaranteed, by the MIA, a right to regulate sustenance hunting by Nation members on its Reservation. If the Nation promulgates ordinances that "include special provisions for the sustenance of individual members," these ordinances apply throughout the Nation's Indian Territory, which includes its Reservation waters. 30 M.R.S. § 6207(1).

34. By asserting that all the waters of the Main Stem of the Penobscot River are

solely subject to State regulation, the State of Maine is threatening to interfere with and / or deprive the Nation of its right to sustenance fish within the Nation's Reservation.

35. The Nation is guaranteed, by the MIA, a right to regulate "[h]unting, trapping or other taking of wildlife" in the waters of its Reservation. Ordinances promulgated under this authority apply throughout the Nation's Indian Territory, which includes its Reservation waters. 30 M.R.S. § 6207(1).

36. By asserting that all the waters of the Penobscot River are solely subject to State regulation, the State of Maine is threatening to interfere with and / or deprive the Nation of its right to regulate hunting, trapping, and the taking of wildlife within its Reservation.

37. Plaintiff-Intervenor United States has no adequate remedy at law. The damage to the Nation caused by the Defendants' actions cannot be measured by monetary relief. The right of the Tribe to exercise its governmental authority and its jurisdiction over its members and its Reservation lands and waters consistent with Federal law and without unlawful interference by the State must be confirmed through a declaration of the boundaries of the Penobscot Indian Reservation.

## VIII. PRAYER FOR RELIEF

WHEREFORE, the United States respectfully prays for the following relief:

38. A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and other applicable law, declaring that:

(i) The boundary of the Penobscot Indian Reservation, as affirmed by MICSA and the MIA, extends into the Main Stem of the Penobscot River (hereinafter, "Reservation waters");

(ii) The Nation's sustenance fishing rights, as affirmed by MICSA and the MIA, may be

exercised in the Reservation waters of the Penobscot River; and

(iii) The Nation, pursuant to MICSA and the MIA, has regulatory authority within the Reservation waters of the Penobscot River over

    (a) hunting, trapping or other taking of wildlife; and

    (b) sustenance fishing by tribal members.

39. An Order pursuant to the Court's equity jurisdiction permanently enjoining Defendants, their officers, agents, servants, employees and attorneys, and anyone acting in concert with them:

(i) from interfering with the exercise of sustenance fishing rights by Penobscot Nation members within the Reservation waters of the Penobscot River;

(ii) from interfering with the Nation's exclusive authority to regulate, pursuant to MICSA and the MIA, in the Reservation waters of the Penobscot:

    (a) hunting, trapping, and taking of wildlife; and

    (b) the exercise by the Nation's members of the sustenance fishing right; and

(iii) from taking any other actions within the Nation's Reservation that would interfere with the rights of the Nation and its members under Federal law.

40. An Order granting any such further relief as the Court may deem just and proper.

41. For costs of this action.

Respectfully submitted this 4th day of February 2014.

                                      ROBERT G. DREHER
                                      Acting Assistant Attorney General

                                      */s/ Steven Miskinis*
                                      Steven Miskinis, Trial Attorney
                                      U.S. Department of Justice
                                      Environment & Natural Resources Division

Indian Resources Section
L'Enfant Plaza Station
P.O. Box 44378
Washington, D.C. 20026-4378
Telephone: 202.305.0262
Telefax: 202.305.0271
steven.miskinis@usdoj.gov