UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:12-cv-00254-CZS |
| STATE OF MAINE, *et al.*, | ) | |
| Defendants | ) | |

**STATE DEFENDANTS' ANSWER AND COUNTERCLAIMS TO UNITED STATES COMPLAINT**

Defendants State of Maine, Janet T. Mills, Chandler Woodcock and Joel T. Wilkinson, by and through their undersigned attorneys, answer the United States Complaint as follows:

**I. NATURE OF THE COMPLAINT**

1.  Paragraph 1 of the Complaint contains characterizations of the Complaint not requiring a responsive pleading. To the extent that Paragraph 1 of the Complaint includes factual allegations, they are denied.

**II. JURISDICTION**

2.  Paragraph 2 of the Complaint contains legal conclusions not requiring a responsive pleading. To the extent that Paragraph 2 of the Complaint includes factual allegations, they are denied.

### III. VENUE

3. Paragraph 3 of the Complaint contains legal conclusions not requiring a responsive pleading. To the extent that Paragraph 3 of the Complaint includes factual allegations, they are denied.

### IV. PARTIES

4. Deny.

5. Admit.

6. Deny.

7. Admit.

8. Admit.

9. Admit

### V. FACTS

10. Admit that pursuant to the Maine Implementing Act, 30 M.R.S. 6201, *et seq.,* and the federal Maine Indian Land Claims Settlement Act, 25 U.S.C. 1721. *et seq.,* ("the Settlement Acts") the Penobscot Indian Nation ("PIN") does not have jurisdiction or authority to summons nontribal members to or adjudicate nontribal members in tribal court; or to exclude, regulate or require permits from boaters, fishermen, salvage loggers, hunters or trappers along the sides of, on or in the waters of the Penobscot River. Further admit that neither PIN or its members have an exemption from the State of Maine's jurisdiction, *inter alia,* over boating, fishing, hunting, trapping on or in the Penobscot River. Otherwise, deny.

11. Admit that paragraph 11 of the Amended Complaint quotes a portion of the pleading of Defendants Mills, Woodcock and Wilkerson. Otherwise, deny.

12. Deny.

13. Deny.

14. This paragraph contains legal conclusions not requiring a responsive pleading. To the extent that paragraph 14 of the Complaint includes factual allegations, they are denied.

15. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

16. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. In addition, this paragraph contains legal conclusions not requiring a responsive pleading. To the extent that paragraph 16 of the Complaint includes factual allegations, they are denied.

17. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

18. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

19. Deny. Admit that Maine has never interfered with PIN members engaging in sustenance fishing on the Main Stem of the Penobscot River. Admit that Maine officials have summonsed tribal members for engaging in nonsustenance fishing on the Main Stem when they have done so in violation of Maine law. Otherwise, deny.

20. Sentence 1 presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations in sentences 2 and 3 and therefore deny the allegations. To the extent that Paragraph 20 of the Complaint includes factual allegations, they are denied.

21. Admit that Sentence 1 quotes a portion of the pleading of Defendants Mills, Woodcock and Wilkerson. Sentence 2 presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. In addition, sentence 2 contains legal conclusions not requiring a responsive pleading. Otherwise, deny.

22. Deny Sentence 1. Sentence 2 presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

23. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

24. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

25. Sentences 1 and 2 present characterizations of statutory provisions which speak for themselves and to which no response is necessary. Admit that PIN wardens patrolling the Main Stem are trained in State-run programs. Admit that previously Maine State and PIN wardens enjoyed good working relations and that they worked effectively when nontribal and tribal members were summonsed. Deny that good working relations presently exist because tribal wardens no longer cooperate with Maine Wardens and have engaged in acts of intimidation and harassment of nontribal citizens on the Main Stem. Otherwise, deny.

26. Deny.

27. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary. Otherwise, deny.

28. Admit that paragraph 28 quotes a portion of a letter from Attorney General Schneider. Otherwise, deny.

29. Admit that paragraph 29 quotes a portion of a document. Otherwise, deny.

## VI.  LEGAL CLAIMS

30. State Defendants repeat and reallege the foregoing responses, as if set forth fully herein.

31. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary.  In addition, paragraph 31 contains legal conclusions not requiring a responsive pleading.  To the extent that paragraph 31 of the Complaint includes factual allegations, they are denied.

32. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary.  Otherwise, deny.

33. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary.  Otherwise, deny.

34. Deny.

35. This paragraph presents characterizations of statutory provisions which speak for themselves and to which no response is necessary.  Otherwise, deny.

36. Deny.

37. This paragraph presents characterizations of law to which no response is necessary.  Otherwise, deny.

## VIII.  PRAYER FOR RELIEF

38. Deny.

39. Deny.

40. Deny.

41. Deny.

AFFIRMATIVE DEFENSES

First Affirmative Defense. The United States complaint should be dismissed for failure to join indispensable parties, in particular the riparian owners who own the bed of the Main Stem (1) at least to the thread of the River under Maine's common law, and (2) as a result of transfers confirmed by 25 U.S.C. § 1723(a)(1) & (b).

Second Affirmative Defense. The United States complaint is barred by 25 U.S.C. § 1723.

WHEREFORE, State Defendants deny that the United States is entitled to the relief requested, and demand judgment in their favor against the United States, together with interest, costs and fees, and judgment for such other relief as is appropriate.

## COUNTERCLAIM FOR DECLARATORY RELIEF

1. The terms of the settlement are set forth in the State Settlement Act, 30 M.R.S. §§ 6201, *et seq.*, and the Federal Indian Claims Settlement Act of 1980, 25 U.S.C. §§ 1721, et seq.

2. A primary concern of the State was jurisdiction and the uniform application of state law.

3. Of particular import is that the Federal Indian Claims Settlement Act of 1980 adopted and confirmed the State Settlement Act's jurisdictional provision:

> The Passamaquoddy Tribe, the Penobscot Nation, and their members, and the land and natural resources owned by, or held in trust for the benefit of the tribe, nation, or their members, shall be subject to the jurisdiction of the State of Maine to the extent and in the manner provided in the Maine Implementing Act and that Act is hereby approved, ratified, and confirmed. 25 U.S.C. 1725(b)(1).

4. The key provision from the State legislation which was ratified by Congress is:

> Except as otherwise provided in this Act, all Indians, Indian nations, and tribes and bands of Indians in the State and any lands or other natural resources owned by them, held in trust for them by the United States or by any other person or entity shall be subject to the laws of the State and to the civil and criminal

  jurisdiction of the courts of the State to the same extent as any other person or lands or other natural resources therein. 30 M.R.S. § 6204.

5. Regarding the Penobscot Nation, there are specific provisions dealing with such issues as fishing, hunting, law enforcement and the Penobscot tribal courts. 30 M.R.S. §§ 6206, 6207, 6209-B, & 6210.

6. Regarding hunting and fishing,

> [The] Penobscot Nation … shall have exclusive authority within [its] … Indian territories to promulgate and enact ordinances regulating:
>  A. Hunting, trapping or other taking of wildlife; and
>  B. Taking of fish on any pond in which all the shoreline and all submerged lands are wholly within Indian territory and which is less than 10 acres in surface area.
>
> Such ordinances shall be equally applicable, on a nondiscriminatory basis, to all persons regardless of whether such person is a member of the … nation provided, however, … such ordinances may include special provisions for the sustenance of the individual members of … the Penobscot Nation. In addition to the authority provided by this subsection, the Passamaquoddy Tribe and the Penobscot Nation, subject to the limitations of subsection 6, may exercise within their respective Indian territories all the rights incident to ownership of land under the laws of the State. 30 M.R.S. § 6207(1).

7. The Maine Indian Tribal-State Commission "shall have exclusive authority to promulgate fishing rules or regulations on:"

> A. Any pond other than those specified in subsection 1, paragraph B, 50% or more of the linear shoreline of which is within Indian territory;
> B. Any section of a river or stream both sides of which are within Indian territory; and
> C. Any section of a river or stream one side of which is within Indian territory for a continuous length of 1/2 mile or more. 30 M.R.S. § 6207(3).

8. "Notwithstanding any rule or regulation promulgated by the [Maine Indian Tribal-State Commission] or any other law of the State, the members of … the Penobscot Nation may take fish, within the boundaries of [its] respective Indian reservation[] for their individual sustenance …." 30 M.R.S. § 6207(4).

9.  The Penobscot Indian Reservation does not include the waters or bed of the Penobscot River.

10.  Neither the State of Maine nor any of its officials or employees, however, have prevented or attempted to prevent a member of the Penobscot Nation from taking fish from the waters of the Main Stem of the Penobscot River for individual sustenance.

11. The controversy here exists because the Penobscot Nation warden service has confronted nontribal citizens on the waters of the Main Stem of the Penobscot River and demanded or stated the Penobscot Nation requires that nontribal citizens purchase or otherwise obtain Penobscot Nation permits for access to, alongside and on the Penobscot River, including for boating, fishing, hunting, trapping, salvage logging, and taking water and fish samples for government or government-permitted studies.

12. The Penobscot Nation has no jurisdiction or authority to demand permits from non-tribal members or the State of Maine for access to, on or along the sides of the Penobscot River.

13. In addition, upon information and belief, PIN's game wardens have summonsed at least one non-tribal member to Penobscot Nation Tribal Court for failure to have a Penobscot tribal permit for hunting on the Main Stem.  Summonsing a nontribal member to Tribal Court is in contravention of the 1980 Settlement Acts.  30 M.R.S.A. § 6209-B(1).

14. Upon information and belief, the demand that non-tribal members purchase Penobscot Nation permits and pay for Penobscot Nation guide services violates  30 M.R.S. § 6206(1) as being discriminatory because tribal members do not pay for hunting or fishing permits nor pay for Penobscot Nation guides.

15. A PIN official has informed a nontribal trapper that PIN plans not to issue nontribal trappers any PIN permits, with the intent to close the Main Stem to all trapping other than that of tribal sustenance trappers.

WHEREFORE, Defendants respectfully ask this Court to enter judgment in their favor and against the Penobscot Nation and its members and declare that:

The waters and bed of the main stem of the Penobscot River are not within the Penobscot Nation reservation;

Plaintiff Penobscot Nation has no authority or jurisdiction under the State and Federal Settlement Acts or any other law or provision to regulate access, boating, hunting, salvage logging, fishing or any other activities by non-tribal members on the waters of the Main Stem of the Penobscot River*;*

Penobscot Nation members are subject to the authority and jurisdiction of the State of Maine when navigating, hunting, trapping, salvage logging or fishing on all of the waters of the Main Stem of the Penobscot River, other than when fishing within the Penobscot Nation reservation for sustenance purposes;

Plaintiff has no authority or jurisdiction to summons nontribal members to the Penobscot Nation Tribal Court for any reason, including failure to have permits for access to, boating, navigating, hunting, fishing, salvage logging, and/or trapping on the Main Stem;

Plaintiff has no authority or jurisdiction to regulate sampling by employees or permittees of the State of Maine when they are engaging in sampling of water, fish or any living organism in the Main Stem; and

Plaintiff Penobscot Nation's demands that non-tribal members purchase a Penobscot Nation permit and pay for a Penobscot nation guide while Penobscot Nation members do not pay for such a permit or guide, and its plan to close the Main Stem to all trappers other than tribal ones, constitute discrimination in violation of 30 M.R.S. § 6206(1).

Together with interest, costs and fees, and judgment for such other relief, including injunctive, as is appropriate.

Dated: March 6, 2014    Respectfully submitted,

JANET T. MILLS
Attorney General

/s/ Paul Stern
PAUL STERN
Deputy Attorney General
(207) 626-8568
paul.d.stern@maine.gov

GERALD D. REID
Chief, Natural Resources Division
(207) 626-8545
jerry.reid@maine.gov

Office of the Attorney General
6 State House Station
Augusta, Maine 04333

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on this, the 6th day of March, 2014, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of this filing to all parties.


Dated: March 6, 2014                    /s/ Paul Stern
                                        PAUL STERN
                                        Deputy Attorney General
                                        Office of the Attorney General
                                        Six State House Station
                                        Augusta, ME 04333-0006
                                        Tel. (207) 626-8568