STATE OF MAINE

A COMPILATION OF LAWS

PERTAINING

TO

I N D I A N S

Compiled from:

- the Maine Revised Statutes of 1964, including amendments through 1976
- the Constitution of Maine
- current Resolves and Private & Special Laws

*Prepared by the Department of Indian Affairs*

*Augusta, Maine*

Printed

JULY 1976

PN-007241

STATE OF MAINE
DEPARTMENT OF INDIAN AFFAIRS
AUGUSTA, MAINE 04333
TEL. (207) 289-2831

GEORGE M. MITCHELL
Commissioner

This compilation of Maine statutes pertaining to Indians has been updated to include changes made in the 1974 Special Session of the 106th Legislature and both the 1975 Regular Session and 1976 Special Session of the 107th Legislature.

Several errors and omissions in our first edition have been brought to our attention. We wish to thank the people who found these mistakes. They will find them herein corrected. There still may be mistakes, however, and if so, we hope they are reported to the office of the Department of Indian Affairs at Augusta.

It is our hope, this small booklet will be of value and a benefit to those interested in laws pertaining to the Indians of Maine.

Sincerely yours,

George M. Mitchell

GEORGE M. MITCHELL
Commissioner
Dept. of Indian Affairs

GMM:scs

i

PN-007242

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| ...STITUTION OF MAINE | |
| - Guaranteed Loans for Indian Housing | 36 |
| - Qualifications of Voters | 28 |
| - Trust Funds | 35 |
| ...PARTMENT OF INDIAN AFFAIRS | 1 |
| ...UCATION | |
| - Reservation Schools & School Committees | 6 |
| - Scholarships | 24 |
| ...ECTIONS | |
| - Apportionment of Indian Voting Districts (State Senators & Representatives) | 27 |
| - State, County, Federal | 25 |
| - Tribal – Passamaquoddy | 17 |
|     – Penobscot | 17 |
| - Voting Rights | 28 |
| ...H & GAME | |
| - Atlantic Salmon | 30 |
| - Free Licenses | 30 |
| - Hunting & Trapping | 29 |
| - Tribal Ordinances Re: Hunting, Fishing & Trapping | 30 |
| ...RESTRY | |
| - Duties of Foresters | 28 |
| - Indian Township Forest Resources | 22 |
| ...HWAY | |
| - Reservation Roads & Bridges | 31 & 32 |
| ...USING AUTHORITIES | 7 |
| ...MAN SERVICES | |
| - Destitute – Passamaquoddy | 23 |
|     – Penobscot | 13 |
|     – Non-tribal Members | 4 |
| - Foster Homes | 31 |

ii

*Table of Contents (Continued)*

| | PAGE |
|---|---|
| INDIANS | |
| - Indians & Tribes Generally | 1 |
| - Passamaquoddy | 19 |
| - Penobscot | 10 |
| LEGISLATURE, Indian Representatives | |
| - Election of – Passamaquoddy | 20 |
|     – Penobscot | 17 |
| - General Provisions | 33 |
| - Special License Plates | 33 |
| LIQUOR | 33 |
| MISCELLANEOUS PROVISIONS | |
| - Dogs | 5 |
| - Off-Reservation Office of Indian Development | 38 |
| - Ordinances (Local Options) | 5 |
| - Public Dump (Indian Township) | 35 |
| - Shade Trees | 29 |
| - Zoning | 37 |
| MOTOR VEHICLES | |
| - Excise Taxes | 34 |
| - Trailers | 34 |
| TREATIES AND ACT OF SEPARATION | |
| - Appendix Following Page | 39 |

iii

PN-007243

Chapter 1351

# TITLE 22—INDIANS

Indians and Tribes Generally............. Sec. 4701
Maine Indian Housing Authority......... Sec. 4731
Penobscot Tribe.................................. Sec. 4761
Passamaquoddy Tribe ........................ Sec. 4831

## INDIANS AND TRIBES GENERALLY

Sec.
4701.   Indians defined.
4702.   General supervision: records: filing and auditing accounts.
4703.   Record of proceedings: account of receipts and expenditures.
4704.   Health officers.
4705.   Overseers of the poor and other special officers.
4706.   Clerks of tribes.
4707.   Contracts of Indians for timber and grass.
4708.   Limitations on leases and contracts made by commissioner.
4709.   Actions by Attorney General.
4710.   Warrants.
4711.   Bounties on produce: proof.
4712.   Account of Appropriation.
4713.   Relief of Indians not members of tribes: statements: reimbursement.
4714.   Expenditure of tribal funds.
4715.   Posing as an Indian in vending.
4716.   Constables.
4717.   Adoption of ordinance.
4718.   Registration and licensing of dogs.
4719.   School Committee.
4720.   Indian bones.
4721.   Baptismal records in lieu of birth certificates.

Sec.
4701.   **Indians Defined**

An Indian is defined for all purposes as being a person who is in whole or to the extent of at least ¼ part of Indian blood.

Sec.
4702.   **Department of Indian Affairs; commissioner, qualifications, employment and salary; personnel**

The duties and powers heretofore given the Commissioner of Health and Welfare relating to Indians, except their education, are transferred to the Department of Indian Affairs; hereinafter in this part called the 'department', which is created to exercise general supervision over the Indian tribes.

The Department of Indian Affairs shall be under the control and supervision of the Commissioner of Indian Affairs, hereinafter in this part called the 'commissioner', who shall be qualified by experience, training and demonstrated interest in Indian affairs. The commissioner shall be appointed by the Governor to serve for a term of 4 years and until his successor shall be appointed and qualified. Any

1

PN-007244

vacancy shall be filled by appointment for a like term. The commissioner shall receive such salary as shall be fixed by the Governor.

The commissioner may employ, subject to the Personnel Law, the necessary assistance to carry out the duties and responsibilities of the Department of Indian Affairs. (P.L. 65, Chap. 340)

3.   Record of proceedings; account of receipts and expenditures

The commissioner shall keep a true record of his proceedings and correct accounts of all receipts and expenditures of every kind; and shall carry into effect all treaties with said tribes.

4.   Health officers

A tribal physician or nurse for each of the reservations of the Penobscot and Passamaquoddy tribes of Indians shall be appointed by the Director of the Bureau of Health, subject to the approval of the commissioner. Such tribal physician or nurse shall be a physician or other person approved because of training and experience in public health work and shall serve for a term of 3 years and until his successor is appointed and approved; compensation to be determined by the commissioner.

5.   Overseers of the poor and other special officers

An overseer of the poor, a road commissioner, a local health officer and tribal hall keeper may be appointed by the tribal governor of each of the Indian tribes subject to the approval of the tribal council, if any, of each such tribe. Such officers shall advise with the commissioner and receive compensation for duties performed upon his authorization.

6.   Clerk of tribes

1.   Appointments.   The tribal governor of each reservation, with the advice and consent of the tribal council of each such reservation, shall appoint a tribal clerk for the reservation.

The qualifications for such positions and the duties of such positions will be determined by the respective tribal governor and council.

The compensation for such positions shall be mutually agreed upon in writing by the respective tribal governor and council and the Commissioner of Indian Affairs or his representative.

The terms of appointments for such positions will be for the term of the appointing tribal governor and council.

2.   Duties and powers.   Each tribal clerk shall keep a record of the births and deaths of persons living on such reservations and shall perform all other duties with respect to the same as are required of the clerks of towns under section 2702. Each tribal clerk shall receive a fee of 25¢ for each certificate returned to the Bureau of Vital Statistics.

All excise taxes of residents of the various reservations shall be paid to the respective tribal clerk, who shall hold and disburse the proceeds for the benefit of each such tribe in accordance with the vote of the respective tribal council.

Each such tribal clerk shall give a corporate surety bond for the faithful discharge of his duty to the respective tribal council in the sum and with sureties as the tribal council approves.

The accounts of each tribal clerk shall be audited annually by

2

the State Department of Audit or by a qualified public accountant. The report of each audit shall be certified to the tribal governor and council by the person conducting such audit.

Each such tribal clerk shall perform other duties of a clerical or record-keeping nature as may be specified by the respective tribal governor and council, including keeping minutes of all tribal and council meetings.

3.   Removal.   For inefficiency or neglect of duty or misconduct in office a tribal clerk may be removed after a hearing by the appointing tribal governor with the advice and consent of the respective tribal council, provided he shall have been given a copy of the charges at least 10 days prior to the hearing and had an opportunity to be heard in person or by council. In the event of the removal of a tribal clerk, a record of the proceedings shall be filed in the office of the respective tribal council and with the Department of Indian Affairs.

Sec. 4707.   Contracts of Indians for timber and grass

Contracts relating to the sale or disposal of trees, timber or grass on the Indian lands made with any Indian belonging to either of said tribes, unless examined and allowed by the commissioner are void.

Sec. 4708.   Limitations on leases and contracts made by the commissioner

No lease of land or contract for trees, timber or grass made by the commissioner for more than one year; nor shall the commissioner, in any one year, sell or dispose of trees or timber of said Indians to an amount exceeding $500, except as provided in sections 4775 to 4788.

Sec. 4709.   Actions of Attorney General

The Attorney General upon his own initiative, or at the request of the governing body of any of the Indian tribes in this State, may in the name of any such tribe and in his said capacity, maintain actions for money due any such tribe and for injuries done to tribal lands. All sums or damages so recovered shall be distributed by the commissioner to the Indians of the tribe concerned according to their usages, or be invested in useful articles. This section shall apply only to tribal and unassigned lands not privately owned and shall apply only to damages and injuries arising out of acts done after September 16, 1961.

Sec. 4710.   Warrants (As amended by Sec. 226 of Chap. 771 of P.L. 1975)

The Governor may draw warrants on the Treasurer of State for such sums as are payable to the Indians for the bounties on agricultural products.

Sec. 4711.   Bounties on produce; proof

Bounties shall be paid to every Indian of either of said tribes for produce raised by him either on his own land or on land belonging to the tribe as follows:

1.   Wheat.   For every bushel of wheat, 20¢.

2.   Oats, beans and others.   For every bushel of rye, oats, barley, buckwheat, peas or beans, 10¢.

3.   Potatoes, beets and others.   For every bushel of potatoes, turnips, parsnips, beets or carrots, 5¢.

3

Before any bounty is paid to such Indian, he shall prove to the satisfaction of the commissioner the number of bushels or each article before named, raised by him on such land.

### Account of appropriations

The commissioner shall keep an account of appropriations so paid out.

### Relief of Indians not members of tribes; statements; reimbursements

Whenever any Indian, not a member of the Penobscot or Passamaquoddy tribe of Indians or any member of the family of such Indian, is found destitute and in distress, and is relieved by the overseers of the poor of the town required by law to provide relief for such person, the overseers of the poor shall transmit to the Department of Health & Welfare a statement specifying the nature, dates and amounts of the supplies furnished, together with a statement of fact relating to the condition, tribe, length of time in the State so far as may be ascertained and such other data as may be required concerning such Indian. Whereupon the State shall reimburse such town for the relief so furnished to such extent as the Department of Health & Welfare adjudges to have been expended necessarily.

### Expenditure of tribal funds (As amended by Sec. 227 of Chap. 771 of P.L. 1975)

The department, subject to the approval of the Governor, may extend for the benefit of either Indian tribe, any portion of the funds of that tribe, provided the expenditure will not decrease the principal of the fund to such an extent as to prevent compliance with any existing statute, and provided the tribe whose funds are used shall consent to the expenditure at a meeting duly called for the purpose.

### Posing as an Indian in vending

Whoever, not a member Indian of either of said tribes, represents himself to be such Indian in the vending of goods and wares, shall be punished by a fine not more than $250.

### Constables

1. Appointment. The tribal governor, with the advice and consent of the tribal council, is authorized to appoint one or more Indians, age 18 or over, each of the Indian tribes in this State, as special constables with like powers and duties of constables and police officers within towns and cities, in the enforcement of the laws of the State, within the limits of the reservation of his tribe, with authority to take any offender before any court of competent jurisdiction within his county. Such constables shall act as school attendance officers for their respective tribes. They shall receive such compensation as may be determined by the department.

2. Term of office. Said constables shall be appointed for a term of 2 years from the date of their appointments or until their successors have been duly appointed and qualified. Any constable may be removed by the tribal governor upon the recommendation of the department.

4

Sec. 4717. **Adoption of ordinances by the Penobscot and Passamaquoddy Tribes of Indians**

The governor and council of the Penobscot Tribe and of the Passamaquoddy Tribes of Indians shall prepare the ordinances, rules, and regulations for such tribe after a hearing held at a special meeting of such tribe called for the purpose. Said ordinances, rules and regulations shall be submitted for approval by the tribe at a general meeting called by the governor. Such ordinances, rules and regulations shall be enforced by the constables of the tribe under the supervision and direction of said governor and council. The governor and council of the respective reservations may prescribe penalties for violations of ordinances not to exceed $100.

Sec. 4718. **Registration and licensing of dogs**

1. Clerk to be furnished with list of dogs. The governors of the Penobscot and Pleasant Point Passamaquoddy Tribes of Indians shall make or cause to be made a list of all dogs each member of said tribes and all other persons residing on said Indian reservations and deliver such list to the clerks of said tribes.

2. Dogs to be licensed; fee and general provisions. Each member of said tribes and all other persons residing on said reservations, who owns, keeps or has in his possession a dog more than 4 months old, shall annually before the first day of April cause it to be registered, numbered, described and licensed for one year from said first day of April, in the offices of said clerks, and shall keep around its neck a collar distinctly marked with the owner's name and its registered numbers, and shall pay to said clerks for a license $1.25 for each male dog, and $3.25 for each female dog capable of bearing young. All female dogs shall be considered capable of bearing young, unless a certificate issued by any licensed veterinarian stating that such female was made incapable of bearing young by spaying, or any previous license record so indicating, is presented. When such certificate or record accompanies the application a fee of $1.25 shall then be paid on such spayed female. Any member of said tribes and all other persons residing on said reservations becoming the owner or keeper of a dog after the first day of April, not duly licensed, shall cause it to be registered, numbered, described and licensed as provided.

3. License fees; how expended. Said clerks shall issue said license and receive the money therefor, and turn the same into the fund for the municipal purposes of said tribes, retaining to his own use 25¢ for each license issued.

4. Penalty for violation. Any member of said tribes and all other persons residing on said reservations who keeps a dog, contrary to this section shall pay a fine of $10, or be punished by imprisonment in jail in the appropriate county for not more than 30 days.

5. Dogs, not licensed, to be killed; warrant to be issued by clerk. Said clerks shall annually, within 10 days from the first day of June, issue a warrant to the constables of said tribes directing them to proceed forthwith, either to kill or cause to be killed, all dogs on said reservations not licensed and collared according to this section, and to enter complaint against the owners or keepers thereof. Such constables shall receive from the fund derived from said registrations $1 for each dog so killed.

5

Sec.
19.

**School committees**

The Passamaquoddy Tribe of Indian Township, the Passamaquoddy Tribe of Pleasant Point and the Penobscot Tribe of Indian Island shall each be authorized to elect by popular election a school committee of not more than 5 tribal members to provide educational and cultural services for its residents. It shall be the responsibility of the school committee to approve all programs, expenditures of funds and procurement of personnel in accordance with the general laws applying to public schools. Should any reservation fail to elect a school committee, the Commissioner of Education and Cultural Services shall provide for the education of students on that reservation in the same manner as is done for unorganized territory students.

The Indian school committee shall jointly, in a manner agreed upon by all of the committees, select a superintendent of schools, subject to the approval of the Commissioner of Educational and Cultural Services, whose duties shall be the same as public school superintendents under the general law. The committees shall jointly select a treasurer.

The school committees shall determine the terms of employment for the superintendent, including compensation and length of contract, subject to the approval of the Commissioner of Educational and Cultural Services.

Each school committee may establish personnel regulations and a system for purchases and accounting in accordance with the general law as it applies to administrative units.

All bills, including payrolls, must be approved for payment by the school committee members and the superintendent of schools, before being paid by the treasurer. The State Controller shall forward monthly to the treasurer such sum as may be requested by him, the total not to be in excess of the sum appropriated. The accounts shall be audited by the State Auditor.

The biennial budgets shall be drawn up by the superintendent and the school committees and forwarded to the Commissioner of Educational and Cultural Services for his consideration and recommendation before being submitted to the Legislature. The execution of the budget must be carried out within the funds made available and in accordance with the laws governing fiscal responsibility. (P.L. 1973, Chap. 571, Sec. 53-C)

Sec.
720.

**Indian bones**

From the date this Act becomes effective, all Indian skeletons and bones that come into the possession of any person, state department or organization, whether public or private, shall be transferred to the appropriate Indian Tribes in Maine for reburial.

Prior to the time of transferral to the Indian Tribes, any such Indian bones or skeletons found may be subjected to scientific study by persons skilled in the anthropological and archaeological fields, but in no instance may such study continue longer than one year from the time of the bones' discovery, before being transferred to the Indian Tribe.

(P.L. of 1973, Chap. 353)

Sec.
4721.

**Baptismal records in lieu of birth certificates**

Any Indian whose birth is not recorded pursuant to this Title relating to the registration of live births may, in lieu of such birth certificate, present an official copy of the baptismal record from the files of the mission where such Indian was baptized, and such baptismal record shall have the same evidentiary character as an unamended and undelayed birth certificate under section 2707. (P.L. 1973, Sec. 1 of Chap. 740)

Chapter 1352

# MAINE INDIAN HOUSING AUTHORITY LAW

Sec.
4731.   Short titles.
4732.   Findings and declarations of necessity.
4733.   Creation of Indian Housing Authorities.
4734.   Appointment and removal of commissioners.
4735.   Area of operation.
4736.   Referendum approval not applicable.
4737.   Authorization for transfer of real property.
4738.   State aid.
4739.   Relation of powers of local officials and state public bodies.

Sec.
4731.   **Short titles**

This chapter shall be known and may be cited as the "Maine Indian Housing Authority Law."

Sec.
4732.   **Findings and declarations of necessity**

It is hereby found and declared:

1. Shortage.   That there exists on the reservations in this State occupied by the Passamaquoddy and Penobscot Tribes, insanitary, unsafe and over-crowded dwelling accommodations; that there is a shortage of safe or sanitary dwelling accommodations available at rents or prices which persons of low income can afford; and that such shortage forces persons to occupy such insanitary, unsafe, and over-crowded dwelling accommodations;

2. Conditions.   That these conditions cause an increase in the spread of disease and other conditions and constitute a menace to the health, safety, morals and welfare of the residents of the reservations; that these conditions necessitate public health and safety, fire and accident protection and other public services and facilities;

3. Obstacles.   That these slum areas cannot be cleared, nor can the shortage of safe and sanitary dwellings for persons of low income be relieved through the operation of private enterprise, or by any housing authority created by the Maine Housing Authorities Act;

6

7

PN-007247

**Sec. 4735.** Area of operation

The area of operation of an authority is within the territorial boundaries of the reservation for which it is created. Each authority is empowered to construct, develop, operate and maintain water and sewer systems to insure that adequate water and sewer services are available to the housing project.

**Sec. 4736.** Referendum approval not applicable

Title 30, section 4701, requiring referendum approvals under the Maine Housing Authorities Act, does not apply to the authorities created by this chapter.

**Sec. 4737.** Authorization for transfer of real property

Any real property required by an authority for use in its area of operation in providing housing shall be leased to the authority by the respective Governor and Council with the approval of the Governor of the State of Maine upon such lawful terms as shall be agreeable to the parties.

**Sec. 4738.** State aid

In addition to its other powers, the State is empowered to provide facilities, services and financial aid, by loan, donation, grant, contributions and appropriations of money or by any other means, to an authority and, in connection therewith, to enter into agreements, which may extend over any period, notwithstanding any provisions or rule of law to the contrary, excepting constitutional provisions or treaty.

**Sec. 4739.** Relation of powers of local officials and state public bodies

For the purposes of this chapter, the powers and duties conferred and imposed by the Maine Housing Authorities Act upon municipalities and their governing bodies, mayors and specified local officials are hereby vested in tribal governors, tribal councils and such tribal officials. The term "state public body," as defined in the Maine Housing Authorities Act, includes the state for the purpose of their chapter, and the term "municipality" in the opening paragraph of Title 30, section 4652 includes the respective reservations of the Passamaquoddy and Penobscot Indian Tribes, for the purposes of this chapter.

9

---

4. Public uses. That the clearance, replanning and preparation for rebuilding of these areas and the providing of safe and sanitary dwelling accommodations and maintaining a wholesome living environment for persons of low income are public uses and purposes for which public money may be spent and are governmental functions of state concern;

5. Residential construction. That residential construction activity is an important factor to general economic activity and that the undertakings authorized by this chapter to aid the production of better housing and more desirable neighborhood and community developments at lower costs will make possible a more stable and larger volume of residential construction activity which will assist materially in maintaining full employment;

6. Necessity. That the necessity in the public interest for the provisions of this chapter enacted is declared as a matter of legislative determination.

Creation of Indian Housing Authorities

In the Penobscot tribal reservation at Indian Island, Old Town, and in each reservation of the Passamaquoddy Tribe of Indians at Pleasant Point and Indian Township, there is created a public body corporate and politic to be known as the reservation "Housing Authority." Except as otherwise provided in this chapter or clearly indicated otherwise by the context, the Maine Housing Authorities Act shall apply to the housing authorities created by this section, hereinafter in this chapter referred to as "authority" or "authorities."

Appointment and removal of commissioner

1. Appointment. Each authority shall have 5 commissioners appointed by the reservation governor, with the advice and consent of the tribal council, of the reservation for which the authority is created. No less than 4 commissioners, including the chairman, shall be members of the tribe of the respective reservation. Holding of any tribal office shall not bar appointment of any such tribal member to the Housing Authority of the member's reservation. The commissioners who are first appointed shall be designated to serve for terms of 1, 2, 3, 4, and 5 years, respectively, from the date of their appointment, but thereafter such commissioners shall be appointed for a term of office of 5 years, except that all vacancies shall be filled for the unexpired term. Each commissioner shall hold office until his successor has been appointed and has qualified. Each authority shall elect a chairman, a vice-chairman, a secretary and a treasurer from among the commissioners and a commissioner may hold any 2 of these positions except for the positions of the chairman and vice-chairman.

2. Removal. For inefficiency or neglect of duty or misconduct in office, a commissioner may be removed after a hearing by the reservation governor and tribal council of the reservation for which the authority is created, provided he shall have been given a copy of the charges at least 10 days prior to the hearing and had an opportunity to be heard in person or by counsel. In the event of the removal of a commissioner, a record of the proceedings shall be filed

8

PN-007248

pter 1353

## PENOBSCOT TRIBE

c.
1. Membership.
1. Adoption of person into tribe.
2. Filing certificate of adoption; exclusion from certain offices.
3. Oath of adopted person.
4. Loss of membership by abandonment.
5. Loss of membership does not affect membership of other members of family.
6. Restoration to membership.
7. Dividends and rentals with respect to nonresident members.
8. Forfeited money used for family benefit.
9. Removal of non-members from reservation.
0. Destitute person on reservation.
1. Destitute members outside of reservation.
2. Payments due under treaty or law.
3. Schools (Repealed—see section 4719).
4. Leases of islands.
5. Restrictions on sale of wood or timber.
6. Conveyances.
7. Lots not to be sold or leased.
8. Surveys; tribal use of waters and timberland.
9. Assignments of unassigned lands.
0. —Certificate of commissioner; form.
1. Abandonment as forfeiture of lands.
2. Death of landowner.
3. Conveyances by release deed; lots on Old Town Island, miscellaneous defects.
4. Deposit of deeds with commissioner.
5. Copies of deeds as evidence.
6. Lease of island shores.
7. Privileges for mills, booms and fisheries.
8. Warrants for interest on 4 townships purchased; rents.
9. Excise taxes. (Repealed—see section 4706).
0. Census; annual meetings; notices; correction of lists; compensation of committee.
1. Penobscot Tribal Elections.
2. Governor and Council.

### Membership

Membership in the Penobscot Tribe of Indians may, after March 22, 1901, be acquired only as follows:

1. **Birth.** By birth;

2. **Adoption.** By adoption into the tribe as determined by its tribal council in accordance with sections 4762 and 4763;

3. **Marriage.** By marriage to a male member of said tribe; membership by marriage can be acquired only by such persons as are in whole or to the extent of at least ¼ part of Indian blood, and it shall not include the previous issue of the person acquiring it. A certificate of marriage signed by the person solemnizing the same, or

an attested copy of the record thereof, shall be sufficient evidence of such marriage.

**Adoption of person into tribe; rights conferred upon adopted members; exclusion from certain offices (As amended by Chap. 232, P.L. 1973)**

Sec. 4762.

1. **Adoption.** The tribal council at any regularly held meeting may, by ¾ vote of its total membership, adopt into said tribe any person who is of at least ¼ part Indian blood, and who is the husband, wife, or child of a member of said tribe, and who has his or her residence for at least one year next preceding such adoption upon any reservation of said tribe. An adoption by any member of the tribe under ordinary legal process shall not of itself confer tribal membership upon such adopted person. The power of adoption into the tribe shall rest exclusively with the tribal council. The decision of said council shall be conclusive and upon an affirmative decision by the tribal council, the adoption shall be effective immediately. (As amended by Chap. 232, P.L. 1973)

2. **Rights.** Every person adopted into the tribe pursuant to subsection 1 shall be deemed and accepted to be a member of said tribe for all intents and purposes, except as set forth in subsection 3, and shall be entitled to have their names enrolled upon the tribal census as a member of said tribe.

3. **Ineligibility to office.** No person adopted into the tribe shall be eligible to hold the office of the governor, lieutenant governor or representative of said tribe.

**Filing certificate of adoption (As amended by Chap. 232, P.L. 1973)**

Sec. 4763.

Whenever said tribal council shall vote to adopt any person into said tribe, a certificate of such vote of adoption shall be signed by the person presiding at the meeting and said certificate shall forthwith be forwarded to the Commissioner of Indian Affairs, who shall forthwith record such adopted person's name upon the official census or tribal membership roll.

**Oath of adopted persons (As amended by Chap. 232, P.L. 1973)**

Sec. 4764.

Every person adopted as provided in section 4762 shall, within one month after the adoption, or if a minor at the time of adoption, within one month after reaching the age of 18 years, make oath before the governor of the tribe that they will demean themselves as discreet, industrious and good members of said tribe, will abide by the laws of the State of Maine and ordinances of the tribe relating to tribal membership and will faithfully fulfill the duties incumbent upon them as such members.

**Loss of membership by abandonment**

Sec. 4765.

If any member of said tribe shall abandon it and join another tribe of Indians, he shall be deemed to have lost his membership in the Penobscot tribe, and shall not be entitled to any share of dividends, rentals or other money thereafter apportioned among the members of said tribe, nor to any other subsequent rights of membership.

**Loss of membership does not affect membership of other members of family**

Sec. 4766.

When any member loses his membership under section 4765, or

PN-007249

said court. After due hearing the judge with the recommendation of the tribal governor and council may order the respondent to remove within a specified time beyond the tribal reservation limits. If the respondent fails to obey said order, or if within one year after the service of said notice he shall again become resident or commorant upon any reservation he shall again become resident or commissioner and said governor or lieutenant governor, said judge may cause such person to be apprehended and brought before said court and may punish him by fine of not more than $20 or by imprisonment for not more than 30 days, or by both. The costs of all such court proceedings under this section may be included in the order or sentence of said judge. If the respondent fails to pay the same, he may be committed to jail for not more than 30 days additional to any imprisonment otherwise imposed upon him. In such case, or if the court does not include such costs in his order or sentence, such costs shall be paid by said commissioner from the tribal fund. Costs shall be taxed as in ordinary proceedings upon complaint.

Sec. 4771.

### Destitute persons on reservation

For all relief to any person not a member of the Penobscot tribe of Indians, nor having a pauper settlement in this State found destitute and in distress upon any tribal reservation of said tribe, which has been furnished by the commissioner or by the overseers of the poor of the town within whose territorial limits such person is so found, the State shall reimburse said commissioner or said town to such extent as the department adjudges to have been necessarily expended therefor. The reasonable expenses and services of said overseers relative to said pauper shall be included in the amount to be so reimbursed.

Sec. 4772.

### Destitute members outside of reservation

When any member of said tribe is found destitute and in distress beyond the tribal reservation and is relieved by the town in this State where he is so found, the overseers of the poor of said town may send to the Commissioner of Health & Welfare a statement specifying the nature, dates and amounts of the supplies furnished, which shall be transmitted to the Department of Health & Welfare such additional statements of fact as the Commissioner of Health & Welfare may think proper. The State shall reimburse said town for the relief so furnished to such extent as the Department of Health & Welfare adjudges to have been necessarily expended. Any member of said tribe found destitute and in distress beyond the tribal reservation may be removed by the Commissioner of Health & Welfare from any place in which he may be residing, or be found, to said tribal reservation, whenever in the judgement of the Commissioner of Indian Affairs, such removal should be made.

Sec. 4773.

### Payments due under treaty or law

The Commissioner shall provide, furnish, pay and deliver to the Penobscot tribe, on account of the State, such articles, goods, provisions and moneys as from time to time become due under any treaty or law.

Sec. 4774.

### Schools (Repealed --see Title 22, Sec. 4719)

13

---

his right to share in dividends, rentals or other moneys under section 4768, no member of his family to whom said sections do not personally apply shall be deemed to have lost such membership or right.

### 7. Restoration to membership

Any person a member of said tribe on March 22, 1901, as shown by the tribal census taken under the laws of the State, who shall have forfeited any rights of membership may regain said rights by petition, under oath, to the commissioner, alleging 30 days continuous residence within the State. If at the end of 60 days said commissioner shall have refused or neglected to restore said person to membership, he shall have the right of appeal to the tribal council which shall thereupon forthwith hear the facts and enter such judgment as to restoration to membership as is just and right. Such renewal of rights shall not entitle such person to any share of the dividends, rentals or moneys which previously thereto have come into the hands of the commissioner, nor have any other retrospective effect.

### 8. Dividends and rentals with respect to non-resident members

If any member of the tribe shall reside outside the tribal reservation, but within the State, he shall report to the commissioner at least once in each year in order to be entitled to his share of dividends, rentals or other money apportioned to members of the tribe. During such time as he shall reside without the State he shall not be entitled to any part of the dividends, rentals or other money apportioned to members of the tribe.

### 9. Forfeited money used for family benefit

If any member of said tribe shall desert his family or fail to provide properly for said family's support, the commissioner may in his discretion use for the benefit of such family any part or all of said member's dividends or share of rentals or any money assigned to him from state funds or coming to him in any way by apportionment or distribution through the hand of said commissioner.

### 70. Removal of non-members from reservation

Any person residing or commorant upon the tribal reservation of the Penobscot tribe of Indians, not being a member nor the husband, wife, or legally adopted child of a member of said tribe, may be required to remove therefrom by a written notice given to him in hand under the signature of the governor or, in his absence, the lieutenant governor, and the commissioner. A copy of such notice attested by said commissioner, with a return of service thereon by any officer qualified to serve criminal percepts, or an affidavit of service by any other person, shall be filed with said commissioner and be sufficient evidence of such service. If the person so notified shall not remove from said reservation within 2 days after service of said notice upon him, the commissioner or any member of the tribe may make compliant, to the proper officer of the District Court of Southern Penobscot, who shall cause a certified copy of said compliant with a notice of the time and place of hearing thereon to be given in hand to said person or left at his place of last and usual abode at least 2 days before the time fixed for said hearing, before

12

5. **Lease of islands**

The islands belonging to said tribe may be leased by the Commissioner for the benefit of such tribes for a term not exceeding 12 years, if such lease and the terms and conditions thereof are assented to by the governor and lieutenant governor of the tribe and approved by the department. If such lease is on credit, it shall be at the risk of the Commissioner, and accounted for as money. The avails thereof shall be placed by him in the State Treasury, subject to the order of the department according to law.

6. **Restrictions on sale of wood or timber**

No member of the Penobscot tribe of Indians shall be permitted to sell any standing wood or timber growing on any islands or lands in the Penobscot River within the limits of the Indian reservation except to members of the tribe for firewood only; nor shall any member of said tribe lease any portion of his lands or islands within the limits of said reservation for the purpose of permitting any standing wood or timber to be cut and removed therefrom, except with the consent and approval of the Commissioner.

17. **Conveyances**

Any Indian holding lands under a certificate issued under Authority of chapter 137 of the public laws of 1883, or by virtue of any assignment under the laws for the apportionment of the lands of said Penobscot tribe, may sell and convey the same to any member of the same tribe with the approval of the Commissioner. No Indian shall purchase lands upon the reservation of said tribe beyond his fair proportion of such reservation.

78. **Lots not to be sold or leased**

No such Indian shall sell or lease his lot except as provided by law. If he carries off the growth faster than necessary for cultivation, except by permission of the commissioner, or commits strip or waste, he shall be dealth with as a trespasser.

79. **Surveys; tribal use of waters and timberland**

Surveys of the islands in Penobscot River from Old Town Falls to Mattawamkeag Point, and field notes thereof, as made under chapter 158 of the public laws of 1835 and chapter 396 of the public laws of 1839, plans of which were returned to the land office and to the Indian agent, shall be deemed authentic in all matters to which they relate. The water privileges belonging to said islands, valuable for mills, booms, fisheries, tracts of wood and timberland, and other lots indicated on said plans as reserved for public use, except the public farm which is subject to allotment by chapter 22 of the private and special laws of 1878, are not subject to assignment or distribution to members of said tribe, but shall remain for the benefit of the whole tribe.

30. **Assignments of unassigned lands**

The commissioner, on application of any Indian thereof, male or female, 18 years of age or more, to whom his proportion of the tribe's lands has never been assigned, or has never come by inheri-

14

---

tance or who does not already hold by assignment, purchase or otherwise his fair share of said lands may cause a lot suitable for cultivation to be surveyed to such applicant from the unassigned lands of the tribe, if any, and may assign the same to him and designate the same upon the plan aforesaid. All lots so designated shall be limited by said plan and accounted accordingly and any lot, when so assigned, shall be the property of the person to whom it is assigned.

Sec. 4781. **Certificate of commissioner; form**

The assignments mentioned in section 4780 shall be accompanied by a certificate from the commissioner to be recorded as in section 4784, in form substantially as follows:

"Know all men by these presents, that I, _____ Commissioner of Indian Affairs, have caused to be surveyed and set off to _____ a portion of the lands belonging to said tribe on the islands in Penobscot River, as contemplated by acts of the Legislature, bounded and described as follows, viz:
* * * * * *
To have and to hold to him, his heirs and assigns, as contemplated by said acts.
In witness whereof I have hereunto set my hand and seal as Commissioner of Indian Affairs, this _____ day of _____ nineteen hundred and _____."

Sec. 4782. **Abandonment as forfeiture of lands**

Any member of said tribe who abandons it and joins any other tribe forfeits all lands assigned to him, and the same may be assigned anew as provided in section 4780.

Sec. 4783. **Death of landowner**

The Commissioner shall enter upon his record a memorandum of the death of any Indian owning lands, the date thereof, a description of the lots owned by the deceased and the name of those persons, so far as ascertainable, who are entitled to such lands by inheritance.

Sec. 4784. **Conveyances by release deed; lots on Old Town Island; miscellaneous defects (Repealed and replaced by Chap. 299, P.L. 1973)**

1. Deeds. Conveyances made by virtue of section 4777 shall be by release deed, quit-claim deed, quit-claim deed with covenant warranty deed, warranty deed with covenant, executed and acknowledged, and the approval of the Commissioner of Indian Affairs shall be written thereon. Said deed and approval shall be recorded by the Register of Deeds of Penobscot County in a book kept in the registry of deeds in said county, upon payment of 25¢ for each deed so recorded; and until recorded, no deed shall pass any title. This chapter and chapters 1351 and 1355 shall apply to house lots on the point of Old Town Island, as well as to land allotted for agricultural purposes.

2. Validation. All deeds heretofore made prior to May 31, 1973 for the conveyance of real property pursuant to subsection 1, and duly recorded in the Penobscot County Registry of Deeds, and otherwise valid except that the same was not in the form of a release deed as required by said subsection 1, are validated regardless of whether or not they are in the form of a quit-claim deed, quit-claim deed with covenant, warranty deed, warranty deed with covenant

15

or such other sufficient to pass title under the laws of the State of Maine, and whether or not said deeds contain the approval of the Commissioner of Indian Affairs as required by subsection 1. All deeds affecting real property on the Penobscot Indian Reservation duly recorded in the Penobscot County registry of deeds having certain defects as described in Title 33, sections 351, 352 and 353 and any like provisions of law hereafter enacted by the Legislature shall apply to conveyances made pursuant to subsection 1.

#### Deposit of deeds with commissioner

Deeds made by any Indian of the Penobscot tribe as provided in section 4784 may be deposited with said commissioner to be delivered by him to the grantee named therein, after the death of the grantor, if the fact that such deed is so deposited to be so delivered appears by the deed itself. When delivered by said commissioner, it shall pass all the title of the grantor in the premises at the time of his death.

#### Copies of deeds as evidence

Copies of deeds or certificates recorded as provided in this chapter and chapters 1351 and 1355 duly attested by the register of deeds or by the commissioner, shall be evidence in all actions or controversies relating to title to lands between members of said tribe.

#### Lease of island shores

The shores of the islands in the Penobscot River belonging to said tribe shall be leased for booming or hitching logs under the orders of the department. Such leases shall not run longer than 5 years. All sums received from rent of said shores shall be paid to the State, to be held in trust, and paid to said tribe as provided in section 1 of chapter 267 of the special laws of 1873.

#### Privileges for mills, booms and fisheries

The commissioner may lease any reserved privileges for mills, booms and fisheries for a term sufficiently long to induce persons to take leases of them. All rents shall be paid into the State Treasury, to be expended for the benefit of the tribe, under the direction of the department.

#### Warrants for interest on 4 townships purchased; rents (As amended by Sec. 228 of Chap. 771 of P.L. 1975)

The Governor and the governor of the tribe may draw warrants of the State Treasury for any sum not exceeding the interest on the price of the 4 townships purchased by the State of the Penobscot Tribe in June, 1833, and of any other money paid into the treasury, and for the full amount of rents paid in as aforesaid. When the whole amount of such sums, in the opinion of the department, is more than is necessary for said tribe, the excess may be invested for their benefit.

#### Excise taxes (Repealed– see section 4706)

16

---

Sec. 4791.

#### Census; annual meeting; notices; correction of lists; compensation of committee

An accurate census of the Penobscot tribe shall be taken early each January by the tribal council upon the best information which they can obtain, stating, as nearly as may be, the name, sex and age of each Indian as it existed on the first day of such January, each family by itself. On or before the 10th day of January, annually, the original certified under oath, shall be delivered to the commissioner, and a copy thereof to the governor of said tribe for their use. On the first Wednesday of January, annually, the said council shall hold a meeting with said tribe on Old Town Indian Island, for receiving information from such of the tribe as may attend, as to the membership of the tribe, the identity of persons and the correctness of names. Due notice in writing of the time and place of which meeting shall be given by said council. At said meeting, 5 of said tribal council shall constitute a quorum thereof.

Corrections of the list, by reason of births, deaths or omissions may, as they come to the knowledge of the council, be certified to the commissioner and he shall correct his list accordingly.

Sec. 4792.

#### Penobscot tribal elections (As amended by Chap. 130, P.L. 1973 and Sec. 229 of Chap. 771 of P.L. 1975)

1. Elections. Biennially, on the even-numbered years, on the 2nd Tuesday in September, the Penobscot Indians shall hold their election for the choice of governor and lieutenant governor of said tribe and a representative at the Legislature of this State, and members of a tribal council, each of whom must be at least 18 years of age. Only certified members of the tribe who are 18 years of age or older shall be eligible to vote.

2. Caucus. On the first Tuesday of August biennially on the even-numbered years and to fill any vacancies arising in the interim, the Penobscot Indians shall hold a caucus for the purpose of nominating candidates to be elected as provided in this section. Such caucus shall have the right to establish, by majority vote, rules for the conduct of the following tribal election, providing that such rules do not violate the constitutional rights of any person.

3. Notice; votes; recount. The commissioner shall give notice of the time and place, 7 days before the day of election, by posting notices thereof, one at his office and one or more others in conspicuous places on Old Town Indian Island. The Commissioner or his authorized representative shall receive, sort and count the votes given in at said election, in the presence of the members of the tribe, and shall give to those elected certificates thereof, except that no certificate of election shall be issued less than 10 days after the election. On the written application of a candidate in said election within 7 days after election day, the commissioner shall permit him or his counsel to recount the ballots under proper protective regulations. Upon the receipt of the application, the commissioner shall send written notice of the recount to the candidates for the office in question, stating the time and place of the recount. The commissioner or his authorized representative shall preside at the recount and shall segregate any disputed ballots. Ballots may be disputed for any or all of the following reasons: If more names are marked for an office than there are vacancies to be filled; if there are any distin-

17

PN-007252

sentative at the Legislature may be removed from office by a petition showing charges and signed by a number of registered voters equal to at least a majority of the number of votes cast for tribal governor at the next preceding tribal election, and the petition is presented in writing to the governor, lieutenant governor, council and representative at the Legislature in a formal hearing called by the commissioner, and thereupon such petition shall be acted upon, provided that a majority of the persons legally registered to vote at the next preceding tribal election are present. Tribal members who have been convicted of a felony shall not be permitted to hold any tribal office, either elective or appointive.

The tribal governor shall call a general meeting of the tribe for the purpose of affirming or rejecting legislative proposals prepared by the tribal governor and council for submission to the State Legislature. Notice of the time and place of the general meeting shall be posted 7 or more days before said meeting day at the office of the tribal governor and one conspicuous place on Old Town Island. Legislative proposals that have received an affirmative vote of a majority of those present and voting at the general meeting of the tribe shall be given to the tribal representative of the State Legislature for submission to the State legislature. No private organization, church organization, State department, civil group or individual shall submit legislation affecting the Penobscot Tribe of Indians to the State Legislature without first bringing it before the Penobscot governor and council for approval.

Chapter 1355

## PASSAMAQUODDY TRIBE

Sec.
4831. Biennial elections.
4832. Census and membership.
4833. Applicability of provisions.
4834. Indian Township forest resources; Passamaquoddy trust funds.
4835. No sale or permits for foreigners.
4836. Certification to controller; warrants for payment.
4837. Removal of poor to reservation; reimbursement to towns.
4838. Schools (Repealed—see Sec. 4719).
4839. Indian Township Passamaquoddy School Committee (Repealed—see Sec. 4719).
4840. Pleasant Point Passamaquoddy School Committee (Repealed -see Sec. 4719).

Sec.
4831. Passamaquoddy tribal elections (Chapter 740 P.L. 1973, as amended by Sec. 3, Chap. 97 of P.L. 1975 and Sec. 230 of Chap. 771 of P.L. 1975)

Biennially on the even-numbered years, on the Tuesday following Labor Day in September, the Passamaquoddy Tribe of Indians shall

guishing marks on the ballot or if the ballot is marked in such a way as to make the voter's choice impossible to determine. In no case shall a ballot be disputed solely because of the type of mark used to indicate the voter's choice, and all votes shall be counted where the voter's intention can be clearly seen and no other reason for challenging the ballot but its type of marking exists. If any mistake was made in counting the ballot on the election day, the commissioner shall correct his tabulation. If the corrected tabulation changes the result declared on the election day, the commissioner shall declare the winner as determined by the recount. The commissioner shall issue his certificate of election to the winner of a recount, unless within 4 days of the said recount, the loser appeals its result in writing to the Governor, addressed to the Secretary of State. In all cases the determination of the winner by the Governor shall be final.

### Governor and council

The governor, lieutenant governor and representative at the Legislature of the Penobscot Tribe of Indians shall hold office for 2 years commencing on the first day of October on the even-numbered years beginning October 1, 1968, or until their successors are elected.

The council of the Penobscot Tribe of Indians shall consist of 12 members elected for 4 years, chosen in the following manner: At the election of September 8, 1970, 12 members shall be elected to said tribal council. The 6 members receiving the highest number of votes in the 1970 election shall hold office for 4 years and the remaining 6 members shall hold office for 2 years, commencing on October 1, 1970, unless removed as provided, or resigned. In each subsequent election thereafter, 6 members of said tribe shall be elected to said tribal council and shall hold office for 4 years, commencing on the first day of October in the even-numbered years, or until their successors are elected. Biennially on the first day of October in the even-numbered years, all correspondence, records, files and other materials pertaining to Penobscot tribal government and tribal activities shall be turned over to the newly elected tribal governor by the former tribal officials.

The governor shall preside over all meetings of the council and be a member ex officio. In the absence of the governor, the lieutenant governor shall preside. Seven members of said council shall constitute a quorum thereof for the purpose of conducting the affairs of the tribe and exercising its powers and for all other purposes, notwithstanding the existance of any vacancies. Tribal council members who are not in attendance at 3 successive tribal council meetings, or at 5 tribal council meetings during a 12 month period, shall be removed from said council by the governor, with the advice and consent of the council. Each council member must be given at least 24 hours advance notice of said meeting by the governor. The governor may excuse tribal council members from attendance at tribal council meetings in advance of such meetings for health or other personal reasons. No member of the council shall be liable to answer for anything spoken in debate at any council meeting.

Whenever any vacancy occurs in the office of governor, lieutenant governor, council and representative at the Legislature, there shall be a special election called by the commissioner within 60 days to fill such vacancy. The governor, lieutenant governor, council and repre-

PN-007253

hold their election for the choice of governor and lieutenant governor of each reservation of said tribe, a representative to the Legislature of this State and a tribal council to consist of 6 members of said tribe from each reservation, all of whom must be at least 18 years of age. Beginning with the election in 1976, the members of the tribal council shall be elected by a majority vote of those present and voting for terms of 4 years each except that of those first elected, 3 shall serve for a term of 2 years. The representative to the Legislature of this State shall be chosen alternately between the 2 reservations. Only certified Indian members of the tribe who are 18 years of age or older shall be eligible to vote.

On the first Tuesday of August biennially on the even-numbered years, the Passamaquoddy Tribe of Indians shall hold a caucus for the purpose of nominating candidates to be elected as provided in this section. Such caucus shall have the right to establish, by majority vote, rules for the conduct of the following tribal election, providing that such rules do not violate the constitutional rights of any person. The commissioner shall give notice of the time and place, 7 days before the day of election, by posting notices thereof in some conspicuous place on the reservations at Pleasant Point and Indian Township. Said commissioner or his authorized representative shall receive, sort and count the votes given in said election, in the presence of members of the tribe, and those elected shall be given certificates thereof, except that no certificate of election shall be issued less than 10 days after the election.

On the written application of a candidate in said election within 7 days after election day, the commissioner shall permit him or his counsel to recount the ballots under proper protective regulations. Upon the receipt of the application, the commissioner shall send written notice of the recount to the candidates for the office in question, stating the time and place of the recount. The commissioner or his authorized representative shall preside at the recount and shall segregate any disputed ballots. Ballots may be disputed for any or all of the following reasons:

A.   If more names are marked for an office than there are vacancies;

B.   If there are any distinguishing marks on the ballots;

C.   If the ballot is marked in such a way as to make the voter's choice impossible to determine.

In no case shall a ballot be disputed solely because of the type of mark used to indicate the voter's choice, and all votes shall be counted where the voter's intention can be clearly seen and no other reason for challenging the ballot but its type of marking exists. If any mistake was made in counting the ballots on election day, the commissioner shall correct his tabulation. If the corrected tabulation changes the result declared on election day, the commissioner shall issue his certificate of election to the winner of a recount unless within 4 days of said recount, the loser appeals its results in writing to the Governor, addressed to the Secretary of State. In all cases, the determination of the winner by the Governor shall be final.

Sec. 31-A. Passamaquoddy tribal government (Chapter 740 of P.L. 1973, as amended by Sec. 3, 4, 5 and 6 of Chap. 97 of P.L. 1975)

The governors, lieutenant governors, representatives to the Legislature and councillors of the Passamaquoddy Tribe of Indians shall

hold office for 2 years commencing on the first day of October on the even-numbered years beginning October 1, 1968 or until their successors are elected. Vacancies in the offices of governor, lieutenant governor and representative shall be filled by a special election called by the respective tribal council. Whenever the office of governor shall become vacant, the lieutenant governor shall act as governor until the office is filled by election. Vacancies in the tribal council shall be filled through appointment by the respective tribal governor with the advice and consent of the respective tribal council at a meeting called for that purpose.

The governors shall preside over all meetings of the council and shall be entitled to vote only in case of a tie. In the absence of the governor, the lieutenant governor shall preside but shall be allowed to vote in council on all occasions when he is not the presiding officer.

Four members of such council from each reservation, shall constitute a quorum thereof for the purpose of conducting the affairs of the tribe on each reservation and exercising its powers and for all other purposes, notwithstanding the existence of any vacancies. At joint meetings of the tribal councils from both reservations, a total of 7 council members shall constitute a quorum, with at least 3 members being present from each reservation.

The tribal governor of each reservation shall call a general meeting of all tribal members residing on the reservation for the purpose of affirming or rejecting legislative proposals prepared by the representative of the tribe for submission to the Legislature. The time and place of such meeting shall be posted 7 or more days prior to the meeting day at the office of the tribal governor and at one other conspicuous place on the reservation. All legislative proposals receiving an affirmative vote of a majority of those present and voting, at such general meeting shall be given to the tribal representative to the State Legislature for submission to the Legislature.

The governor, lieutenant governor and council members of each reservation of said tribe may be removed from office by the voters of their respective reservations qualified to vote in tribal elections. The procedure for removal shall be as follows: Upon receipt of a petition signed by 50 persons qualified to vote at the reservation concerned, seeking removal of the governor, lieutenant governor or a council member of that reservation, the commissioner shall call a special election to vote on removal of the official in question. Only persons qualified to vote in tribal elections at Pleasant Point Reservation shall be eligible to vote in a removal election of an official of that reservation and only persons qualified to vote in tribal elections at Indian Township Passamaquoddy Reservation shall be eligible to vote in a removal election of an official of that reservation and said removal election shall be held in the same manner as general tribal elections. Removal shall be accomplished by a majority vote of those voting. Before any such removal election is held, the commissioner shall call a general meeting on the reservation from which he received the removal petition and at such meeting the official whose removal is sought shall have an opportunity to hear the charges against him and present evidence on his own behalf. Any petition seeking removal of an official shall set forth the reasons for seeking removal of such official and the official in question shall be advised of such reasons prior to the meeting called by the commissioner.

PN-007254

## Census and membership (As amended by Chap. 62, P.L. 1973 and Sec. 7 of Chap. 95 of P.L. 1975)

1. Census. An accurate census of the Passamaquoddy Tribe shall be taken early each January by the tribal council of each reservation upon the best information which they can obtain as provided. If it existed on the first day of each January, annually, the original, certified or before the 20th day of January, annually, the original, certified under oath, shall be delivered to the commissioner, and copies thereof to the governors and councils of each reservation of said tribe for their use. On the first Wednesday of January, annually, the council of each reservation shall hold a meeting for receiving information from such of the tribe as may attend, as to the membership of the tribe, the identity of persons and the correctness of names; due notice in writing of the time and place of which meetings shall be given by said council. At said meeting, 5 of said tribal council shall constitute a quorum thereof. If this subsection is not complied with, the commissioner for purposes of his work may use the last previous tribal census.

2. Membership. Membership in the Passamaquoddy Tribe of Indians at Indian Township may, after January 1, 1974, be acquired by birth.

3. Birth; adoption. Membership in the Passamaquoddy Tribe of Indians at Pleasant Point shall be acquired only by birth.

## Applicability of provisions

All the provisions of section 4770 shall apply to the Passamaquoddy tribe of Indians as well as to the Penobscot tribe, except that complaints under said section relating to the Passamaquoddy tribe shall be made to the proper officer of the District Court for Northern Washington instead of the District Court for Southern Penobscot as provided in said section.

## Indian Township forest resources; Passamaquoddy trust funds

The Commissioner of Indian Affairs, with the consent of the 2 Passamaquoddy tribal governors and tribal councils, may sell to the best advantage of the State, the timber and grass from township numbered 2 on the St. Croix River, called Indian Townships, expressly retaining in the written contract of sale a lien on the timber and grass cut, until the amount due for stumpage thereon is paid. The commissioner shall include in each contract of sale specific restrictions and conditions requiring the cutting to be done in accordance with sound forestry management. The commissioner shall require the purchaser to deliver to him a surety bond in a penal sum equal to the amount of the contract conditioned upon the proper performance of the contract to be executed by a surety company authorized to transact business in the State as surety, the contract and bond to be approved as to form by the Attorney General, and to be filed in the office of the Commissioner of Indian Affairs. Every survey or appointed by said commissioner to scale or survey the lumber so sold, before entering on his duties, shall be sworn to the faithful performance of his trust, and shall file a certificate of his

22

oath with the commissioner. From the gross income from the sale of timber and grass, the commissioner shall make payment to the Treasurer of State to be allotted to the Bureau of Forestry on the basis of the statewide annual per acre expenditure for forest fire protection for the last fiscal year for all lands within Indian Township not already paying a Maine Forestry District tax for the prevention, control and extinguishment of forest fires.

At the end of each fiscal year 40% of the net income from the sale of timber and grass from Indian Township for the preceding 12 months shall be transmitted to each of the Indian Township tribal council's and Pleasant Point tribal council's tribal accounts, for use as said councils see fit. Payments from said accounts of said income shall be made by the respective tribal clerk in accordance with the vote of the respective tribal council. The remaining 20% of such net annual income shall be placed in the Passamaquoddy Tribe Trust Funds. At the end of each fiscal year, the interest on said trust funds shall be transferred to the Passamaquoddy Tribe Trust Funds.

Anyone who cuts timber and grass from Indian Township without the written permission of the Commissioner of Indian Affairs shall be guilty of a misdemeanor and upon conviction thereof be punished by a fine of not more than $1,000, or by imprisonment for not more than 11 months, or by both.

(As last amended by Chap. 72 of P.L. 1975)

Sec. 4835. No sale or permits for foreigners

No citizen or subject of a foreign government shall purchase, cut or carry off trees, timber or grass from the township reserved for the benefit of the Passamaquoddy tribe. If the commissioner gives to such citizen or subject a permit for such unlawful purpose, he forfeits not more than $500 nor less than $100, to be recovered by a civil action, ½ to the State and ½ to the prosecutor.

Sec. 4836. Certification to controller; warrants for payment

Out of the interest occurring upon the funds belonging to said tribe, the commissioner shall certify to the State Controller the amounts due to said Indians in conformity to resolves of the Legislature and any further amounts that the Legislature may appropriate, and the State Controller shall prepare warrants for the same, making all payments so far as possible direct to the person to whom such payment is due.

Sec. 4837. Removal of poor to reservation; reimbursement to towns

Any member of the Passamaquoddy tribe requiring assistance may be removed by the Commissioner of Indian Affairs from any place in which he may be residing, or be found, to either of the Indian reservations provided for said tribe, or may be removed from one of such reservations to another such reservation, whenever in the judgement of the Commissioner of Indian Affairs such removal should be made. When any member of said tribe is found destitute and in distress beyond the tribal reservation, and is relieved by the town in this State where he is so found, the overseers of the poor of said town may send to the Commissioner of Health & Welfare a statement specifying the nature, dates and amounts of the supplies furnished, which shall be transmitted to the department with such addi-

23

other costs of attending any institution of learning meeting the requirements of properly accredited institutions.

**Sec. 2209. Institutional grant**

Any institution that enrolls one or more grant recipients may apply for a grant, not to exceed $1,000 per enrolled grant recipient, for the purpose of establishing and conducting a program of support services for said grant recipient.

**Sec. 2210. Committee**

Any Indian Scholarship Committee set up by the Maine State Department of Education shall, at its discretion, approve all grants under this chapter. The composition of the Indian Scholarship Committee shall be as follows:

The Supervisor of Indian Education of the Maine State Department of Education; 2 members of the Passamaquoddy Tribe, chosen by joint session of the tribal councils of Indian Township and Pleasant Point; 2 members of the Penobscot Tribe, chosen by the tribal council of the Penobscot Tribe; 2 members of the Association of Aroostook Indians, Inc.; and a representative of the Chancellor of the University of Maine. The term of service of each member of the Indian Scholarship Committee shall be at the pleasure of his appointing authority.

The committee is authorized to accept funds for the scholarships provided by this chapter.

1964 Maine Revised Statutes, as amended

## TITLE 21—ELECTIONS

## SPECIAL PROVISIONS FOR THE INDIAN VOTING DISTRICTS

Sec.
1621.   Indian voting districts.
1622.   —Election procedure.

**Sec. 1621. Indian voting districts**

There are continued 3 voting districts previously created as follows: Indian Island Voting District, comprising all of the Penobscot Tribal Reservation situated on islands in the Penobscot River, in the County of Penobscot; Indian Township Voting District, comprising all of the Passamaquoddy Tribal Reservation situated on Indian Township, in the County of Washington; and Pleasant Point Voting District, comprising all of the Passamaquoddy Tribal Reservation situated on Pleasant Point, in the County of Washington.

**Sec. 1622. —Election procedure**

The following provisions apply to each Indian Voting District:

25

---

tional statements of fact as said commissioner may think proper. The State shall reimburse said town for the relief so furnished to such extent as the Department of Health & Welfare adjudges to have been necessarily extended thereof.

Schools (Repealed by Section 56-A, Chap. 571, P.L. 1973)

Indian Township Passamaquoddy School Committee (Repealed – see Sec. 4719)

Pleasant Point Passamaquoddy School Committee (Repealed – see Sec. 4719)

## TITLE 20

added by Chap. 179 of P.L. 1971 and Sec. 2 of Chap. 97 of P.L. 1973)

ter 301-A

## NORTH AMERICAN INDIAN SCHOLARSHIPS

**Scholarship Fund**

There is established by the State of Maine a scholarship fund for the purpose of assisting North American Indians residing in Maine to obtain a secondary or post-secondary education, or both, from properly accredited institutions.

**North American Indians residing in Maine defined**

As used in this chapter, "North American Indians residing in Maine" shall be deemed to include either those persons whose names are included upon the current tribal census of either the Passamaquoddy or Penobscot Tribes of Indians or those persons who have resided in Maine for at least 5 consecutive years and at least one of whose parents or grandparents were either included on the census of the Passamaquoddy or Penobscot Tribes or held a band number of the Malacite or Micmac Tribes.

**Properly accredited institutions defined**

As used in this chapter, "properly accredited institutions" shall be deemed to include any and all secondary and post-secondary institutions of learning which are approved or accredited by the Department of Education of the State in which they are located or are approved or accredited by a regional association of secondary schools and colleges, or are approved for payment of tuition by the United States Veterans Administration.

**Application**

Any student meeting the requirements of properly accredited institutions may apply for a grant, not exceeding $3,000 per year for the purpose of paying his or her tuition, room, board, books and

24

PN-007256

1. Ballot and voting material. A reasonable time before any election, the Secretary of State shall furnish the registration commissioner of each district with ballots, specimen ballots, instruction posters and other materials necessary for conducting and reporting the results of the election.

2. Voting place. The commissioner of Indian Affairs shall provide a suitable building for use as a voting place for all elections. He shall equip it with voting booths, guardrails and other necessary equipment as required by this Title.

3. Registration commissioner. The Governor shall appoint a qualified person as registration commissioner of each voting district. The commissioner shall serve for 2 years from the date of his appointment. He shall receive a salary of $30 for each day actually and necessarily employed in the performance of his duties. In case of a vacancy in the office of registration commissioner, the Governor shall make a new appointment in the same manner as the original appointment for a full term. If there is insufficient time before the next election, in the opinion of the Governor, to obtain a person to serve, he may appoint a temporary registration commissioner to conduct that election only.

4. Duties of registration commissioner. The registration commissioner shall determine the constitutional qualifications of residents of his voting district who desire to register. If an applicant has been a resident of the district for 3 months, and meets the requirements of the Constitution, Article II, Section 1, the registration commissioner may permit him to register and enroll on election day.

5. Office hours. The registration commissioner shall hold office hours at the voting place, or in some other convenient location in his district, on the Tuesday before each election from 2 to 5 p.m. and from 7 to 9 p.m. for the purpose of registering and enrolling Indian voters.

6. Procedure at election. The registration commissioner shall act as a warden, ward clerk and clerk and shall perform all their duties in the conduct of the election. He shall appoint 2 election clerks, if available and qualified, who are Indian residents of the district, and who represent the 2 major parties from candidates nominated by the chairman of the county political committee. Each election clerk shall receive $20 per day.

7. Election notified. The registration / commissioner shall notify each election by issuing a warrant and posting attested copies of it in at least 2 conspicuous public places in the district. The copies of the warrant shall be posted at least 7 days before the election, and an attested copy with the return of the time it was given, shall be filed by him in the office of the Secretary of State before the day of the election for which the warrant was issued.

8. Law applicable. Registration, enrollment and the conduct of the election is governed by this Title, except as otherwise provided by this section.

9. Election return. After the votes have been sorted, counted and the ballots preserved according to this Title, the election clerks shall fill out the election return, the registration commissioner shall attest it and deliver it promptly to the office of the Secretary of State.

10. Compensation. After each election, the registration commissioner shall prepare an itemized bill stating the amount due him

and the election clerks. He shall submit the bill to the Commissioner of Indian Affairs, who shall pay it from funds appropriated by the State for support of the Indian Tribes.

# ELECTIONS

State Representatives & Senators
(Indian Voting Districts Apportioned)

REPRESENTATIVE CLASS DISTRICTS

PENOBSCOT COUNTY ... District 79 Indian Island and part of Old Town.

WASHINGTON and AROOSTOOK COUNTIES ... District 101 Indian Township, Alexander, Charlotte, Codyville Plt., Cooper, Crawford, Danforth, Grand Lake Stream Plt., Pembroke, Plt. No. 14, Plt. No. 21, Princeton, Robbinston, Talmadge, Topsfield, Vanceboro, Waite-Amity, Bancroft, Cary Plt., Glenwood, Haynesville, Macwahoc Plt., Orient, Reed Plt., Weston.

District 103
Cutler, Dennysville, Eastport, Lubec, Northfield, Perry, Pleasant Point, Wesley, and Whiting.

SENATORIAL DISTRICTS (by: Supreme Judicial Court—Feb. 1, 1972 & Feb. 29, 1972)

Apportionment of Senate

... Supreme Judicial Court, ... does hereby in making the apportionment cause the State to be divided into districts for the choice of Senators, and does hereby Order and Establish the following districts, each of which shall elect one Senator:

... District Number Twenty-seven, consisting of the municipalities and unorganized territories in Penobscot and Aroostook Counties are as follows: Penobscot County: Alton, Bradford, Burlington, Charleston, Corinth, Edinburg, Enfield, Glenburn, Greenbush, Howland, Hudson, Indian Island Voting District, Kenduskeag, Lagrange, Lee, Levant, Lincoln, Lowell, Mattawamkeag, Maxfield, Old Town, Passadunkeag, Springfield, Winn, Plantations of Carroll, Drew, Grand Falls, Lakeville, Prentiss, Webster and the unorganized townships of Argyle, Kingman and other unorganized territories, Aroostook County: Benedicta, Island Falls, Sherman, Plantations of Glenwood, Macwahoc, Reed and the unorganized territories of Silver Ridge Township, TAR2, TAR5 (Molunkus), T1R4, T1R5, T2R4, T3R3, T3R4 and T4R3.

... District Number Twenty-nine consisting of all municipalities and unorganized territories in Washington County, (INDIAN TOWNSHIP VOTING DISTRICT, PLEASANT POINT VOTING DISTRICT) and Amity, Bancroft, Haynesville, Orient and Weston in Aroostook County.

PN-007257

received from the sale of stumpage before it is credited to the department that has administration of said lands.

## SUBCHAPTER VI
(As added by Chap. 98 of P.L. 1975)

### SHADE TREE PLANTING AND GENERAL CARE

Sec.
1131.

#### Purpose
To promote aesthetic and environmental values of trees to communities and to restore those values lost through death of trees from insect and disease depredation, soil depletion, adverse growth factors and old age, the State Entomologist and his agents under the supervision of the Director of the Bureau of Forestry may enter into agreement with municipal officials and Penobscot and Passamaquoddy tribal governments to pay, so far as funds are available, up to 50% of the costs of procuring young tree-planting stock and planting and general care of public shade trees. Whenever the State does contribute funds for this purpose, it shall have the authority to establish requirements for a municipal tree care program and requirements and procedures relative to selecting, planting and care of such trees. This program is not intended to extend beyond village or community limits, except for municipal parks or cemeteries.

## TITLE 12—ISLAND FISH AND GAME
(As amended by Chap. 90, 92 & 259, P.L. 1973 and Sec. 1 and Sec. 8 of Chap. 97 of P.L. 1975 and Chap. 314 of P.L. 1975)

Sec.
1960-A. Trapping season for Passamaquoddy.
2401.&
2401-B. Licenses and permits.
2402. Trapping by non-Indian forbidden.
2552. Atlantic Salmon Stamp (Chap. 314 of P.L. 1975)

Sec.
1960-A. Trapping season for Passamaquoddy Tribe
There shall be an open season on muskrats from October 1st to May 10th on all lands and islands belonging to the Passamaquoddy Tribe of Indians. It shall be unlawful for any person not a member of said Passamaquoddy Tribe to trap muskrats during such open seasons on said Indian lands.

There shall be an open season for the trapping of beaver during the months of December, January and February of each year of all lands and islands belonging to the Passamaquoddy Tribe of Indians. It shall be unlawful for any person not a member of said Passamaquoddy Tribe to trap beaver during such open season on said Indian lands.

29

## ELECTIONS—CONSTITUTION OF MAINE
ELECTORS—State, County and National Elections
(ARTICLE II, Section 1, as amended)

1. Every citizen of the United States of the age of eighteen years and upwards, excepting persons under guardianship for reasons of mental illness, having his or her residence established in this State for the term of six months next preceding any election, shall be an elector for Governor, Senators and Representatives, in the city, town or plantation where his or her residence has been established for the term of three months next preceding such election, and he or she shall continue to be an elector in such city, town or plantation for the period of three months after his or her removal therefrom, if he or she continues to reside in this State during such period, unless barred by the provisions of the second paragraph of this section; and the elections shall be by written ballot. But persons in the military, naval or marine service in the United States, or this State, shall not be considered as having obtained such established residence by being stationed in any garrison, barrack or military place, in any city, town or plantation; nor shall the residence of student at any seminary of learning entitle him to the right of suffrage in the city, town or plantation where such seminary is established. No person, however, shall be deemed to have lost his residence by reason of his absence from the State in the military service of the United States, or of this State.

No person shall have the right to vote or be eligible to office under the Constitution of this State, who shall not be able to read the Constitution in the English language, and write his name: provided, however, that this shall not apply to any person prevented by a physical disability from complying with its requisitions, not to any person who had the right to vote on the fourth day of January in the year one thousand and eight hundred and ninety-three.

Every Indian, residing on tribal reservations and otherwise qualified, shall be an elector in all county, state and national elections.*
(*Amendment approved 9/21/54)

† Maine Revised Statutes Annotated, as amended

## TITLE 12—FORESTRY

#### Duties of foresters
Foresters under the direction of the commissioner shall provide technical guidance and service to small woodland owners and processors to bring about improvement in the growing, harvesting, marketing and utilization of forest products.

Whenever foresters are used to practice forest management on land belonging to the State and on Township numbered 2 on the St. Croix River, called the Indian Township, reimbursement for the time and expenses of the foresters, advertising of stumpage and similar expenses incidental thereto shall be deducted from the income

28

# TITLE 22—HUMAN SERVICES

## CHAPTER 426—FOSTER HOMES

Sec.
3797.

*Subsection 1-A additional*

1-A. Indian reservations. Subsection 1, shall also apply to homes or day care facilities located upon Indian reservations. The department shall consider for licensure such facilities as are recommended by the Governor and tribal council of the reservations on which they are located.

## TITLE 23—HIGHWAY

(1964 MRSA as amended by Sec. 22, Chap. 593, P.L. 1971, Sec. 1, Chap. 277, P.L. 1973, and Chaps. 613 and 637 of P.L. 1975)

Sec.
1051. Part of a state highway system.
1052. Maintenance of roads and bridges.
1053. Fund available.
*.   Kennebassis Road.

Sec.
1051. Part of state higway system (As amended by Chap. 277, P.L. 1973 and Chap. 613 of P.L. 1975)

The Department of Transportation is directed to take over as a part of the State highway system all the roads on Indian Island, Penobscot County, in Pleasant Point and Indian Township in Washington County, and the bridge between Indian Island and Old Town. Said roads and bridges may be reconstructed from time to time as in the judgement of the Department is necessary, and the expense thereof, except as otherwise provided in section 1053, shall be paid from funds available for the construction of state highways.

Additional roads and streets at Indian Island, Pleasant Point and Indian Township proposed by the Penobscot Tribal Reservation Housing Authority, the Pleasant Point and Indian Township Passamaquoddy Reservation Housing Authorities shall be a part of the state highway system if there is a dedication of sufficient land by appropriate authority. The housing authority shall obtain approval from the Commissioner of Transportation for its plans of the proposed roads and streets before dedication. The Department of Transportation shall accept the roads and streets set forth on the approved plans when it finds there has been a lawful dedication of the land designated on the plans. The Department of Transportation is authorized to accept funds, other than funds allocated for the construction of state highways, that may be authorized from implementing the housing authority plans for development, and to contract to do all things necessary to cooperate with other governmental agencies in the construction or the maintenance of these roads and streets.

31

---

1-B. Licenses and permits (Subsections 1-6 do not apply)

7. Licenses for Indians. The commissioner (Inland Fisheries and Wildlife) shall issue a hunting, trapping and fishing license to any Indian over the age of 10 years of the Passamaquoddy, Penobscot, Maliseet or Micmac Tribes without any charge or fee, providing the Indian presents a certificate from the respective reservation governor or the president of the Association of Aroostook Indians stating that the person described is an Indian and a member of that tribe. For the purpose of this section, an Indian shall be any member on the tribal lists of the Penobscot and Passamaquoddy Tribes, or a person on the membership list of the Association of Aroostook Indians and who has resided in the State of Maine for at least 5 years. Holders of such licenses shall be subject to all of the laws, rules and regulations of chapters 301 to 335.**

A. Nothing in said chapters shall be construed to encroach upon the right of said Indians to take wildlife for their own sustenance on their own reservation lands.

After having had full consultation with, and the consent of the Commissioner of Inland Fisheries and Wildlife, the tribal governor and council of each reservation shall have the right to govern by tribal ordinance hunting, fishing and trapping on their respective reservation lands. Copies of the text of any ordinances adopted shall be filed with the Commissioner of Inland Fisheries and Wildlife and in any and all instances not covered by tribal ordinance the Inland Fish and Game Laws of Maine shall apply.

B. It shall be unlawful for any person, except Penobscot Indians as defined in Title 22, chapter 1353, to hunt or trap on the Penobscot Indian lands, except by permission of landowners. Whoever violates this paragraph shall be punished by a fine of $100 or by imprisonment for not more than 30 days, or by both.

C. It shall be unlawful for any person, except members of the Passamaquoddy Tribe of Indians as defined in Title 22, sections 4701 and 4832, to hunt, trap, or fish on any reservation lands of said tribe without written permission from the governor and council of the appropriate Passamaquoddy reservation. Whoever violates this paragraph shall be punished by a fine of $100 or by imprisonment for not more than 30 days, or by both.

Trapping by non-Indian forbidden

It shall be unlawful for any person not a member of the Passamaquoddy Tribe of Indians to trap for muskrat and beaver on all lands and inlands belonging to the Passamaquoddy Tribe of Indians.

IRSA § 2552, sub-§ 7, A, 1st sentence, as repealed and replaced by 1973, Chap. 297, § 1, as amended by Chap. 314 of P.L. 1975 to read:

An Atlantic salmon stamp shall be issued by the commissioner to fish for Atlantic salmon under this chapter, the fee for which stamp shall be $1 for any resident of this State, excluding members of Maine's Indian Tribes who shall be exempt from the fee, 16 years of age or older, and $15 for any non-resident, 16 years or older.

30

## TITLE 3—LEGISLATURE—GENERAL PROVISIONS
(1964 MRSA, as last amended by Chap. 750 of P.L. 1975)

**Sec. 7th ¶** Salary, expenses and travel of members of Legislature and Representatives of Indian Tribes

... The member of the Penobscot Indian Tribe and the member of the Passamaquoddy Indian Tribe elected to represent his tribe at the Legislature shall receive a compensation of $25 for each day's attendance during the first and 2nd regular sessions and allowance for meals, housing and travel expenses as any other Member of the Senate and House of Representatives for attendance at each legislative session. For the duration of any special session of the Legislature, they shall receive the same allowances, including housing, meal and constituent service allowances, as any other Member of the Senate and House of Representatives.

### RULES OF THE HOUSE OF REPRESENTATIVES

**Sec. 55.** The member of the Penobscot Indian Tribe and the member of the Passamaquoddy Indian Tribe elected to represent their tribes at the biennial session of the Legislature shall be granted seats on the floor of the House of Representatives; be granted, by consent of the Speaker, the privilege of speaking on pending legislation; and be granted such other rights and privileges as may from time to time be voted by the House of Representatives.

### LIQUOR

**Sec. 103.** Unincorporated places (1964 MRSA, as amended)

Upon petition signed by 20% or more of the voting age, residents in an unincorporated place requesting a vote on local option questions, the Secretary of State shall forthwith appoint a time and place, give public notice in the same manner as provided for notice in section 252 and cause a vote on such questions to be taken in such unincorporated place under his supervision and subject to such rules and regulations as he shall promulgate. Voting age residents in an unincorporated place shall be as shown by returns to the State Tax Assessor dated April 1, 1971, which returns shall be deposited by the Tax Assessor in the Secretary of State's office. Voting age of Indian reservation residents shall be determined from annual tribal census.

### TITLE 29—MOTOR VEHICLES
Special License Plates for Indian Representatives

**Sec. 193.** State Officials

The Secretary of State shall, upon application therefor by ... members of the Legislature, Representatives of Indian Tribes at the

33

---

Any balance remaining under this chapter shall be allocated between the Indian Reservations of Pleasant Point and Peter Dana Point for the construction of state highways on the reservations in such proportion as agreed to by the Commissioner of Transportation and both tribal governors.

These funds are to be used for the completion of the roads related to the housing projects for which the funds were intended. Following the completion of the purpose of this Act any funds which may be remaining shall lapse.

**Sec. 1052.** Maintenance of roads and bridges

The roads and bridges referred to in section 1051 shall be maintained by the Department and the expense thereof charged to such funds under the jurisdiction of the commissioner as are available for the purpose of maintaining state highways.

**Sec. 1053.** Fund available

The Department shall each year set aside from the fund available for the construction of state aid roads the sum of $1,500, and the same shall be expended for the construction of state roads in Indian Township 2, R.1.

RESOLVE, Designating Kennebasis Road in Indian Township, Washington County, as a State Road (Chap. 57, Resolves 1973)

Kennebasis Road, Indian Township; designated. Resolved: That the Department of Transportation be authorized and directed to designate as State Highway so much of Kennebasis Road, Indian Township, Washington County, which leads easterly from U.S. Route 1, as may be dedicated by appropriate authority and easements for highway use be granted by the abutting owners at the location and a width and length as may be approved by the Commissioner of Transporation from time to time; and be it further

RESOLVED: That there is allocated from the General Highway Fund the sum of $15,000 for the fiscal year ending June 30, 1974 for purpose of improving said highway as designated by this resolve. Any unexpended balance shall not lapse but shall remain a continuing carrying account until the purpose of this resolve has been accomplished.

### LEGISLATURE—INDIAN REPRESENTATIVE

ELECTION of Tribal Representatives at Legislature:
Penobscot Tribe—See TITLE 22-4792 (Page 17)
Passamaquoddy Tribe—See TITLE 22-4831 (Page 19)

32

Legislature . . . issue one pair of specially designed number plates and a certificate of registration for one designated motor vehicle owned or controlled by each of the officials' names. The color, shape, size, lettering and numbering of such special plates shall be determined by the Secretary of State . . . Such plates shall be issued for and attached to only such motor vehicle as is currently registered in accordance with this Title. Such special plates may be displayed in lieu of the regular number plates issued for such vehicles. A fee of $2 shall be paid to the Secretary of State upon application. Such special number plates shall be valid only during the term of office for which the registrant is elected. In case the office is for any cause vacated during said term, such special numbered plates and registration certificate shall immediately be surrendered to the Secretary of State.

## TITLE 36—MOTOR VEHICLES (Poll & Excise Taxes)

(1964 M.R.S.A., as amended)

3. Estates of certain persons.
4. Excise taxes, place of payment.
7. Collection of tax.

4. Polls and estates of certain persons (Chap. 66, sec. 8, P.L. 1973, as amended)

The estates of the following persons are exempt from taxation:

1. Estates of certain persons.
   A. . . .
   B. . . .
   C. The estates of only those Indians who reside on tribal reservations.

4. Excise taxes—place of payment

The excise tax on a vehicle shall be paid in accordance with the following:

1. . . .
2. House and camp trailers
   A. . . .
   B. . . .
   C. The excise tax for house trailers owned by residents of the various Indian reservations shall be paid to the tribal clerks thereof.
3. Motor vehicles
   A. If the motor vehicle is owned by an individual resident of this State, or a domestic corporation, the excise tax shall be paid in the place where the owner resides; the excise tax for motor vehicles owned by residents of the various Indian reservations shall be paid to the tribal clerks thereof.

Collection of tax

1. . . .

34

2. . . .
3. Tribal clerk. Excise taxes of residents of the various Indian reservations shall be paid to the tribal clerks thereof who shall hold and disburse the proceeds for the benefit of the respective tribes in accordance with Title 22, Section 4706.

## MISCELLANEOUS PROVISIONS

### TITLE 30

PUBLIC DUMP—Indian Township

Sec. 1202. Assessment for public services tax

The county commissioners of Washington County are authorized, on behalf of the inhabitants of Trescott, Marion and Edmunds Townships, to enter into contracts on such terms as they deem fit with one or more persons, associations or municipalities, or to take such other steps as they deem advisable, to provide fire protection, other than forest fire protection, and public dumps for said townships. Said commissioners are authorized on behalf of the inhabitants of Lambert Lake, Forest City, INDIAN TOWNSHIP and Brookton Townships to enter into similar contracts or to take similar steps to provide public dumps for said townships . . .

## CONSTITUTION OF MAINE

ARTICLE IX (Trust Funds)

Sec. 14. The credit of the State shall not be directly or indirectly loaned in any case, except as provided in section 14-A. The Legislature shall not create any debt or debts, liability or liabilities, on behalf of the State, which shall singly, or in the aggregate, with previous debts and liabilities hereafter incurred at any one time, exceed two million dollars, except to suppress insurrection, to repel invasion, or for purposes of war; and excepting also that whenever two-thirds of both Houses shall deem it necessary, by proper enactment ratified by a majority of the electors voting thereon at a general or special election, the Legislature may authorize the issuance of bonds on behalf of the State at such times and in such amount and for such purposes as approved by such action; but this shall not be construed to refer to any money that has been, or may be deposited with this State by the Government of the United States, or to any fund which the State shall hold in trust for any Indian tribe. Whenever ratification by the electors is essential to the validity of bonds to be issued on behalf of the State, the question submitted to the electors shall be accompanied by a statement setting forth the total amount of bonds of the State outstanding and unpaid, the total amount of

35

PN-007261

bonds of the State authorized and unissued, and the total amount of bonds of the State contemplated to be issued if the enactment submitted to the electors be ratified.

ONSTITUTIONAL RESOLUTION (Chapter 3 of the Resolve of 1971)
(Constitution, Article IX amended, Section 14-D, additional)

14-D. Insuring payment of mortgage loans for Indian housing. For the purpose of fostering and encouraging the acquisition, construction, repair and remodeling of houses owned or to be owned by members of the 2 tribes on the several Indian reservations, the Legislature by proper enactment may insure the payment of mortgage loans on such houses not exceeding in the aggregate $1,000,000, in amount at any one time and may also appropriate moneys and authorize the issuance of bonds on behalf of the State at such times and in such amounts as it may determine to make payments insured as aforesaid. (This amendment was voted upon favorably in the November, 1972 general election.)

## ARTICLE 7-A. HOUSING MORTGAGE INSURANCE LAW
(MRSA, Title 30, Chap. 239, Sub-Chap. II, Art. 7-A, added by Chap. 618 of P.L. 1973)

### Short title
§4. This Article shall be known and may be cited as the "Housing Mortgage Insurance Law."

### Declaration of purpose
§5. The Constitution of Maine, Article IX, section 14-D, provides for "insuring payment of mortgage loans for Indian housing for the purpose of fostering and encouraging the acquisition, construction, repair or remodeling of houses owned by members of the 2 tribes on the several Indian reservations." It is the purpose of this Article to designate the State Housing Authority as the state agency responsible for implementing the powers provided by the Constitution in Article IX, section 14-D.

Whereas the power of the Maine State Housing Authority to insure mortgages on housing, other than Indian housing, needs clarification, and whereas the Maine State Housing Authority is the appropriate agency of the State to administer a State Housing Mortgage Insurance Program and could administer it in conjunction with the Indian Housing Mortgage Insurance Programs, it is the further purpose of this Act to provide that clarification.

### Definitions
§6. As used in this Article, unless the context otherwise indicates, the following words shall have the following meanings:

1. Housing. "Housing" shall include but not be limited to any "project" or "housing project" as defined in section 4552, subsection 12.

2. Housing Mortgage Insurance Fund. "Housing Mortgage Insurance Fund" means any fund established by the Maine State

36

Housing Authority for the purpose of providing insurance for payment of mortgage loans for housing in Maine.

3. Indian Housing Mortgage Insurance Fund. "Indian Housing Mortgage Insurance Fund" means any Housing Mortgage Insurance Fund established by the Maine State Housing Authority in cooperation with the Indian Housing Authorities for the purpose of providing insurance for payment of mortgage loans for housing on the several Indian reservations.

4. Indian Housing Authority. "Indian Housing Authority" means any housing authority created by the Maine Indian Housing Authority law.

### Insurance policies
Sec. 4787.
1. Contracts. The Maine State Housing Authority is authorized to establish housing mortgage insurance contracts, to charge and collect premiums, to make appropriate payments and to do all other things necessary and proper to administer a State Housing Mortgage Insurance Program.

2. Procedure. When providing mortgage insurance on Indian housing, the Maine State Housing Authority shall develop the various contracts and other aspects of the program in cooperation with the Indian Housing Authorities and shall deal with insurnace purchases exclusively through the agency of the Indian Housing Authorities or a person acceptable to the Indian Housing Authorities.

### General obligation bonds for Indian Housing Mortgage Insurance
Sec. 4788.
The Maine State Housing Authority is authorized to issue up to $1,000,000, in state general obligation bonds for the purpose of providing funds to pay any necessary and proper costs or charges arising for any reason, including default of any policy issued pursuant to section 4787, subsection 2, and incurred as a result of its insuring or undertaking to insure payment of mortgages for Indian housing on an Indian reservation.

Proceeds from said bond issuance may not be used as collateral, payment, or in any other way to assist any insurance of mortgages on other than Indian housing on Indian reservations. Administrative funds used to assist in the management of an Indian Housing Mortgage Insurance Fund or Program may be commingled with administrative funding for other Housing Mortgage Insurance Funds or programs operated or to be operated by the Maine Housing Authority.

Proceeds from said bond issuance shall be accounted for separately from the general assets of any other housing insurance fund and separately from any other funds operated at any time by the Maine State Housing Authority, its successors, assigns, or trustees. Said separate accounting shall be maintained even if funds are commingled for investment purposes by the Authority or by a trustee of any fund operated by or for the authority.

### Zoning-Municipal-Indian Lands (Chap. 521, P.L. 1969, MRSA, Title 30, Sec. 4959 additional)
Sec. 4959.
No municipality which borders on Indian tribal lands shall enact a zoning ordinance which adversely affects such Indian Tribal lands.

37

*H.P. 976—L.D. 1290 (Chap. 130, P. & S. 1973)*

AN ACT to Appropriate Funds for the Purpose of Creating an Office of Off-reservation Indian Development within the Department of Indian Affairs.

********

Be it enacted by the People of the State of Maine, as follows:

Sec. 1. Findings; purpose. The Legislature finds and declares that the Department of Indian Affairs is presently unable because of lack of funds, to actively advise Indians residing off-reservation in the State of Maine who require such information of existing services and programs available to them. The Legislature further finds and declares that the advancement of such programs to such off-reservation Indians who desire to participate therein would help to generate income for such Indians and improve their social and economic welfare.

38

# APPENDIX

# INDIAN TREATIES WITH THE STATES

## OF

# MASSACHUSETTS AND MAINE

As printed in the Session Laws of 1843
(Originals in Vault of the Bureau of Archives)

ACT OF SEPARATION

1820

(From Revised Statutes—1841)

39

# INDIAN TREATIES

## with the

## STATE OF MAINE

(As printed in the Session Laws of 1843)

IN COUNCIL, March 20, 1843.

Ordered, That the secretary of state be requested to cause the treaties, ...nds and other documents, now on file in the secretary's office, in relation the Penobscot and Passamaquoddy tribes of Indians, necessary to be pre-ved as evidence of their title to their lands, and their claims against the ...te, to be printed with the resolves for the year 1843.

CYRUS MOORE, per order.

ad and passed.

ATTEST:

P. C. JOHNSON, Sec'y of State

Treaty made by the Commonwealth of Massachusetts with the Penobscot Tribe of Indians, June 29, 1818

This writing indented and made this twenty-ninth day of June, one thou-d eight hundred and eighteen, between Edward H. Robbins, Daniel Davis d Mark Landgon Hill, Esqrs., commissioners appointed by his excellency n Brooks, governor of the Commonwealth of Massachusetts, by and with advice of council, in conformity to a resolve of the legislature of said mmonwealth, passed the thirteenth day of February, A.D. one thousand d eight hundred and eighteen, to treat with the Penobscot tribe of Indians, on the subject expressed in said resolve, on the one part; and the said nobscot tribe of Indians, by the unsigned chiefs, captains and men of said e, representing the whole thereof, on the other part, Witnesseth, That the d Penobscot tribe of Indians, in consideration of the payments by them w received of said commissioners, amounting to four hundred dollars, and the payments hereby secured and engaged to be made to them by said mmonwealth, do hereby grant, sell, convey, release and quitclaim, to the mmonwealth of Massachusetts, all their, the said tribes, rights, title, inter-and estate, in and to all the lands they claim, occupy and possess by any ans whatever on both sides of the Penobscot River, and the branches reof, above the tract of thirty miles in length on both sides of said river, ich said tribe conveyed and released to said Commonwealth by their deed the eighth of August, one thousand seven hundred and ninety-six, except-and reserving from this sale and conveyance, for the perpetual use of said e of Indians, four townships of land of six miles square each, in the lowing places, viz:

The first beginning on the east bank of the Penobscot River, opposite the islands, so called, and running up said river according to its course, and ssing the mouth of the Mattawkeag River, an extent of six miles from the ce of beginning, and extending back from said river six miles, and to be out in conformity to a general plan or arrangement, which shall be made the survey of the adjoining townships on the river—one other of said wnships lies on the opposite or western shore of said river, and is to begin nearly opposite to the place of beginning of the first described township as

can be, having regard to the general plan of the townships that may be laid out on the western side of said Penobscot River, and running up said river according to its course, six miles, and extending back from said river six miles. Two other of said townships are to begin at the foot of an island, in West branch of Penobscot River in Nolacemeac Lake, and extending on both sides of said lake, bounding on the ninth range of townships, surveyed by Samuel Weston, Esq., which two townships shall contain six miles square each, to be laid out so as to correspond in courses with the townships which now are, or hereafter may be surveyed on the public lands of the State. And the said tribes do also release and discharge, said Commonwealth from all demands and claims of any kind and description, in consequence of said tribe's indenture and agreement made with said Commonwealth, on the eighth day of August, one thousand seven hundred and ninety-six, by their commissioners, William Sheppard, Nathan Dane, and Daniel Davis, Esquires; and we the under signed commissioners on our part in behalf of said Com-monwealth, in consideration of the above covenants, and release of the said Penobscot tribe, do covenant with said Penobscot tribe of Indians, that they shall have, enjoy and improve all the four excepted townships described as aforesaid, and all the islands in the Penobscot River above Old Town and including said Old Town Island. And the commissioners will purchase for their use as aforesaid, two acres of land in the town of Brewer, adjoining Penobscot River, convenient for their occupation, and provide them with a discreet man of good moral character and industrious habits, to instruct them in the arts of husbandry, and assist them in fencing and tilling their grounds, and raising such articles of production as their lands are suited for, and as will be most beneficial for them, and will erect a store on the island of Old Town, or contiguous thereto, in which to deposit their yearly supplies, and will now make some necessary repairs on their church, and pay and deliver to said Indians for their absolute use, within ninety days from this date, at said island of Old Town, the following articles viz: one six pound cannon, one swivel, fifty knives, six brass kettles, two hundred yards of calico, two drums, four fifes, one box of pipes, three hundred yards of ribbon, and that annually, and every year, so long as they shall remain a nation, and reside within the Commonwealth of Massachusetts, said Commonwealth will deliver for the use of said Penobscot tribe of Indians at Old Town aforesaid, in the month of October, the following articles viz: five hundred bushels of corn, fifteen barrels of wheat flour, seven barrels of clear pork, one hogshead of molasses, and one hundred yards of double breadth broadcloth to be of red color one year, and blue the next year, and so on alternately, fifty good blankets, one hundred pounds of gunpowder, four hundred pounds of shot, six boxes of chocolate, one hundred and fifty pounds of tobacco, and fifty dollars in silver. The delivery of the articles last aforesaid to commence in October next, and to be divided and distributed at four different times in each year among said tribe, in such manner as that their wants shall be most essentially supplied, and their business most effectually supported. And it is further agreed by and on the part of said tribe, that the said Commonwealth shall have a right at all times hereafter to make and keep open all necessary roads, through any lands hereby reserved for the future use of said tribe. And that the citizens of said Commonwealth shall have a right to pass and repass any of the rivers, streams, and ponds, which run through any of the lands hereby reserved, for the purpose of transporting their timber and other articles through the same.

In witness whereof, the parties aforesaid have hereunto set our hands and seals.

PN-007264

Edw'd H. Robbins. (Seal.)
Dan'l Davis. (Seal.)
Mark Langdon Hill. (Seal.)

John X Etien, Governor. (Seal.)
  his mark

John X Neptune, Lt. Governor. (Seal.)
  his mark

Francis X Lolon. (Seal.)
  his mark

Nicholas Neptune. (Seal.)

Sock X Joseph, Captain. (Seal.)
  his mark

John X Nicholas, Captain. (Seal.)
  his mark

Etien X Mitchell, Captain. (Seal.)
  his mark

Piel X Marie. (Seal.)
  his mark

Piel X Penuit, Colo. (Seal.)
  his mark

Piel X Tomah. (Seal.)
  his mark

Signed, sealed and delivered
in presence of us:
throp Lewis,
o. Blake,
seph Lee,
en't Webster,
seph Whipple.

PENOBSCOT, ss.—June 30, 1818.   Personally appeared the aforenamed ward H. Robbins, Daniel Davis, and Mark Langdon Hill, Esquires, and John en, John Neptune, Francis Lolon, Nicholas Neptune, Sock Joseph, John holas, Etien Mitchell, Piel Marie, Piel Penuit, and Piel Tomah, subscribers the aforegoing instrument, and severally acknowledged the same to be ir free act and deed.

BEFORE ME,
WILLIAM D. WILLIAMSON, Justice of the Peace.

PENOBSCOT, ss.   Received July 1, 1818, and recorded in book, N.4, ç 195, and examined by
JOHN WILKINS, Register.

42

---

Copy examined

A. BRADFORD, Secretary of
Commonwealth of Massachusetts

## TREATY MADE WITH THE PENOBSCOT TRIBE OF INDIANS, AUGUST 17, 1820

Whereas, The State of Maine by her commissioner, Lothrop Lewis Esq., has engaged to assume and perform all the duties and obligations of the Commonwealth of Massachusetts, towards us and our said tribe, whether the same arise from any writing of indenture, treaty or otherwise at present existing; and whereas said State of Maine has obtained our consent and that of our said tribe to said assumption and arrangement, now know all people to whom these presents shall come, that we whose hands and seals are hereunto affixed, for and in behalf of ourselves and the Penobscot tribe of Indians, so called, to which we belong and which we represent, in consideration of the premises, do hereby release to said Commonwealth of Massachusetts all claims and stipulations of what name or nature soever, which we or all or any of us or our said tribe have on or against said Commonwealth, arising under any writing of indenture, treaty, or otherwise, existing between said Commonwealth of Massachusetts, and said Penobscot tribe of Indians.

In witness whereof, we the undersigned chiefs, captains and men of said tribe, representing the whole thereof, have hereunto set our hands and seals this seventeenth day of August, in the year of our Lord one thousand eight hundred and twenty.

Governor John X Etien. (L.S.)
  his mark

Lieut. Governor John X Neptune. (L.S.)
  his mark

Francis X Lolan, Captain. (L.S.)
  his mark

Captain Etien X Mitchell. (L.S.)
  his mark

Piel X Mitchell, Capt. (L.S.)
  his mark

Sock X Sosep, Capt. (L.S.)
  his mark

Piel X Marie, Captain. (L.S.)
  his mark

Stasin X Neptune, Capt. (L.S.)
  his mark

43

PN-007265

## TREATY MADE WITH PENOBSCOT TRIBE OF INDIANS
### August 17, 1820

This writing, indented and made this seventeenth day of August in the year of our Lord one thousand eight hundred and twenty, by and between Lothrop Lewis of Gorham in the county of Cumberland and State of Maine, Esquire, Commissioner, appointed by William King, Esquire, Governor of said State, by and with the advice and consent of the council, in conformity to a resolve of the legislature of said State passed the twentieth day of June, in the year of our Lord one thousand eight hundred and twenty, to treat with the Penobscot tribe of Indians in said State, upon the subject expressed in said resolve, on the one part; and the said Penobscot tribe of Indians, by the undersigned, chiefs, captains and men of said tribe, representing the whole thereof on the other part; Witnesseth; That, the said Penobscot tribe of Indians, in consideration of the covenants and agreements, hereinafter mentioned, on the part of said commissioner, in behalf of said State, to be performed, kept and fulfilled, do hereby grant, sell, convey, release and quit-claim, to said State, all their, the said tribe's right, title, interest and estate, in and to all the lands and possessions, granted, sold and conveyed by us, to the Commonwealth of Massachusetts, by our writing of indenture, made with said Commonwealth by their commissioners, the honorable Edward H. Robbins, Daniel Davis and Mark L. Hill, Esquires, June the twenty-ninth, in the year of our Lord one thousand eight hundred and eighteen, saving and excepting, the reservations, in said indenture made and expressed. Meaning and intending hereby, to substitute and place, the said State of Maine, in the stead and place, of the said Commonwealth of Massachusetts, to all intents and purposes whatsoever, as it regards said indenture last mentioned, with the said tribe of Indians, so that all and singular, the lands, rights, immunities or privileges, whatsoever, which said Commonwealth of Massachusetts did, might, or could hold, possess, exercise and enjoy, under or by virtue of said indenture, or treaty, by any other indenture, treaty or agreement whatsoever, shall be held, possessed, exercised and enjoyed in as full and ample a manner by said State of Maine.

And the undersigned commissioner, on his part, in behalf of said State of Maine, in consideration of the premises, and of the foregoing covenants and engagements of said tribe, does hereby covenant with said tribe, that they shall have and enjoy, all the reservations made to them, by virtue of said treaty of the twenty-ninth of June, eighteen hundred and eighteen. And the undersigned commissioner, in behalf of said State of Maine, does hereby further covenant and agree with said tribe, that, as soon as the Commonwealth of Massachusetts, shall have made and fulfilled the stipulations on her part to be done and performed, under and by virtue of the fifth article of an act, "relating to the separation of the district of Maine from Massachusetts proper, and forming the same into an independent state," passed June the nineteenth, eighteen hundred and nineteen, then the said State of Maine, shall and will, annually, and every year, in the month of October, so long as they shall remain a nation, and reside within the said State of Maine, deliver for the use of the said Penobscot tribe of Indians, at Old Town, the following articles; to wit: five hundred bushels of corn, fifteen barrels of wheat flour, seven barrels of clear pork, one hogshead of molasses, and one hundred yards of double breadth broadcloth, to be of red color one year, and blue the next year, and so on alternately, fifty good blankets, one hundred pounds of gunpowder, four hundred pounds of shot, six boxes of chocolate, one hundred and fifty pounds of tobacco, and fifty dollars in silver.

It being meant and intended, to assume and perform, all the duties and

his
Awasoos X Mitchell, Capt.                    (L.S.)
    mark
    his
John X Ossou, Capt.                          (L.S.)
    mark
    his
Joseph X Marie Neptune, Esq.                 (L.S.)
    mark
    his
Joseph X Lion.                               (L.S.)
    mark
    his
Glocian X Awasoos.                           (L.S.)
    mark
    his
Capt. Nicholas X Tomah.                      (L.S.)
    mark
    his
Sabatis X Tomah.                             (L.S.)
    mark

Signed, sealed and delivered
    in presence of us:
[Wil]liam D. Williamson,
[Jose]ph Treat,
[Ebe]nezer Webster,
[Wil]liam Emerson,
[Step]hen L. Lewis,
[Joh]n Blake,
[Joh]n Webster.

[PE]NOBSCOT, ss.—August 17, 1820. Personally appeared the afore-
[na]med John Etien, John Neptune, Francis Lolon, Etien Mitchell, Piel
[Mit]chell, Sock Joseph, Piel Marie, Suassin Neptune, Awasoos Mitchell, John
[Oss]ou, Joseph Marie Neptune, Joseph Lion, Glocian Awasoos, Nicholas
[Tom]ah and Sabatis Tomah, subscribers to the foregoing instrument, and
[seve]rally acknowledged the same to be their free act and deed.

BEFORE ME,

WM. D. WILLIAMSON, Justice Peace.
COMMONWEALTH OF MASSACHUSETTS

[Secr]etary's Office, May 19, 1823.
    [I] hereby certify that the original instrument of release from the chiefs,
[capt]ains, and others of the Penobscot tribe of Indians, for and in behalf of
[them]selves and of the said tribe, of which the above and foregoing is a true
[cop]y, has been this day received and filed in this office.

ALDEN BRADFORD,
    Secretary of the Commonwealth.

PN-007266

...ligations of the Commonwealth of Massachusetts, toward the said Indians, ...ether the same arise from treaties or otherwise, and to ...ace, the said State of Maine in this respect, to all intents and purposes ...natsoever, in the stead and place of the Commonwealth of Massachusetts, so ...said tribe may have continued to them, all the payments, and enjoy all ...e immunities and privileges, in as full and ample a manner, under this ...denture or treaty, as they could have received or enjoyed, under the said ...aty, of the twenty-ninth of June, eighteen hundred and eighteen, if this ...esent treaty had not been made. Saving and excepting the two acres of ...d, which were by the treaty of June twenty-ninth, eighteen hundred and ...ghteen, to be purchased for the use of said tribe, in the town of Brewer, the ...rformance of which, has been relinquished by the said tribe to the Com...onwealth of Massachusetts.

Reserving however to the government of this State, the power and the ...ht to ratify and confirm, at pleasure, the doings of said commissioner in ...e premises.

In witness whereof, the parties aforesaid, have hereunto set our hands and ...als, the day and year first within written.

Lothrop Lewis.                                    (Seal.)

his
John X Etien, Governor.                           (Seal.)
mark

his
John X Neptune, Lt. Governor.                     (Seal.)
mark

his
Captain Francis X Lolon.                          (Seal.)
mark

his
Captain Etien X Mitchel.                          (Seal.)
mark

his
Captain Piel X Mitchel.                           (Seal.)
mark

his
Joseph X Maria Neptune, Esq.                      (Seal.)
mark

his
Joseph X Lion.                                    (Seal.)
mark

his
Sock X Sosep, Captain.                            (Seal.)
mark

his
Piel X Marie, Captain.                            (Seal.)
mark

his
Suasin X Neptune, Capt.                           (Seal.)
mark

his
Awasoos X Mitchel, Capt.                          (Seal.)
mark

his
John X Ossou, Capt.                               (Seal.)
mark

his
Capt. Nicholas X Tomah.                           (Seal.)
mark

his
Sabatis X Tomah.                                  (Seal.)
mark

his
Glocian X Awasoos.                                (Seal.)
mark

Signed, sealed and delivered
in presence of us:
Wm. D. Williamson,
William Emerson,
Joseph Treat,
Stephen L. Lewis,
Jno. Blake,
Eben Webster.

PENOBSCOT, ss.—August 17, 1820.  Personally appeared Lothrop Lewis, John Etien, John Neptune, Francis Lolon, Etien Mitchel, Piel Mitchel, Sock Joseph, Piel Marie, Suassin Neptune, Awasoos Mitchel, John Ossou, Joseph Maria Neptune, Joseph Lion, Glocian Awasoos, Nicholas Tomah, and Sabatis Tomah, subscribers to the foregoing instrument, and acknowledged the same to be their free act and deed.

BEFORE ME,

WILLIAM D. WILLIAMSON, Justice Peace.

REPORT
of commissioners appointed to purchase the lands
belonging to the

Penobscot tribe of Indians, 1833.

To the Governor and Council of the State of Maine,    June session, A.D. 1833.

We the undersigned commissioners appointed on the part of the State of Maine, to treat with the Penobscot tribe of Indians for the purchase of such land belonging to said tribe as they are disposed to sell to said state, have attended to the duties of said appointment and report, that they have succeeded in purchasing the four townships belonging to said Indians, being north of the mouth of the Piscataquis River, as will appear by the deed of the same signed by the governor and chiefs of said tribe, and executed according to their usages, and herewith submitted for your consideration. In discharge of the duties devolving on us in this negotiation, we were aware of the difficulties always attendant on subjects of this character, and especially at this time, disunited as they have long been by factions and party animosity; but we are happy to say that they received the proposition made by us,

PN-007267

We hereby certify that the above obligation, is a true copy of the one we gave to the Indians.

A.M. ROBERTS,
THOMAS BARTLETT,
Commissioners.

Bangor, January, 1834.

RESOLVE on the report of Alexander Campbell and others, a committee in behalf of this Commonwealth, to negotiate and settle any misunderstanding or difference with the Passamaquoddy Indians and those of the other tribes connected with them.

February 10, 1795

Whereas, by a resolve of the general court passed on the 26th day of June last, Alexander Campbell, John Allan and George Stillman were appointed a committee, in behalf of this Commonwealth, to negotiate and settle any misunderstanding, dispute or difference which may subsist between this Commonwealth and the Passamaquoddy Indians and those of other tribes connected with them, with full power and authority to lay out and assign to the said Indians, any tract of unlocated land belonging to this Commonwealth, in the County of Washington, not exceeding ten thousand acres, and also to purchase any particular spot of ground or tract of land for the use and convenience of said Indians, provided, however, that such purchase shall not exceed the sum of five hundred pounds.

And whereas, the said committee have exhibited to the general court, in their present session, an agreement made and signed on the 29th day of September last, by and between them in behalf of this Commonwealth, and the chiefs of the Passamaquoddy tribe of Indians and others connected with them, which agreement is in the words following, to wit:

To all people to whom this present agreement shall be made known, we Alexander Campbell, John Allan and George Stillman, Esquires, a committee appointed and authorized by the general court of the Commonwealth of Massachusetts, to treat with and assign certain lands to the Passamaquoddy Indians and others connected with them, agreeable to a resolve of said general court, on the twenty-sixth of June, in the year of our Lord, one thousand seven hundred and ninety-four, of the one part, and the subscribing chiefs and others for themselves, and in behalf of said Passamaquoddy tribe and others connected with them, of the other part; witnesseth, that the said committee, in the behalf of the Commonwealth aforesaid, and in consideration of the said Indians relinquishing all their right, title, interest, claim or demand, on any land or lands lying and being within the said Commonwealth of Massachusetts; and also engaging to be peaceable and quiet inhabitants of said Commonwealth, without molesting any other of the settlers of the Commonwealth aforesaid in any way or means whatever in consideration of all which, the committee aforesaid for and in behalf of the Commonwealth aforesaid, do hereby assign and set off to the aforesaid Indians, the following tract or parcel of land lying and being within the Commonwealth of Massa-

49

rdially, convened their council and chiefs, consisting of members of both [pa]rties, and after frequent public deliberations for several weeks, and frequent [inte]rviews with us by delegates appointed by their convention, and receiving [fr]om us full explanation of the subject, we were notified by them to attend [th]eir convention, where, after having read the deed of conveyance, by their [req]uest, their signatures were then prefixed in presence of witnesses borne on [sai]d instrument. All which is submitted.

A. M. ROBERTS,
THOMAS BARTLETT,
Commissioners.

BOND

given by the commissioners to
the Penobscot tribe of Indians.

June, 1833.

Whereas, We, Amos M. Roberts, of Bangor, and Thomas Bartlett, of [or]ono, in the County of Penobscot, Esquires, commissioners appointed by [the] Governor of Maine, to purchase, for said State such of the lands of the [Pe]nobscot tribe of Indians as they might be disposed to sell, having met the [go]vernor and principal men of said tribe in the council chamber of said tribe [on] the 10th day of June, A.D. 1833, for the purpose of purchasing the lands [af]resaid, and having discussed the subject of the meeting in open council and [we]re obtained the consent of said tribe to sell their four townships of land to [sai]d State, and whereas, the governor and lieutenant governor, by his attor[ne]y, is appointed for that purpose, the councillors and captains of said [tri]be, then and there executed to said State, under their hands and seals, a [dee]d to the said four townships, covenanting for themselves and in behalf of [sai]d tribe to warrant and defend the same to the State against the claims of [al]l tribe. Now, therefore, we the commissioners aforesaid, in consideration [of] the premises have and do hereby covenant with said tribe of Indians, in [beh]alf of the State of Maine, to pay to said tribe the sum of fifty thousand [dol]lars, in the manner following, to wit: said sum of fifty thousand dollars [sha]ll be deposited in the State's treasury, and the interest, reckoning from the [da]te hereof, shall annually be paid under the direction of the Governor and [co]uncil of said State, through the Indian agent for the benefit of said tribe, [pro]vided it should in their opinion, be required for the comfortable support [of] said tribe, and if at any time, at the annual settlement any part of said [int]erest should remain in the treasury, unexpended, it shall be added to the [pri]ncipal of fifty thousand dollars and become a part thereof, and said sum of [fift]y thousand dollars, together with such increase as it may from year to year [rec]eive, and shall forever remain in the treasury an accumulating fund, for the [ben]efit of said tribe.

In witness whereof, we the said commissioners, have hereunto set our [han]ds this 10th day of June, A.D. 1833.

Signed, sealed and delivered        (L.S.)
in the presence of                          (L.S.)

48

etts, viz: all those islands lying and being in Schoodic River, between the at the head of the tide, and the falls below the forks of said river where north branch and west branch parts; being fifteen in number, containing hundred acres more or less; also Township No. 2 in the first range eyed by Mr. Samuel Titcomb, in the year of our Lord, one thousand n hundred and ninety-four, containing about twenty-three thousand acres e or less; being bounded as follows, easterly by Tomer's River and Town-No. One first range; northerly by Township No. Two second Range; erly by Township No. Three first range; southerly by the west branch of odic River and Lake; and also Lire's Island lying in front of said town-, containing ten acres more or less; together with one hundred acres of lying on Nemcass Point adjoining the west side of said township; also Island lying to the westward of said Nemcass Point, containing one lred and fifty acres, more or less; also assign and set off to John Baptist ote, a French gentleman, now settled among the said Indians, one hun-acres of land, as a settler in Township No. One first range, lying at the at the carrying place on the north branch of Schoodic River, to be led to have said land laid out to him in the same manner as settlers in townships are entitled; also assign to said Indians the privilege of fishing both branches of the river Schoodic without hinderance or molestation the privilege of passing the said river over the different carrying places zon; all which islands, townships, tracts or parcels of land and privileges g marked with a cross, thus X, on the plan taken by Mr. Samuel Titcomb, the reservation of all pine trees fit for masts on said tract of land to rnment; they making said Indians a reasonable compensation therefor; assign and set off to said Indians ten acres of land more or less at Pleasant t, purchased by said committee in behalf of said Commonwealth, of John t, being bounded as follows, viz: beginning at a stake to eastward of the ling house, and running north twenty-five degrees west fifty-four rods; thence running north fifty-six degrees east thirty-eight rods to the bay; thence by the shore to the first bound; also a privilege of setting down e carrying place at west Quoddy between the Bay of West Quoddy and Bay of Fundy, to contain fifty acres. The said islands, tracts of land and leges to be confirmed by the Commonwealth of Massachusetts to the said ns and their heirs forever. In testimony of all which, we, the said ander Campbell, John Allan and George Stillman, the committee afore-and in behalf of the Commonwealth aforesaid, and the chiefs and other ns aforesaid, in behalf of themselves and those connected with them as said, have hereunto set our hands and seals at Passamaquoddy, the ty-ninth day of September, in the year of our Lord one thousand seven lred and ninety-four.

Alex. Campbell. (Seal.)
J. Allan. (Seal.)
George Stillman. (Seal.)
   his
Francis Joseph X Neptune. (Seal.)
   mark
   his
John X Neptune. (Seal.)
   mark
   his
Piel X Neptune. (Seal.)
   mark

   his
Joseph X Neptune. (Seal.)
   mark
   his
Piel X Denny. (Seal.)
   mark

   his
Jonale X Denny. (Seal.)
   mark
   his
Joseph X Tomas. (Seal.)
   mark

Signed and sealed in presence of:
Samuel Titcomb,
Jno. Frost, Jun't.

Be it therefore Resolved, That the said agreement be and it is hereby ratified and confirmed, on the part of the Commonwealth, and that there be allowed and paid out of the treasury of this Commonwealth, to the said committee, the sum of two hundred pounds, being the consideration paid to the above named John Frost, for a tract of land on Pleasant Point, purchased by the said committee, ten acres of which more or less, as in the before recited agreement, is hereby appropriated for the accommodation of the said Indians, said sum to be paid to the said committee, on their depositing in the secretary's office a deed from the said John Frost, of the said tract of land on Pleasant Point, duly executed and acknowledged; and, whereas, there now remains for the disposition of government, ninety acres more or less of the above mentioned lot of land, on Pleasant Point.

Resolved, that the treasurer of this Commonwealth be and he is hereby authorized and empowered, to lease the said remaining ninety acres for one year or for term of years, in such manner and on such considerations, as he may judge will be most for the advantage of the Commonwealth.

## ACT OF SEPARATION

## CONSTITUTION OF MAINE
(Article 10—Sec. 5 –Fifth Part)

Fifth. The new State shall, as soon as the necessary arrangements can be made for that purpose, assume and perform all the duties and obligations of this Commonwealth, towards the Indians within said District of Maine, whether the same arise from treaties, or otherwise; and for this purpose shall obtain the consent of said Indians, and their release to this Commonwealth of claims and stipulations arising under the treaty at present existing between the said Commonwealth and said Indians; and as an indemnification to such new State, therefor, this Commonwealth, when such arrangements shall be completed, and the said duties and obligations assumed, shall pay to said new State, the value of thirty thousand dollars, in manner following, viz: that said Commissioners shall set off by metes and bounds, so much of any part of the

PN-007269

d, within the said District falling to this Commonwealth, in the division of public lands, hereinafter provided for, as in their estimation shall be of value of thirty thousand dollars; and this Commonwealth shall, thereupon ign the same to the said new State, or in lieu thereof, may pay the sum of rty thousand dollars at its election; which election of the said Common-alth, shall be made within one year from the time that notice of the doings the Commissioners, on this subject, shall be made known to the Governor l Council; and if not made within that time, the election shall be with the v State.

In 1823, Maine accepted from Massachusetts "the sum of thirty thousand lars, elected and directed to be paid by said Commonwealth of Massa-asetts to the State of Maine, in lieu of the lands set off to the said State of ine by the Commissioners under the Act of Separation, as an indemnity to said State, for the duties and obligations assumed by the same towards Indians therein." (State of Maine. cash book record. 10/2/1823.)

52

PN-007270