UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

NORTHERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. )                        CIVIL NO. 1966-ND
)
THE STATE OF MAINE, )
)
Defendant. )
)
_____ )
)
UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. )                        CIVIL NO. 1969-ND
)
THE STATE OF MAINE, )
)
Defendant. )
_____ )

## PLAINTIFF'S REPORT

On January 15, 1978, the United States, plaintiff herein, requested that it be permitted until July 1, 1978, in which to report further progress toward resolution of the matters which are the root cause of this litigation. The basis of that request was that while work was underway with respect to preparation and delineation of the claims, extrajudicial settlement efforts were also being pursued and the time was necessary to permit that process to continue.

As stated to this Court in the reports filed in January and February 1977, it has always been the plaintiff's position that litigation was not the best method to resolve the issues presented in these claims.  In further recognition of these facts, efforts have continued since January to obtain resolution of these disputes without aid of litigation.

- 2 -

In February of this year, certain representatives of the Administration entered into a Memorandum of Understanding with the Passamaquoddy and Penobscot Tribes (a copy is attached hereto). The Memorandum of Understanding contains two parts. Part A sets forth an agreement between the Administration and the tribes, whereby the Administration promised to seek legislation to provide the two tribes with a $25 million trust fund. In exchange, the tribes agreed (and the proposed legislation would so provide) to the extinguishment of their claims to 7.5 million acres of land in Area II (see map attached to Memorandum of Understanding) and to the extinguishment of their claims to 50,000 acres per titleholder within Area I (an area of approximately 5 million acres). This agreement (and the proposed legislation) would leave unextinguished the tribes' claims to approximately 3.3 million acres of land in Area I, which are held by the State of Maine and approximately 14 major landowners. Legislation designed to effectuate this agreement has been drafted and is expected to be introduced shortly.

Part B of the Memorandum of Understanding is substantially different in character from Part A. It contains an outline of the tribes' terms and conditions for settling their claims against the State and the major landholders. The Administration did not endorse or reject the terms set forth in Part B; instead, the Administration stated that it would support a settlement on any terms agreeable to the parties, provided that the total federal contribution to settlement would not exceed $30 million.

Pursuant to Part B, the tribes currently are involved in negotiations with the major landholders. Though no agreement has resulted from these discussions,

- 3 -

they are continuing and no actions impinging on those discussions are contemplated at this time.

The tribes have also attempted to negotiate with the State of Maine, the only other party holding land subject to the tribes' claims. These negotiations have not been successful. Therefore, the tribes and the Department of the Interior are requesting that this litigation be activated with respect to the State of Maine. However, prior to the activation of such litigation, representatives of the Department of Justice will contact the State directly in order to make their own determination as to whether settlement can be achieved. This is in accord with the Department's general policy of negotiating disputes before instituting litigation against any state.

Simultaneous with efforts to resolve the claims with respect to the State, we will actively review this matter to determine what additional pleadings, if any, will be necessary in order to activate the case. In addition, we will seek to determine what motions or discovery procedures may be necessary to obtain a resolution of the litigation. Following discussions with the State of Maine, we propose to report to the Court on those discussions and, should they fail to result in settlement, on how the United States intends to proceed in litigation.

Respectfully submitted,

JAMES W. MOORMAN,
Assistant Attorney General

BY: *Myles E. Flint*
MYLES E. FLINT
Attorney
Department of Justice
Washington, D.C.  20530

729