DRAFT
2/26/80

To:   Governor Joseph E. Brennan

From:  Richard S. Cohen

Re:   Indian Land Claims Settlement Negotiations

Attached for your review are what I believe should be the final settlement documents. Those documents consist of:

(1)   A Settlement Agreement between the Passamaquoddy/
      Penobscot Negotiating Committee, the Houlton Band
      of Maliseet Indians, the Governor and the Attorney
      General;

(2)   a bill to be enacted by Congress and to be incorporated
      by reference in the Settlement Agreement;

(3)   a bill to be enacted by the Maine Legislature and
      to be incorporated by reference in the Settlement
      Agreement;

(4)   a Stipulation of Settlement between counsel for all
      parties, which stipulation incorporates by reference
      all the foregoing;

(5)   a draft letter to be exchanged between the parties
      regarding the impact of the settlement on any
      transfer of grass and timber rights to the Tribes
      from private landowners.

Since matters have been moving very rapidly, I have not had an opportunity to confer with you over every issue as it has arisen. As a result of our negotiations we have mutually agreed upon several relatively minor changes from our last discussions. I believe that John Paterson has provided timely copies of all drafts to Kirk and David so that they have seen the changes. While I assume you will want to read these documents yourself, for ease of reference, I have

51

summarized below what I believe to be the more significant drafting changes of which you should be aware.

I.   State Act

    1.   Definition of Reservations.  The definition of the reservations is altered somewhat to permit future expansion of the reservations back to their historical limits.  For example, to the extent that the Passamaquoddy Tribe acquires land in the future in Indian Township, such parcels when acquired will be automatically a part of the reservations.  Such a provision eliminates possible "checkerboard" criminal jurisdiction within the Township and permits the Tribe to recover lands that  were  taken from their original reserve and often without compensation.

    2.   Hunting and Fishing

    (a)  Tribal hunting ordinances within Indian Territory are required to be equally applicable to Indians and non-Indians except that such ordinances may make special provision for sustenance hunting by individual Indians.

    (b)  Regulations of the Commission and generally applicable State laws cannot impede sustenance fishing by the Tribes on the Reservations.

    (c)  The Commissioner, before making surveys within Indian Territory, is required to give reasonable advance notice to the respective Tribe or Nation.

    3.   Taxation.  All Indian property is subject to all real and personal property taxes, but will be termed a fee in lieu of taxes.  Such "fee" will be computed in the same manner used to compute tax liability.

52

PN-003322

4.   Civil and Criminal Jurisdiction.   The Tribes are given exclusive jurisdiction over:

(1) Class E crimes committed by members on the reservation,

(2) juvenile crimes by Indians committed on the reservations,

(3) small claims between members and arising on the reservations,

(4) Indian child custody matters under the Indian Child Welfare Act, and

(5) domestic relations matters involving Indians residing on the Reservations.

5.   Law Enforcement.   All the law enforcement provisions are gathered in one section for purposes of clarity.   Basically, the Tribal police are made the functional equivalent of municipal police officers within Indian Territory.

6.   Tribal-State Commission.   The list of persons eligible to be Chairperson is expanded to include retired First Circuit and Supreme Court Judges.

7.   Other Statutory Changes.   In order to conform the Revised Statutes to the provisions of the Settlement Act, there are a number of statutory amendments made in the bill.

PN-003323

Page 4

II.  Federal Act

1.  Extinguishment of Claims.  The language of extinguishment is expanded beyond the language of the Rhode Island bill to extinguish claims under Federal and State law.  The only claims which will survive will be claims by Individual Indians under State law (e.g. a claim for trespass by a non-reservation Indian against his non-Indian neighbor) which claims can be met by all common law and statutory defenses normally applicable to civil suits between non-Indians.

2.  Indian Child Welfare Act.  The manner of implementation of this Act is spelled out in detail.

The Tribal Negotiating Committee and Tureen have agreed to the attached documents and are prepared to sign them.  I suggest that we confer at the earliest opportunity to discuss these documents and the process of Legislative and Congressional enactment.

JMRP:mfe

54

PN-003324

DRAFT 2/25/80

A   B I L L

To provide for the settlement of land claims of Indians, Indian nations and tribes and bands of Indians in the State of Maine, including the Passamaqoddy Tribe, the Penobscot Nation and the Houlton Band of Maliseet Indians, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that this Act may be cited as "The Maine Indian Claims Settlement Act of 1980."

CONGRESSIONAL FINDINGS AND DECLARATION OF POLICY

Sec. 2.(a)  Congress hereby finds and declares that:

(1)  The Passamaquoddy Tribe, the Penobscot Nation and the Maliseet Tribe are asserting claims for possession of lands within the State of Maine and also are seeking damages for the use of such lands, on the grounds that the lands in question were originally transferred by the Tribes in violation of law including the Trade and Intercourse Act of 1790 (1 Stat. 137), or subsequent reenactments or versions thereof.

(2)  The Indians, Indian nations, and tribes and bands of Indians, other than the Passamaquoddy Tribe, the Penobscot Nation and the Maliseet Tribe, that may have held aboriginal title to lands within the State of Maine have long ago lost their aboriginal holdings and have ceased to exist.

-1-

55

PN-003325

(3)   The Penobscot Nation, as represented as of the time of passage of this Act by the Penobscot Nation's Governor and Council, is the successor in interest to the aboriginal entity generally known as the Penobscot Nation which years ago claimed aboriginal title to certain lands in the State of Maine.

(4)   The Passamaquoddy Tribe, as represented as of the time of passage of this Act by the Joint Tribal Council of the Passamaquoddy Tribe, is the successor in interest to the aboriginal entity generally known as the Passamaquoddy Tribe which years ago claimed aboriginal title to certain lands in the State of Maine.

(5)   The Houlton Band of Maliseet Indians, as represented as of the time of passage of this Act by the Houlton Band Council, is the successor in interest, as to lands within the United States, to the aboriginal entity generally known as the Maliseet Tribe, which years ago claimed aboriginal title to certain lands in the State of Maine.

(6)   Substantial economic and social hardship to a large number of landowners, citizens and communities in the State of Maine, and therefore to the economy of the State of Maine as a whole, will result if the aforementioned claims are not promptly resolved.

(7)   This Act represents a good faith effort on the part of Congress to provide the Passamaquoddy Tribe, Penobscot

-2-

PN-003326

Nation and the Houlton Band of Maliseet Indians with a fair and just settlement of their land claims.  In the absence of Congressional action, these land claims would be pursued through the courts, a process which would in all likelihood consume many years and thereby promote hostitlity and uncertainty in the State of Maine to the ultimate detriment of the Passamaquoddy Tribe, the Penobscot Nation, the Houlton Band of Maliseet Indians, their members and all other citizens of the State of Maine.

(8)   The parties to these claims, acting through their duly authorized representatives, whose authority is hereby recognized and acknowledged, have executed a Settlement Agreement dated _____, 1980, which requires implementing legislation by Congress.

(9)   The State of Maine, with the agreement of the Passamaquoddy Tribe, the Penobscot Nation and the Houlton Band of Maliseet Indians, has enacted legislation defining the relationship between the Passamaquoddy Tribe, the Penobscot Nation, the Houlton Band of Maliseet Indians and their members, and the State of Maine.

(10)   Since 1820, the State of Maine has provided special services to the Indians residing within its borders, including the members of the Passamaquoddy Tribe, the Penobscot Nation, and the Houlton Band of Maliseet Indians.  During this

-3-

PN-003327

DRAFT

2/25/80


AN ACT to Provide for Implementation of the Settlement of
Claims by Indians in the State of Maine and to Create the
Passamaquoddy Indian Territory and Penobscot Indian Territory.


Be it enacted by the People of the State of Maine, as follows:

Sec. 1.   Short Title.   This Act shall be known and may be
cited as "An Act to Implement the Maine Indian Claims
Settlement."


Sec. 2.   Legislative Findings and Declaration of Policy.   The
Legislature hereby finds and declares that:

1.   The Passamaquoddy Tribe, the Penobscot Nation and the
Houlton Band of Maliseet Indians are asserting claims for
possession of large areas of land in the State of Maine and for
damages alleging that the lands in question were originally
transferred in violation of the Indian Trade and Intercourse Act
of 1790 (1 Stat. 137) or subsequent reenactments or versions
thereof.

2.   Substantial economic and social hardship could be
created for large numbers of landowners, citizens and communities
in the State of Maine, and therefore to the State of Maine as a
whole, if such claims are not promptly resolved.


-1-

58

PN-003328

3.    The claims also have produced disagreement between the Indian claimants and the State of Maine over the extent of the State's jurisdiction in the claimed areas.  Such disagreement has resulted in litigation, and if the claims are not resolved, further litigation on jurisdiction would likely ensue.

4.    The Indian claimants and the State acting through the Governor and Attorney General, have executed a Settlement Agreement dated _____ , 1980.  The agreement represents a good faith effort on the part of all parties to achieve a fair and just resolution of those claims which, in the absence of agreement, would be pursued through the courts for many years to the ultimate detriment of the State, and all its citizens including the Indians.

5.    The Settlement Agreement also represents a good faith effort by the Indian claimants and the State to achieve a just and fair resolution of their disagreement over jurisdiction both on the present Passamaquoddy and Penobscot Indian Reservations and in the claimed areas.  To that end the Passamaquoddy Tribe and the Penobscot Nation have agreed to adopt the laws of the State of Maine as their own to the extent provided under the Settlement Agreement.  The Houlton Band of Maliseet Indians and its lands will be wholly subject to the laws of the State of Maine [except that its members shall continue to receive free hunting, trapping, and fishing licenses.]

-2-

PN-003329

## SETTLEMENT AGREEMENT

I.   THE PARTIES

1.   The Passamaquoddy Tribe, represented as of the date of execution of this Settlement Agreement by the Joint Tribal Council of the Passamaquoddy Tribe, is the successor in interest to the aboriginal entity known as the Passamaquoddy Tribe.

2.   The Penobscot Nation, represented as of the date of execution of this Settlement Agreement by the Penobscot Nation's Governor and Council, is the successor in interest to the aboriginal entity known as the Penobscot Nation.

3.   For purposes of execution of this Settlement Agreement, the Passamaquoddy Tribe and the Penobscot Nation are represented by the Passamaquoddy-Penobscot Negotiation Committee.

4.   The Houlton Band of Maliseet Indians, represented as of the date and for purposes of execution of this Settlement Agreement by the Houlton Band Council of the Houlton Band of Maliseet Indians, is the successor in interest, as to lands within the United States, to the aboriginal entity known as the Maliseet Tribe.

5.   The State of Maine, represented for purposes of execution of this Settlement Agreement by its Governor and Attorney General, is a sovereign state of the United States of America and

-1-

PN-003330

is the defendant in actions presently pending in the United States District Court for the District of Maine and captioned United States of America v. State of Maine (Civil Action Nos. 1966-ND and 1969-ND).

II.   THE PENDING INDIAN CLAIMS

1.   The Passamaquoddy Tribe, the Penobscot Nation and the Houlton Band of Maliseet Indians are asserting claims for possession of lands within the State of Maine and are also seeking damages for the use and possession of those lands on the grounds that the lands in question were originally transferred in violation of federal laws including the Trade and Intercourse Act of 1790 (1 Stat. 137), and subsequent reenactments and versions thereof.

2.   These land claims have resulted in disputes between the Indian claimants and the State of Maine concerning the extent of the State of Maine's jurisdiction in the claimed areas.

3.   The parties agree that substantial economic and social hardship to all citizens of the State of Maine, including the members of the Passamaquoddy Tribe, the Penobscot Nation and the Houlton Band of Maliseet Indians, will result if the Indian claims and jurisdictional disputes are not promptly resolved.

4.   The parties consequently have negotiated in an effort to reach a fair and just settlement of these Indian claims and

61

PN-003331

jurisdictional disputes and have agreed upon a settlement which requires the enactment of legislation by the United States and the Legislature of the State of Maine.  The legislation which requires submission to and enactment by the United States is attached as Exhibit A.  The legislation which requires submission to and enactment by the Legislature of the State of Maine is attached as Exhibit B.

III. <u>AGREEMENT</u>

Accordingly, the parties agree that:

1.  The settlement of the Indian claims and jurisdictional disputes which will be effected upon enactment of the legislation attached as Exhibit A by the United States and the legislation attached as Exhibit B by the Legislature of the State of Maine is a fair, just and equitable settlement.

2.  The parties, severally and collectively, will submit to the United States and support the enactment of the legislation attached as Exhibit A.

3.  The parties, severally and collectively, will submit to the Legislature of the State of Maine and support the enactment of the legislation attached as Exhibit B.

4.  The parties will take such further action and execute such other and further documents not inconsistent herewith as may be reasonably necessary to effectuate the terms and conditions of

-3-

62

PN-003332

this Settlement Agreement.  It is agreed that this Settlement Agreement may be executed in counterparts, that each counterpart shall constitute an original agreement, but that there is, and this Settlement Agreement constitutes, a single agreement.

PASSAMAQUODDY TRIBE and                STATE OF MAINE
PENOBSCOT NATION

By The Passamaquoddy-Penobscot
   Negotiating Committee
                                       _____
                                       Joseph E. Brennan, Governor

_____

_____

_____

_____      _____
                                      Richard S. Cohen,
_____          Attorney General

_____
                                      HOULTON BAND OF
_____         MALISEET INDIANS

_____

_____      _____

_____

_____

_____

-4-

63

PN-003333