(3) VF
1988

STATE LAW LIBRARY
AUGUSTA, MAINE

OF NORTH
AMERICA

PENOBSCOT NATION                                      TRIBAL COURT
Civil Action
Docket No. 80-03

*Shelve in box:*
*Background information in*
*Indian land claims*

$Pg - 8.$

GARY ATTEAN

vs.

GOVERNOR WILFRED PEHRSON and
GOVERNING COUNCIL, PENOBSCOT NATION

BEFORE:   Hon. Andrew M. Mead, Judge of the Tribal Court
          in Indian Island, Maine on March 14, 1980

APPEARANCES:

          Gary Attean, Pro se
          Plaintiff

          Thomas Tureen, Esq.
          Attorney for the Defendant

This matter came on for hearing before the Honorable
Andrew M. Mead, Judge of the Tribal Court, at the Community
Building, Indian Island, Maine, on Friday, March 14, 1980.

COURT: This is the Penobscot Tribal Court, Civil
Action Docket No. 80 dash 3, Gary Attean vs. Governor
Wilfred Pehrson and the Governing Council of the Penobscot
Nation. This matter is being electronically recorded and
I'll ask all persons properly addressing the court to keep
your voice up in order to keep an accurate record. Secondly,
it must be absolute quiet from the gallery to insure a
accurate record in this matter. Name plaintiff is Gary M.
Attean who is suing on his own behalf and on the behalf of
other members of the Penobscot Nation. Name defendants are
Governor Wilfred Pehrson and, quote, "The Governing Council of
the Penobscot Nation." The matter seeks a Temporary Restraining
Order, asking the court to injoin the holding of a referen-
dum which is scheduled for March 15th. As I indicated pre-
viously, I'm treating this matter as effectively in motion
for preliminary injunction resulting in the same, both parties
being afforded the opportunity of notice and full opportunity
to be heard on the merits of this case. As I indicated
previously, the court is vested with equitable powers under
the Maine Rules of Civil Procedure, entitling the court to
render injunctive relief. Injunctive relief will result in
an order requiring a person, in this case, the Tribal Council,
not to do something. Specifically, not to hold a referendum
here. If in fact a order is rendered, that would be the effect
of it, a hearing could be later scheduled on the complaint

74

in this matter. Before begining with the hearing, I'll ask the plaintiff, Mr. Attean, if he has any pretrial matters to bring up to the court?

MR. GARY ATTEAN: No sir.

COURT: Any pretrial matters by the defendant?

MR. THOMAS TUREEN: No your Honor.

COURT: Then you may proceed, you may call a witness, submit evidence, exhibits, as you see fit.

MR. GARY ATTEAN: Laura Booker

COURT: Remain standing and raise your right hand for a moment please. State your name.

WITNESS: Laura Massey

COURT: Do you swear to tell the truth, the whole truth, and nothing but the truth in the matter now in hearing?

WITNESS: (nod)

COURT: You may be seated. You may proceed.

LAURA BOOKER MASSEY TESTIFIED AS FOLLOWS,

DIRECT EXAMINATION BY MR. ATTEAN

Q    Are you familiar with the flier that came around with the packet which contained the State bill and Federal bill for the Maine Indian Land Claims settlement?

A    Yes, I am.

COURT: Excuse me for interrupting, can we pull the door closed back there? Were getting too much interference on the tape.

Q    On what day did you receive this?

A    I received it on Tuesday, of this week.

MR. ATTEAN:   Thats all I have your Honor.

COURT:   Any questions by Mr. Tureen?

MR. TUREEN:   No your Honor.

COURT:   Thank you, you may step down.

MR. ATTEAN:   Jean Thompson

COURT:   Remain standing and raise your right hand please. Do you swear to tell the truth, the whole truth, and nothing but the whole truth in the matter now in hearing?...........
Do you swear to tell the truth, the whole truth, and nothing but the truth in the matter now in hearing?

WITNESS:   (nods)

COURT:   You may be seated.

JEAN THOMPSON TESTIFIED AS FOLLOWS,

DIRECT EXAMINATION BY MR. ATTEAN

Q    Your familiar with the flier.........

A    Yes.

Q    Which was circulated with the so called land bill claim settlement?

A    I got the flier, but I didn't get the bills.

Q    You got the..........

A    I wasn't at home.

Q    When did you get the flier?

A    On Monday.

MR. ATTEAN:   Thank you, thats all I have your Honor.

COURT:   Thats fine, any questions Mr. Tureen?

MR. TUREEN:   No your Honor.

COURT:   Thank you..... any further witnesses?

MR. ATTEAN: Thats all I have your Honor.

COURT: O.k., you, a you submitted a complaint that you swore to. I understand, or am I correct in understanding that you also want me to use this affidavit that you swore to in making my decision?

MR. ATTEAN: Yes, your Honor.

COURT: Am I correct in understanding that your resting at this point? You have no further evidence to submit on your complaint?

MR. ATTEAN: Yes, your Honor.

COURT: Mr. Tureen?

MR. TUREEN: I, your Honor, at this point I would move for a dismissal of, of this action and request for a preliminary injunction. The, as the court knows, the standards for preliminary injunction, particularly one involving a public interest or governmental entity is particularly high. The plaintiff in such an action must prove that the harm to him outweighs the harm to others, he must prove the likelyhood of success, he must prove irreparable injury, and he must prove that the public interest is not adversly effected by the outcome. This, these rules are, are of general application, I could, there are many number of decisions on the point. I refer the court to Ubee Industries vs. Posner, 466 Fed. Sub. 1251, a decision by the District Court of Maine 1979; to LeVeck vs. State of Maine 587 Fed. 2nd. 78, the First Circuit decision of 1978 by Judge Coffman that reaches the same conclusion. There are Supreme Court decisions, Yankus vs. United States, 321;414, a 1944 decision

77

by the United States Supreme Court, holding in particular, that where the action seeks to injoin a public official in the, the, a execution of a, a public duty, the standard is particularly high. The burden of proof is on the plaintiff for each and everyone of the allegations. Now I would mové at this point for a dismissal, reserving my rights to a, to challenge, at a later point. The jurisdiction over this court to issue an order to the Governor and Council, but, I would move for a dismissal at this point on the grounds that under the statute in question, and I do understand that, that the court prior to hearing has ruled, has dismissed the case in so far as allegations under 3b and c are concerned, the discretionary allegations. That all we are addressing here today is the allegations under, under, Penobscot Ordinance Title 22, Maine Revised Statute, section 4793, is that correct your Honor?

COURT: I hadn't actually done it, I intend to do it on the record I imagine after your through with your motions.

MR. TUREEN: All right, well I move, I would move to dismiss as to items b and c on the grounds that the court lacks jurisdiction to deal with this kind of discretionary decision on the part of the elected officials of the tribe. At most, the court has a, has power when the allegation is elected officials have exceeded their, their authority. In reserving the right to raise further challenges concerning that in the future. I would say that the plaintiff, in this case, has not carried his burden under section 4793. If the court will look at 4793, you will see that there are

78

basically two parts to this, to this final paragraph. In
the section in question, the first two sentences of the
final paragraph relate to, to legislative proposals pre-
pared by the Tribal Governor and Council for submission
to the State Legislature, and that sets up a particular
procedure for legislative proposals prepared by the Tribal
Governor and Council for submission to the State Legislature.
The last sentence of the section relates to legislative, the
legislation effecting the Penobscot Tribe which is prepared
by private organizations, church organizations, and I point
out in particular, State Departments and Civil groups. And
I would submit that the plaintiff has not presented any, any
evidence to demonstrate that this, that the bills in question
for legislation proposed to be submitted, was prepared by the
Tribal Governor and Council, in fact it wasn't. The legislat-
ion was prepared by the Tribal Negotiating Committee, which
would be a civil group, and, and more to the point, was also
prepared, and will be in fact introduced not by the Tribal
Council, or by the legis, the representatives of the Legislat-
ure as contemplated in the first two sentences of that para-
graph, but instead, by the Attorney General, and the Governor
of the State. The only requirement in the last sentence of
that section is that such legislation be brought to the
Tribal Council to the Governor and Council for approval
prior to submission. Thats the only requirement under that
last sentence. As a matter of fact that legislation has
been taken to the Tribal Council and Governor, it has been
approved by them in vote last night, and it now can be

submitted in terms of the legal requirements of, of these laws under which the, the plaintiff is making this claim. Now, it is true, that in addition to what is legally required here, in addition to the minimum legal requirement that the Tribal Council last Sunday voted that it would also be appropriate to have a rererendum vote of the people of this tribe to give them an opportunity to state their feelings, as to whether they should go forward or not. But, I would submit that there is no legal requirement, that they do, that therefore the plaintiff has failed to carry his burden of proof, therefore the plaintiff has failed to state a cause of action upon which relief can be granted, and for that reason, I would respectfully submit that this action should be dismissed.

COURT: Thank you. As far as the procedural aspects of this matter go, obviously the plaintiff is proceeding pro se without the benefit of a lawyer, without holding the plaintiff to a strict standard a, a attorney would have to meet, but, at the same time there are certain minimum standards anybody that comes before the court must meet. This is a community court, it belongs to the community, and I don't intend to exclude anybody from it by requiring undo attention to form, and so on. I'm accepting this pleading as being sufficient as bringing the matter before me. Given his reasons for the relief requested, the plaintiff states in subsection b that such short notice has not given the members of the tribe a reasonable time to study the proposed settlement. Subsection c indicates that the settle-

ment agreement referred to in the proposed bills has not
been made public, therefor no informed decision on the pro-
posal can be made.  While I may be in sympathy with those
points and believe that they may have legitamate grievance,
there, it's quite clear that those factors are insufficient
to bring the matter before the court.  My decision will only
be on the narrow, the narrow notice issue.  Thats all I'm
considering.  I do have one question for Mr. Tureen to
make sure that were not dealing with a moote point here.
If in fact the referendum produces a majority vote, which
I assume it will, will that proposal or the subject of the
proposal be submitted to the Tribal Representative to submit
to the State Legislature?

MR. TUREEN:  No your Honor.  The purpose of that, of
that legislation of the referendum, is to allow the people
an opportunity to speak.  That will directly, and is a very
practical matter, have no effect on what the Maine Legislature
does.  I think it's a practical matter, and if it's ruled
negatively it will not proceed to the Maine Legislature, the
Tribal Council may change their mind after that, but, it's
a legal matter, as a procedural matter the bill will not
then be submitted to the representative, it will simply be
introduced as the Governor of the State and Attorney General
of the State are now waiting to do.

COURT:  I'm wondering if we may be dealing with a moote
point here.  What your telling me is, that the referendum is
merely an advisory referendum and has no binding result upon
the Council, is that correct?

MR, TUREEN: Thats correct your Honor................
Thats not to say that the, that the Council would be insensitive, and I think that as a practical matter, there
isn't any question at all who the Council will follow, the
dictates of the, of the, of the referendum, I'm only pointing
out that this particular, this particular request for preliminary injunction is brought under a particular statute.
The claim rests on that statute, I'm saying is that, is that,
that statute has not been violated and that the leaders, the
duly elected leaders of this Tribe have exercised their
judgment, weighing all the factors, weighing, recognizing and
weighing the authority that they have. Have weighed all those
factors in terms of deciding how best to move at this point,
and my point is that in doing that, they have not violated
the law, and I have no doubt in my own mind.

COURT: As sections go regarding the shortness of time
in asking for extension, I'm dismissing that aspect of it.
I think that has already been done. On Mr. Tureen's Motion
to Dismiss, the Motion for Temporary Injunction, for the
reason that Section 4793 has not been violated, I'm going
to take it under advisement, primarily because we havn't
had any testimonial evidence on that, and I suspect it will
be testimony tract would have been informed, then maybe the
response of the entire issue based upon the affidavit
primarily and notice attached to it. I think the plaintiff
is entitled to hear sworn testimony regarding how the proposal was presented, what the result of the referendum will
be, so for that reason I'm going to take your motion to

dismiss under advisement, and you can allow your witnesses to testify under oath as to these factors. I don't know if I've made myself clear.

MR. TUREEN: I'm not sure that you have made yourself clear to me.

COURT: All I have before me is an allegation that a general meeting was called and that the notice require- ments were not sufficient. There's been a, a, a notice in the form of a letter which is attached, which I'm actually considering as an exhibit, the reference being that section 47.93 controls this as a, as a general meeting, with notice being required. At this point, I have no testimony in- dicating that this is not a general meeting, anything other than a general meeting, but rather it's a referendum, only for advisory purposes, only not to control the result, note, this is what you told me as testimony hadn't come in. What I'm saying to you is if your testimony, your witnesses testimony on your oath reflects the same statements you made to me, I think perhaps we may be out from under section 4793.

MR. TUREEN: I understand that the court is saying, as I understand it, is that you are, you are informed by the information that has been presented, and by whats been stated by counsel today, that this is the situation, but for making a final decision on this you would like to have testimony.

COURT: I want a record.

MR. TUREEN: You'd like a record on it? I would say that thats the plaintiff's burden to carry, but we would be happy to accomodate the court.

COURT: Well, but........

MR. TUREEN: Governor Pehrson would be happy to take the stand.

COURT: This is not (Indescrinable) now that there has been a minimul showing and that may be the case, I want some solid rebutting in support of your motion.

MR. TUREEN: Call Governor Pehrson.

COURT: Would you raise your right hand? Do you swear to tell the truth, the whole truth and nothing but the truth in the matter now in hearing?

WITNESS: I do.

COURT: You may be seated.

GOVERNOR WILFRED PEHRSON TESTIFIED AS FOLLOWS.

DIRECT EXAMINATION BY MR. TUREEN

Q    Would you state your name please.

A    Wilfred Pehrson

Q    And do you hold elective position in the Penobscot Nation?

A    Governor of the Penobscot Nation.

Q    And how long have you been Governor of the Penobscot Nation?

A    Oh, about nineteen months, eighteen months, somewhere around there.

Q    And did you preside at a, at a meeting of the Penobscot Tribal Council last Sunday?

A    Yes I did.

Q    And at that, at that council meeting what was the sub-

ject of that council meeting?

A     To update council members on the terms of the agree-
ment in the package effort.

Q     And who was that who presented the package that your
referring to, to the Tribal Council?

A     The State.

Q     And the, will have, ask the legislation to which you've
referred, the, well, let me ask you, was, was a vote taken
in the Tribal Council concerning the legislation at that time?

A     There was a vote to, to that effect, yes.

Q     And what was, what was voted on at the meeting a week
ago Sunday that your referring to?

A     oh.......

Q     What was done?

A     There was a motion on the floor by Clara Jennings to
have a referendum vote Saturday, this Saturday, and it was
seconded, and it was voted on Tuesday, I think, the vote
was eight to two.  Eight for and two against.

Q     And then did you have a subsequent meeting of the, of
the Tribal Council between last Sunday and now?

A     Yes we did.

Q     When was that meeting?

A     It was last night.

Q     And was any vote taken at that meeting?

A     There was a vote taken of the Penobscot Council in
favor to support, to support the negotiating team and with
our proposal and the States proposal for ratification.

Q     Did the Penobscot Council at that meeting direct the,

85

the Tribal Representatives to take any action with regards
to this legislation?

A    None whats so ever.

Q    Did the Penobscot Council at that meeting set a, a
public meeting to deal with this question?

A    No

Q    Thank you Governor Pehrson.

COURT:  Any questions by the plaintiff?

MR. ATTEAN:  I have a question.  Isn't this a conflict
of interest for Tom to be representing both ends of this?

COURT:  I, you'll have to explain what you mean by
both ends of this.

MR. ATTEAN:  He's counsel representing here, and yet,
he's, he's asking questions about himself in front of the
Council.

COURT:  Thats not, the, I can't rule on the conflict,
if there is a conflict of interest what would be Mr. Tureens
problem, and I'm sure that he would have to face that when the
time came, on the face of it I don't see any problem of
conflict of interest.  He is apparently been a part of the
negotiating effort and he's supporting that effort and he's
representing the Council.  I think that his position is clear,
he's not, I don't think, supprising anybody by his represent-
ation.  There is nothing that I've seen that would exclude
him as an attorney, but, if in fact there is a conflict, I'm
sure he would be answering to a higher source than me, and
I'm not going to exclude him as counsel unless he (Indescernible)
me.

-14-

CROSS EXAMINATION BY MR. ATTEAN

Q    Was your meeting Sunday posted?

A    Was our meeting posted? The Council took a vote on Thursday night to have a, have a meeting Sunday, a week from, week from yesterday, I don't know what the dates are. They took, took a vote that night to have a, have a meeting Sunday.

Q    Was the meeting, was not the meeting Sunday, in fact a work shop rather than a Council meeting?

A    Partially a work shop, and a meeting yes.

Q    Was it a closed meeting?

A    Yes, for the Council.

Q    How, in your opinion, could you advise the section said in the complaint, 4793 (Indescernable)?

A    Whats that again?

Q    How did you reconcile yourself or the Council what you bypassed the section of 4793?

MR. TUREEN: Object to that your Honor. He's asking for a legal conclusion. I don't want to be over technical about this, but I don't really think thats appropriate question. Thats what the court has to decide.

COURT: It's a technical question, and I understand, that I think if it was an attorney asking that I'd probably exclude imediately. Maybe the Governor has no opinion on it. Again, for my determination I'm going to let him answer if he can.

CROSS EXAMINATION CONTINUED BY MR. ATTEAN

WITNESS: Could you repeat the question again?

Q    How was it decided amung you and the Council, that this section could be bypassed and just call a referendum, rather than a general meeting for a referendum,.... was that discussed?

A    No, that, that section was never discussed.

Q    Was there any discussion at all on the legality of your vote?

A    None whats so ever.

MR. ATTEAN: No further questions

COURT: I just want to, want to make sure I understood your answer to part of the question. Mr. Tureen asked you who prepared this proposal, can you answer that question?

WITNESS: Yes, the State.

COURT: The State prepared it?

WITNESS: And the negotiating committee.

COURT: And they submitted to Council?

WITNESS: Right.

COURT: Any further by you, Mr. Tureen?

MR. TUREEN: No your Honor.

COURT: You may step down.

WITNESS: Thank you.

COURT: Anything further Mr. Tureen?

MR. TUREEN: No your Honor.

COURT: Defendant rests?

MR. ATTEAN: Defense rests.

COURT: Now Mr. Attean, you have this point, the opportunity to submit any rebuttal evidence you want, weigh test-

88

-16-

imony or exhibits if you so choose. You don't have to.

MR. ATTEAN: Well,other than the motion and the complaint as it is, all I can add is these few notes, and I'll read from the notes.

COURT: Is this testimony or is this argument?

MR. ATTEAN: No, this is just (Indescernible)

COURT: That you testify?

MR. ATTEAN: Its just......

COURT: . Why don't we........

MR. ATTEAN: Argument, I suppose.

COURT: O.k., arguments can come in just about one second. Were just taking sworn testimony now.

CLERK: Judge Mead, would you have him speak up louder? He's not going over.

COURT: Do you have anything further?

MR. ATTEAN: I have a question.

COURT: Sure.

MR. ATTEAN: Isn't the fact that there was a Council meeting that they had Sunday, do I have a right to request the minutes on that meeting?

COURT: You mean in preparation for this hearing?

MR. ATTEAN: No, as,as a citizen.

COURT: Thats almost something you want to retain private counsel for. I would tend to say that you have a right to obtain that for this hearing, as far as being a private member of the tribe, allowing you to have a copy of them, thats.......

MR. ATTEAN: Well, then may I restate that question?

89

COURT: Sure.

MR. ATTEAN: May I have a copy of those minutes so that, for this hearing?

COURT: Is this something that you feel is necessary to put your point forward at this meeting?

MR. ATTEAN: I think it would help all of us.

COURT: Mr. Tureen, are those minutes available?

MR. TUREEN: I don't know your Honor.

GOVERNOR PEHRSON: No, I, I could probably answer that your Honor. The minutes will not be available until Monday night, after they have been approved by the Council. Minutes don't go out until the Council gets a chance to review them, and approve them.

COURT: Do you know whether there has been a rough draft prepared of the minutes?

GOVERNOR PEHRSON: I really couldn't tell you right now. I don't know, I don't think my secretary is here, the Tribal Clerk.

COURT: In view of the very important rights, were talking about today, and in view of the delicate position of plaintiff, what I'm going to do is take about a five minute recess at which time it will be determined rather or not there has even been a draft prepared of those minutes. If there has I'm going to ask defendant to present it to you, if its of any assistance to you we'll reconvene, if not we'll come back for arguments. O.k., courts going to be in recess until five minutes of four.

CLERK: All rise.

COURT: Be seated please...... Pull the door closed back there please......Is the tape rolling?

CLERK: Yes.

COURT: Penobscot Tribal Court continuation of the case of Gary Attean vs. Governor Wilfred Pehrson, et al. Docket No. 80-3. Court has been in recess, I'm happy to report that the Council has graciously turned over the draft notes of the meeting. Not pursuant to court order, but simply to expedite matters today. No way is it a president setting action, as I understand it. Mr. Attean have you had a chance to review the draft minutes, the meeting we've referred to?

MR. ATTEAN: Yah, I looked at them your Honor.

COURT: O.k., do you have any further evidence or complaints, do you have any further evidence or testimony to present in this matter on your behalf?

MR. ATTEAN: Can I recall Wilfred Pehrson?

COURT: Yes you may.........I remind you that your still under oath.

RECROSS EXAMINATION OF MR. ATTEAN

Q    Governor Pehrson........

COURT: Will you stand please, Mr. Attean, will you stand please?

Q.   You testified that the meeting Sunday was a closed Council meeting rather than a work shop.

A    Work Shop and a closed executive session.

Q    And what time did you call this to order?

A    I don't know, I think some where around..... well, we

91

-19-

got started late anyway.  I don't recall any exact time.
Probably about, pretty close to eleven.  Some wheres around
there.

Q    You started at eleven in the morning?

A    Yeah, some wheres around there.

Q    And you ended when?

A    Huh?

Q    And the meeting was over when?

A    I don't recall the time.  three o'clock, three thirty,
some wheres around then.

Q    Was Deanna LeBritten allowed to attend this meeting?

A    Nope.

Q    I have no more questions of this witness your Honor.

COURT:  Thank you.  Mr. Tureen do you have any questions?

MR. TUREEN:  No questions your Honor.

COURT:  You may step down.  Any further witnesses or
testimony?

MR. TUREEN:  Fred Becker

COURT:  Would you stand please and raise you right hand,
please.  Do you swear to tell the truth and nothing but the
truth in the matter now in hearing?

WITNESS:  I do.

COURT:  You may be seated.

DIRECT EXAMINATION BY MR. ATTEAN

FRED BECKER TESTIFIED AS FOLLOWS,

Q    Fred, were  you  at the meeting Sunday, at Sundays
Council meeting?

A    At the......Yes, I was mmm-hummmm.

Q    To your knowledge was Deanna LeBritten at that meeting?

A    She did not attend that meeting.

Q    Was she there?

A    She was invited for lunch at the recess of the meeting..........she didn't partake of the meeting.

Q    Did she return after the recess?

A    We recessed for lunch and then she left after we had lunch.

Q    She did not come back?

A    No.

MR. ATTEAN:  I have no questions.

COURT:  Any questions Mr. Tureen?

MR. TUREEN:  No questions your Honor.

COURT:  You may step down, thank you.

MR. ATTEAN:  I have no more witnesses.

COURT:  No more witnesses, Plaintiff rests finally then?

MR. ATTEAN:  Yes your Honor.

COURT:  Any further testimony by the Plaintiff?

MR. TUREEN:  No your Honor.

COURT:  The court has now come to an argument. Mr. Tureen, you stated in your arguments once already in your motion to dismiss this matter, do you have anything to add or briefly (Indescernible - coughing)

MR. TUREEN:  No your Honor, I don't think theres any reason to take further time of the court, the, the, and argue. The plaintiff must establish, amoung other things

that, that what were talking about, is a proposal that
was prepared by the Tribal Governor and Council, theres
been no evidence to suggest that, that the evidence is,
is perverse, and I feel that the matter should be dismissed.

COURT: Mr. Attean, do you have any argument in this
matter?

MR. ATTEAN: I'm sorry?

COURT: Do you have argument you want to present to
the court before the court rules, do you want to sum up
any evidence, or do you want to direct the court to any
cases of presedent?

MR. ATTEAN: I have one of these notes that I'd like
to read to the court.

COURT: Your more than welcome to.........Please
keep your voice up so, can make sure we get you on the
tape recorder.

MR. ATTEAN: It's my impression that the Maine Statute
cited in the complaint requires that Legislation be approved
by a general meeting with at least 7 days notice. This
referendum ignores and evades that law. It is clearly
unreasonable to have a referendum when the settlement
agreement itself has never been made public. Even though
it exists. It is unreasonable and arbitrary to force
people to decide on such short notice. The bills are
very complex, there are conflicting interpretations of
the bills, the bills effect very very basic rights of
every Penobscot. A great deal is at stake, there is no
real reason why the referendum should be held so fast.

There is no emergency, there is no deadline, there is no
harm in putting this off for a few weeks.  On the other
hand, the referendum will be irreversible.  There will be
no way to correct this problem once the referendum is held.
The people will be irreparably harmed.    Thats all I have.

COURT:  Thank you very much.  Anything further Mr.
Tureen?

MR. TUREEN:  No your Honor.

COURT:  Thank you gentlemen.  The matter is now in
order for a decision of the court, and I will render a
decision in this matter.  I'll state at the outset, that
I think I share the opinion of every one present, that the
minimul notice of this referendum and secrecy that these
matters have been conducted in, is, is deplorable.  These
matters have far reaching long range effects on the members
of this community, the members of this State.  What ever
conclusions are reached, we will all have to live with
for a long time.  This motion is a procedural one, I think
every one agrees that it's controlled by a very narrow
paragraph located in Title 22 under Section 4793.  Now
I'm going to take a little bit of extra time here, and
I'll read it, just so we can have heard it once.  It says,
"The Tribal Governor shall call a general meeting of the
tribe for the pupose of affirming, or rejecting legislative
proposals prepared by the Tribal Governor and Commission
for the submission to State Legislature."  "Notice of the
time and the place of the general meeting shall be posted

**95**

seven days before the said meeting at the office of the
Tribal Governor, and in one conspicuous place on Old
Town Island." "Legislative proposals that have received
an affirmative vote of a majority of those present, and
voting at the general meeting of the tribe shall be given
to the Tribal representative to the State Legislature for
submission to the State Legislature." "No private organ-
ization, church organization, State Department, civic group
or individual shall submit legislation directly effecting
the Penobscot or Passamaquoddy Tribe of Indians to leg-
islature without first meeting and conferring with the
respected Tribal Governor and Council." Thats what were
talking about. I'll make a few observations first, if
in fact this notice was, notice of a general meeting, pur-
suant to this section, I would hold the notice require-
ment insufficient. I don't believe I've heard testimony·
indicate more than seven days have gone by. But, the crux
of this issue, the key to it, is whether or not it is a
legislative proposal which was prepared by the Tribal
Governor and the Council. As I read the statute, if the
Governor and the Council prepare a proposal for legislature,
they can hand it to their representative and have them
taken down to the Legislature, they have got to call this
general meeting. They simply can't give it to them other-
wise. On the other hand if someone, a private individual
not a member of the Tribe, an organization wanted to sub-
mit a proposal to legislation, that concerns that, he would
in fact have to bring this matter to the Tribal Governors

96

attention, and the Councils attention, and after doing
that he could present it to the Legislature. I think
this section makes sense, because what it's saying to us
is if your Government is going to propose something, you
want to have a meeting on it first, before it goes with
out stamp of approval on it. On the other hand if someone
else wants some Legislation, they want passed, you want
to know about it before it's submitted so we can garner
our forces. It's a very logical section of the statute.
I'm satisfied that this Legislative proposal, that the
referendum is concerning, is not a proposal prepared by
the Tribal Governor and Council. Accordingly that de-
cision takes the requirement out of the seven day notice
prescription. I believe it's a proposal prepared by a
private organization and they have in fact conferred with
the Tribal Governor and the Council and as that is the
basis, I'm going to deny the plaintiff's motion for a
temporary injunction. I may point out, if this referendum
results in an affirmative vote, and the Tribal Council
purports to put their stamp of approval on it, and hand
it to their representatives for him to introduce, I might
suspect that a temporary injunction would be in order then,
because that is not what this is called for. This is an
advisory referendum, that being said I'm going to deny
this motion for a temporary injunction as requested by the
plaintiff. Unless there is any further matters before the
court, the court will be in recess.

MR. TUREEN: Your Honor, before we recess, I, I just

97

I would bring to the courts attention the, the fact that a general meeting of this Tribe, in 1977; at a general meeting, the Tribe itself decided that the notice provision need only be five days, on matters dealing with the land case.

COURT: ' It's a moote point.

I hereby certify that the foregoing, pages 1 through 25, is a true transcript of Tape Number four (4), as recorded on March 14, 1980, in the Penobscot Tribal Court located at the Community Building, Indian Island, Maine, of the case entitled Gary Attean vs. Governor Wilfred Pehrson and Governing Council, Penobscot Nation.

Recorder

99